UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------X  Docket#
TERESA POOR,                   : 22-cv-07255-ARR-JRC
                               :
              Plaintiff,       :
                               :
    - versus -                 : U.S. Courthouse
                               : Brooklyn, New York
STARBUCKS CORPORATION,         :
                               : December 19, 2022
              Defendants       : 10:21 a.m.
------------------------------X
```

TRANSCRIPT OF CIVIL CAUSE FOR DISCOVERY CONFERENCE
BEFORE THE HONORABLE JAMES R. CHO
UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S:**

**For the Plaintiff:**      **Matthew A. Jackson, Esq.**
                            National Labor Relations Board
                            2 MetroTech Center, Suite 5100
                            Brooklyn, NY 11201


**For the Defendant:**      **Jedd Mendelson, Esq.**
                            Littler Mendelson, PC
                            900 Third Avenue
                            New York, NY 0022

**Transcription Service:**   **Transcriptions Plus II, Inc.**
                             61 Beatrice Avenue
                             West Islip, New York 11795
                             RL.Transcriptions2@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

                        Proceedings

1           THE CLERK:  Civil Cause for Discovery

2    Conference, case number 22-cv-7255, *Poor v. Starbucks*

3    *Corporation*.  Counsel, please state your name for the

4    record beginning with petitioner.

5           MR. JACKSON:  Matthew A. Jackson, National

6    Labor Relations Board, Region 29.

7           MR. MENDELSON:  Jedd Mendelson on behalf of

8    respondent Starbucks; Littler Mendelson.

9           THE COURT:  All right.  Good morning, everyone.

10   I reviewed all the submissions that the parties have

11   filed, perhaps not the entire administrative record.

12   Still making my way through that.

13           All right.  So here we are.  I'm aware of what

14   happened at the conference before Judge Ross last week.

15   I've also reviewed the transcript as well.  So I guess

16   the question for the parties is we're going to be setting

17   an expedited discovery schedule today.  I guess the

18   question for all of you is how important is it for all of

19   you to spend time with your families over the holidays?

20   Timing cannot be better.  Right?  I understand that.

21           Have the parties had a chance to meet and

22   confer to talk about a proposed schedule or do you want

23   to talk about that on the record now?

24           MR. JACKSON:  We have not had a chance, your

25   Honor.

3

Proceedings

1          THE COURT:  Okay.

2          MR. JACKSON:  And I think now is a good time to

3    do so.

4          THE COURT:  Sure.  Look, Mr. Jackson, I know

5    your view is there should be no discovery had.  I

6    understand that.  There is going to be some discovery.

7    All right.  That's a given.

8          So Mr. Mendelson, let me turn to you first

9    then.  What do you propose in terms of an expedited

10   schedule?

11         MR. MENDELSON:  I was trying to gauge how many

12   subpoenas I would issue and then think through how this

13   will unfold.  I think my best estimate, and it's really

14   just an estimate, is that we would probably serve in the

15   range of five subpoenas.  It's possible it could be more.

16   It might be ten.  And in terms of depositions, I think

17   the fairest estimate would be five depositions.  So

18   initially we'd be serving subpoenas seeking to secure

19   documents and then subject to what we received we would

20   want to depose folks.  I'm prepared to proceed on an

21   expedited schedule that might not be -- it might be too

22   quick from the standpoint of other people.  That is I'm

23   here, I'm not going anywhere.  But I don't want to

24   inconvenience anyone else.  So I mean this week I would

25   expect that we would issue our subpoenas, and I don't

4

                              Proceedings

1    mean to suggest it'll happen Friday at 5.  The goal will

2    be to get them out as quickly as possible.  I don't know

3    whether the petitioner is in the position to accept

4    service of any subpoenas for former employees who were

5    witnesses at the hearing, if the petitioner is able to do

6    that.  Or alternatively, if the union is able to do that,

7    the union of course isn't a party, that will speed this

8    up.

9              And so we're going to try to get our subpoenas

10   out and I think we'll succeed this week.  And I don't

11   know how long we should reasonably expect it will take

12   folks to respond to these document subpoenas.  But we're

13   prepared to proceed on as expedited a schedule as the

14   petitioner thinks is appropriate and to try to, you know,

15   wrap up that discovery quickly.

16             THE COURT:  All right.  Now in terms of the

17   subpoenas, the five or so, do you know who you might be

18   trying to subpoena at this point?  Do you have names?

19             MR. MENDELSON:  Well, yeah.  I think it's fair

20   for me to say that two of the key witnesses for the

21   petitioner in the hearing were a woman named Jocelyn --

22   how do you say the last name?

23             MR. JACKSON:  Chunkianki (phonetic).

24             MR. MENDELSON:  Chunkianki.  And a fellow named

25   Justin Wooster (phonetic).  And then as I said, there

5

Proceedings

1   might be three or so other, maybe more than three, but

2   other largely former employees who are pertinent to this

3   because the petitioner's position I think under the laws

4   that the status quo is the period that existed at the

5   inception of the organizing drive in February of 2022.

6   And there's a lot of turnover in this business and so

7   there are folks who are no longer employed by Starbucks

8   who are pertinent to this case.

9          So at least those two I would anticipate these

10  subpoenas duces tecum and then seeking to depose them.

11  And that's what I foresee at this point.

12         THE COURT:  Okay.  Now to confirm, and we'll

13  use first names for the convenience of the parties,

14  Jocelyn and Justin, were they -- they testified at the

15  hearing, correct?

16         MR. MENDELSON:  Correct.

17         THE COURT:  All right.  Now the other three or

18  four employees that you anticipate subpoenaing, did they

19  testify as well?

20         MR. MENDELSON:  Most probably not.  And of

21  course I understand from what Judge Ross said that I'm

22  not looking to in any way, shape, or form re-litigate any

23  of the merits.  I'm looking to subpoena here with respect

24  to the Justin proper issue.  And those principle issues,

25  as I understand it, are what the impact of Jocelyn's

6

Proceedings

1  reinstatement would be were there violations found and

2  were she reinstated and what would the impact be of a

3  bargaining order, and for my standpoint of a bargaining

4  order relative to, if violations were found, the conduct

5  of a re-run election.

6          So I'm interested in documents in terms of the

7  duces tecum aspect of this that would be regulatory of

8  those issues such as whether they commented by way of

9  example on a decline in union support during the period

10  that either of them was employed.  Things such as that.

11          So again, it's not far flung the scope in these

12  subpoenas.  They will be very much targeted to specific

13  kinds of issues.

14          THE COURT:  Understood.  Now, in terms of

15  facilitating the service, what kind of relationship do

16  you have with the union?

17          MR. MENDELSON:  Well, you know, I've --

18          THE COURT:  I guess the question for you is do

19  you think it would help facilitate service on these

20  individuals?

21          MR. MENDELSON:  I don't know the answer to

22  that.  I've kind of met the union lawyers in the context

23  of this case and then in some negotiations involving

24  other stores, but those negotiations have not progressed

25  very far.  I don't know the answer to that.  It's

7

Proceedings

1   plausible to me that they would because by virtue of

2   accepting them and then interacting with these employees,

3   the union very well may feel that it has a better

4   opportunity to have some control over the process.  I

5   haven't had an opportunity, as Mr. Taylor says, to

6   connect with them and to ask if they'll cooperate.

7               THE COURT:  Understood.

8               MR. MENDELSON:  And if they don't, then we'll

9   serve it as we have to serve it on individuals.

10              THE COURT:  I guess as we sit here now, what is

11  the likelihood that the union would facilitate service?

12  Is that something you would expect or no, not at all?

13              MR. MENDELSON:  I think it's 50-50.

14              THE COURT:  Okay.

15              MR. MENDELSON:  I don't think it's implausible.

16  I don't know whether the union intends to try to

17  intervene in the case.  I just don't know the answer to

18  those questions at this point.

19              THE COURT:  Okay.  All right.

20              MR. MENDELSON:  Oh, your Honor --

21              THE COURT:  Go ahead.

22              MR. MENDELSON:  -- I do want to say one more

23  thing.  It occurred to me as I was thinking about today's

24  proceeding that Judge Ross was very clear that she would

25  not approve any kind of discovery relative to the labor

8

Proceedings

1  board.  I mentioned to her in the context of that

2  colloquy about regional director Poor, but something

3  occurred to me afterwards and I don't know that what

4  Judge Ross said is all encompassing.

5         During the Unfair Labor Practice/objections

6  case, it's a consolidated proceeding, Mr. Taylor, I'm

7  sorry, Mr. Jackson knows this, at the end of each witness

8  that the petitioner general counsel presents, there

9  sometimes were affidavits and we're permitted to review

10 them.  And then we have to return them and that's what

11 happened.

12        I ask myself whether or not in this proceeding

13 we're entitled to receive those affidavits from the

14 witnesses that petitioner had secured them from.  And I

15 couldn't really figure out a reason I wouldn't be

16 entitled to them particularly if there's going to be a

17 protective order entered.  So I didn't want to forget to

18 raise that.  I almost did just now but it occurred to me.

19        THE COURT:  Understood.  Okay.  Mr. Jackson,

20 you want to be heard on any of those issues that we've

21 just addressed?

22        MR. JACKSON:  Yes.  Yes, your Honor.  Mr.

23 Mendelson mentioned a protective order.  I think it's

24 important that we emphasize the need for that in this

25 case.  I think I'd be remiss if I didn't reiterate what

9

Proceedings

1  was stated in our papers that the discovery that

2  respondent envisions in this case has a significant

3  potential to conflict with employees' rights under the

4  National Labor Relations Act insofar as employees may be

5  compelled to reveal confidential information.  They have

6  a confidentiality interest under the act in their

7  protected union activities or protected concerted

8  activities.  So I think to the extent the respondent

9  intends to require employees to divulge such information,

10  any documents produced pursuant to respondent's subpoenas

11  would redact any employee names or other identifying

12  information that would enable respondent counsel to

13  identify who is engaged in union activity as well as

14  attorneys eyes only requirement for these kinds of

15  sensitive materials.

16          THE COURT:  Understood.  And that's fine.  And

17  we will certainly have a protective order entered in this

18  case.  Why don't the parties discuss one, exchange drafts

19  among the parties, and submit something for the Court's

20  review.  How much time do you think, Mr. Jackson, you'll

21  be able to get that done with opposing counsel?

22          MR. JACKSON:  I would say certainly by

23  Thursday.

24          THE COURT:  Okay.  Mr. Mendelson, does that

25  work for you?

10

Proceedings

1      MR. MENDELSON:  That's fine.  I'll turn to that
2  immediately, Judge.
3      THE COURT:  Okay.  So by 12/22, the parties
4  should submit a draft protective order for the Court's
5  approval.  Okay?
6      MR. MENDELSON:  Your Honor, I'm sorry, so 12/22
7  is Thursday.  If that's when Mr. Jackson is going to get
8  it to me, I'd probably need another day.
9      THE COURT:  Oh, I'm sorry.
10     MR. JACKSON:  No, no, no, I'm saying submit it
11  to the Court.
12     MR. MENDELSON:  Oh, oh, oh, I misunderstood.
13     MR. JACKSON:  We'll have worked on it well in
14  advance.
15     MR. MENDELSON:  Okay.
16     THE COURT:  I don't care who does the first
17  draft but get it to the Court by December 22nd for our
18  approval.  Okay?  All right.
19        What I'm trying to avoid is, and I hear what
20  you're saying, Mr. Jackson, what I am trying to avoid is
21  a situation where Mr. Mendelson serves some document
22  requests or subpoenas and you view that as a violation
23  and a charge emanating from that document request.  I'm
24  trying to avoid that situation.  Okay?  So maybe have a
25  discussion with Mr. Mendelson to see -- I don't know how

11

Proceedings

1  we do that whether, Mr. Mendelson, you want to provide

2  Mr. Jackson with a copy in advance of service of what you

3  intend to be asking for.  Right?  And then Mr. Jackson,

4  if you have any objections you can let him know.

5          Mr. Mendelson, you're not precluded from

6  serving your request but at least you then have notice if

7  you want to modify in any way your request before it's

8  actually served.  All right?  So that's not an order.

9  That's a suggestion.  Okay?  Because I do know in other

10 companion cases that that is happening that there are

11 charges being filed because of a request being made by

12 the employer.  Okay?  So give that some thought.  It's

13 just a suggestion.  Okay.

14         All right.  So then by Friday then, so that

15 would be December 23rd, defendants to serve their

16 subpoenas, okay, duces tecum for documents.  Okay?

17         Mr. Jackson, I'll ask you the same question.

18 Obviously, you've been in contact with Jocelyn and Justin

19 Wooster.  The other three employees, do you know who he's

20 referring to?

21         MR. JACKSON:  I do not, your Honor.

22         MR. MENDELSON:  I'm not sure I know who I'm

23 referring to, your Honor.  There was, for example, a

24 gentleman named, his first name was, he went by Tae,

25 T-A-E, and he was -- the petitioner may have had no

12

Proceedings

1  contact with him.  He was a gentleman who was discharged

2  from the company that had been very actively involved,

3  not necessarily in the union organizing, but sort of on

4  the scene.  So I need to consult with probably the store

5  manager just to get a better sense of who she and I

6  together think might have information that would be

7  probative of what we're talking about.

8          THE COURT:  All right.  My goal, since we are

9  doing expedited discovery, also over the holidays I'd

10 like the parties to play nice as best they can.  All

11 right?  So Mr. Jackson, if once Mr. Mendelson has

12 identified these additional three employees or four

13 employees, are you in any position to help facilitate

14 service?  Or at least get in touch with these individuals

15 so they know what's coming down the pike?

16         MR. JACKSON:  We, the Labor Board, has contact

17 with Jocelyn and Justin but with no other employees.

18         THE COURT:  Okay.

19         MR. JACKSON:  So you know, I could do what I

20 can to see if they'd be willing to allow me to accept

21 service on their behalf.

22         THE COURT:  Understood.

23         MR. JACKSON:  If they decline, then there's

24 nothing I can do.

25         THE COURT:  Right.  Understood.  That's all the

13

                              Proceedings

1   Court will ask if you can help try to grease the wheels

2   so that they're not surprised when they see this coming

3   knocking on their front door.  Okay?

4            MR. JACKSON:  I'll add that I didn't know that

5   Justin Wooster would be involved.  I really did have a

6   conversation with Jocelyn about this.

7            THE COURT:  Okay.  All right.  The Court does

8   appreciate that.  All right.

9            Now, Mr. Mendelson, if these subpoenas are

10  served by Friday, when do you expect them to respond to

11  your document request?

12           MR. MENDELSON:  Well, that's where I said

13  before, Judge, I'm not sure what everyone, Mr. Jackson,

14  his principals, and the Court would think is appropriate.

15  To me --

16           THE COURT:  I guess the question -- let's be

17  more specific then.  Let's say I'm Mr. Wooster and I get

18  a subpoena from you.  What documents am I going to be

19  collecting?

20           MR. MENDELSON:  So it's principally texts and

21  emails.  You may also be there were platforms where the

22  employees communicated with one another.  I don't know

23  how plausible it is that anybody can recover anything

24  from those platforms.

25           THE COURT:  You mentioned those platforms.

14

Proceedings

1  What are these?  Are they like WhatsApp or text messages

2  platforms or something else?

3      MR. MENDELSON:  I think they're named Discord,

4  and there's another one.  I don't remember the name off

5  the top of my head.  And I'm about the least text savvy

6  person around.  I'm --

7      THE COURT:  So these are like online chat rooms

8  basically?

9      MR. MENDELSON:  Yes.  That's I think what they

10  are.  And so I don't know the sophistication of the folks

11  who would be subpoenaed in terms of recovering that kind

12  of information.

13      THE COURT:  So another question I have then is,

14  because I'm all about trying to be efficient, right?  In

15  other words, if we don't have to ask for something

16  because there's a better way to get it, that might be the

17  way to go.  So you're going to be conducting depositions

18  you said.  Will it be of these five at a minimum?

19      MR. MENDELSON:  My scoping out of this led me

20  to conclude that we'd probably be talking about

21  approximately five subpoenas with folks who would

22  hopefully then produce responsive documents and then sit

23  for deposition.  It may not be the depositions necessary

24  for all of them, but that five as a broad number, it

25  could be eight, it could be three --

15

Proceedings

1    THE COURT:  Understood.

2    MR. MENDELSON:  -- is the scope of what I

3    think I'm talking about.

4    THE COURT:  So at a minimum including Jocelyn

5    and Mr. Wooster, right?

6    MR. MENDELSON:  Yeah.

7    THE COURT:  All right.  So assuming you do take

8    these depositions, do you still need the documents?

9    MR. MENDELSON:  I think the documents are the

10   way to conduct efficient depositions instead of me asking

11   questions that result in sort of very nebulous broad

12   answers.  I'm not being pejorative in saying that's how

13   they would respond.

14   THE COURT:  I understand.

15   MR. MENDELSON:  I think if I have documents I

16   can be very pointed in my questioning.  Again, I don't

17   know how much the Court is aware.  In unfair labor

18   practices proceedings there is no discovery, so the

19   employer comes into the case blind and then you do your

20   best in cross examining the petitioner or general

21   counsel's witnesses to try to ask probing questions.  I

22   think if we did have documents, it would enable us to

23   really drill down and be more efficient from a time

24   standpoint and to get this done more quickly.

25   So to go back to your question about how long

16

Proceedings

1    do I think it would take, I realize we're talking about

2    individuals who also have the holiday season that they're

3    dealing with.  I don't know whether the answer is

4    documents are to be produced by -- or served on or about

5    the 23rd or the 27th by January 10th or some date of that

6    ilk.  And then after that, you know, depositions within

7    the space of presumably another week or two and within a

8    limited time frame.  Although to be fair, my

9    understanding my colleagues who've handled these 10Js in

10   other cities, what I think I need to say to the Court is

11   that it is very plausible from what I've learned that the

12   union, whether it's an intervener or not, well I guess

13   would have to intervene, but is likely to file motions to

14   quash as to a lot of this.  No matter how much care we

15   try to take, Mr. Jackson and I, to avoid problematic

16   subpoenas that put me in harm's way, right?  Because the

17   charge gets filed against the employer or for counsel.

18            THE COURT:  Understood.  And that was just a

19   suggestion, right?  I suspect Mr. Jackson may object to

20   some of the requests that you made, but that in no way

21   requires you to modify your request in any way.  At least

22   you're given notice that a charge might be forthcoming.

23            MR. MENDELSON:  Right.  But my point was no

24   matter how we try to navigate that, my understanding is

25   the union has filed motions to quash and so in the

17

Proceedings

1    Buffalo case, which is sort of I think in a stay mode,

2    the union was directed by the trial judge to respond to

3    the subpoenas or to have the people it was representing

4    respond and it has refused and it has said it's going to

5    file a mandamus petition with the Second Circuit.  Last I

6    heard as of Thursday or Friday last week, that mandamus

7    petition had not been filed.  And so I mention this only

8    because obviously our purpose here is to scope out how to

9    do this on an expedited time frame.  But I didn't want

10   the Court not to be aware that there's a possible

11   interruption/slash disruption of that process from the

12   model of what's happened in Buffalo.

13            THE COURT:  Right.  I understand.  And the

14   Court is mindful of that and that's why I'm wondering

15   what if we went ahead with the depositions, right?  I

16   don't think they're going to move to quash a deposition,

17   right, and go that route.  And during the course of your

18   deposition you can inquire as to whether there are any

19   text messages or not.  Right?

20            MR. MENDELSON:  I'll give thought to that,

21   Judge.  I hear you.  It makes sense to me.  I guess I

22   feel that at some level I'd be handicapped or prejudiced

23   by not having documents to which I would otherwise be

24   entitled.

25            THE COURT:  Right.

Transcriptions Plus II, Inc.

18

Proceedings

1          MR. MENDELSON:  But I'll give thought to that.

2          THE COURT:  No, I do understand.  And look, in

3  the normal course, efficiently we want to get the

4  documents before we go into any deposition.  But then you

5  then face a situation where they may move to quash and

6  things get hamstrung and not only do you not get your

7  text messages or emails, you don't -- presumably, if you

8  want to hold off on the depositions, you don't get your

9  deposition either and this case moves forward without you

10  getting any of that.

11          MR. MENDELSON:  Understood.

12          THE COURT:  Right.  Okay.  We'll go this route

13  and see how it goes.  Okay?  But if there is a motion to

14  quash the subpoenas for the documents, you may still have

15  to go forward with your depositions anyways.

16          MR. MENDELSON:  Understood.

17          THE COURT:  Okay.  All right.  So assuming that

18  time frame, assuming you get responses by the 10th, you

19  suspect you'll conduct depositions over the next

20  following week.  So you think you can get depositions

21  done by the 20th?

22          MR. MENDELSON:  I'm just going to the calendar,

23  Judge.  I do know that I'm out of town for three days.

24  One of those days was a Saturday.  I have one commitment

25  I just have to double check here.  Okay.  So I'm

19

Proceedings

1    unavailable on the 12th and the 13th, 12th through the
2    14th.  So the 20th --
3              THE COURT:  So basically 30 days from today is
4    January 18th.  I know we have holidays and days off in
5    between.  The 20th might be a bit of a push for me.  I'd
6    prefer to pick a date the following week like say the
7    25th.
8              THE COURT:  Okay.  So parties need to complete
9    all discovery by January 25th.  All right.  So that
10   should accommodate hopefully people's holiday schedules
11   and days off that we have in between.  Okay.  And your
12   travel plans.
13             All right.  Now, these witness affidavits, I
14   assume all you're looking for is exculpatory information.
15   Is that right?
16             MR. MENDELSON:  All I'm looking for is what
17   type of information?
18             THE COURT:  Exculpatory information.
19             MR. MENDELSON:  That term is a term you're
20   familiar with as a criminal lawyer I guess.
21             THE COURT:  Right. Oh, I understand.  Well
22   look, I know in other cases -- well, let me turn to Mr.
23   Jackson.  You've heard the request for the statements
24   from the witnesses.  Do you have a position on that?
25             MR. JACKSON:  Yes.

20

Proceedings

1          THE COURT:  They've seen it.  Right?

2          MR. JACKSON:  Right.

3          THE COURT:  They've seen it but they just don't

4   have a copy of it.  So what is your view given that we're

5   going to have a protective order in place as well?

6          MR. JACKSON:  Considering that there's a

7   protective order, I do not think that the NLRB would

8   oppose production of those statements by the deponents.

9          THE COURT:  Okay.

10          MR. JACKSON:  But again, as your Honor pointed

11   out, respondent has seen these very documents, had a full

12   opportunity to cross examine the witnesses on each of

13   them.  So I'm not sure what the utility of it is.

14          THE COURT:  Understood.  All right.  How soon

15   do you think you can produce those affidavits?

16          MR. JACKSON:  So we are to produce the

17   affidavits?

18          THE COURT:  Well, they would be in your

19   possession, correct?

20          MR. JACKSON:  They are.

21          THE COURT:  Yes.

22          MR. JACKSON:  Okay.  We could have them today.

23          THE COURT:  Okay.  I'll give you till tomorrow.

24   So by December 20th you'll produce the affidavits.  Well

25   look, we're going to have a protective order in place.  I

21

Proceedings

1    guess you're willing to produce it anticipating a

2    protective order is entered, correct?

3              MR. MENDELSON:  Your Honor, I can simplify

4    this.  You mentioned attorneys eyes only before, or

5    perhaps Mr. Jackson did.  So there might be certain

6    things in discovery that I would think I need to consult,

7    by way of example the store manager.  But this I can

8    certainly agree on the record these would be attorneys

9    eyes only.  I would not share these with anybody.

10             THE COURT:  All right.  So given that, NLRB to

11   produce them by December 20th.  Okay?

12             MR. JACKSON:  With the understanding that they

13   be subject to whatever protective order is ultimately

14   approved by them?

15             MR. MENDELSON:  Yes, yes.

16             THE COURT:  Right.  Right.  Okay.  All right.

17   Does that cover it?  I was not going to impose any other

18   deadlines unless the parties want me to.

19             MR. JACKSON:  Well, your Honor, I wanted to

20   talk about how these depositions might go and get some

21   guidance from the Court on those.

22             THE COURT:  Sure.  So you said, Mr. Mendelson,

23   anywhere from five to ten.  Right?

24             MR. MENDELSON:  I was trying to give myself a

25   cushion.

22

Proceedings

1    THE COURT:  Look, I'm not going to hold you to

2    it today but realistically do you anticipate only five or

3    fewer or do you actually expect ten?

4    MR. MENDELSON:  I don't expect ten.  I think

5    five is a good estimate.  And I --

6    THE COURT:  But these would all be former

7    employers, correct?

8    MR. MENDELSON:  Yes.  Most likely that's true.

9    And I realize I had forgotten one piece of this which is

10    I'm thinking about the employees but the union is on the

11    scene here.  So I suspect there would be a custodian of

12    records deposition for the union and I suspect that there

13    might be one or two other union deponents.  So that might

14    bear on that five estimate.  And what I was going to

15    suggest was that -- I'd actually given some thought to

16    this, that for union witnesses, whether it's custodian of

17    records or others -- and I'm not trying to be cagey.  So

18    for example, Mr. Saff (phonetic) who testified, who's a

19    union organizer from the union, mentioned a Julie Kelly

20    and I had the distinct sense from the way he spoke that

21    she was a more experienced organizer who was initially

22    responsible for this store.  And I don't know anything

23    more about Ms. Kelly.

24    So I thought that depositions of union

25    representatives could in concept last as long as, again

23

Proceedings

1    I'm building a cushion for myself, six hours whereas the

2    depositions of the former employees, I could see the

3    Court trying to expedite this by limiting them to say

4    four hours.

5           THE COURT:  All right.  Now these union

6    representatives, how many of those do you expect to

7    depose?

8           MR. MENDELSON:  The only names of folks I know

9    are Julie Kelly, Mr. Saff, and then a custodian of

10   records.  So again, there could be as many as three.

11          THE COURT:  And Mr. Mendelson, what is your

12   thinking behind having longer depositions for the union

13   officials?

14          MR. MENDELSON:  My supposition is that even

15   though they're not in the store that they may have a

16   greater orbit of knowledge about what was happening in

17   terms of organizing and the impact of either Jocelyn's

18   reinstatement or a bargaining order vis-à-vis a re-run

19   election if that was what was required.  That's really

20   sort of the elementary basis of it.  I just figure that

21   they're more sophisticated witnesses who have more

22   knowledge.

23          THE COURT:  Now, in terms of the custodian of

24   records, you just need someone to identify the records

25   and confirm that these are in fact union records?

24

Proceedings

1        MR. MENDELSON:  That's right.  And it may be

2   that there's no need for a custodian because I do have

3   Mr. Saff who appeared in the hearing.  And then Ms. Kelly

4   didn't appear.  But my impression from Mr. Saff's

5   testimony was she was a person with greater experience

6   and at one point more involvement than him.

7        THE COURT:  Understood.  All right.  Now look,

8   in terms of the -- I'm trying to streamline the process.

9   If the union can agree to have someone sign an affidavit

10  confirming these documents are in fact what they are, we

11  can dispense with that deposition.  Okay.

12       So let me turn to you, Mr. Jackson.  In terms

13  of the former employees, he's willing to limit it to four

14  hours I assume per employee, correct?

15       MR. JACKSON:  Yes.

16       THE COURT:  All right.  Any objection?

17       MR. MENDELSON:  Yes, your Honor.  I think for

18  efficiency sake, I think I would ask that they be limited

19  to three hours each such that we could do two in a day.

20  I think that's really the only way that this might be

21  workable if we can double up on these depositions and do

22  two a day.  So I think a three-hour deposition for the

23  employees would be appropriate.  And I think that same

24  limitation should be imposed on the individuals.

25       THE COURT:  All right.  So for the four

25

Proceedings

1   employees, I'm inclined to agree, in terms of the three
2   hours, I think that's all consistent with what other
3   courts have done as well, so that will be limited to
4   three hours.
5           MR. JACKSON:  Understood.
6           THE COURT:  That does not include breaks.
7   Okay?  I don't want a lot of breaks.  All right?  But I'm
8   mindful that some people include breaks in that time
9   limitation.  This does not include breaks.  It's on
10  record testimony.  Okay?  All right.  So again, try to be
11  as efficient as you can be.  Let's not keep these people
12  who have no ongoing relationship with these topics there
13  any longer than they have to be.  Okay.
14          All right.  Is your objection on the union
15  employees also because you want to double it up and try
16  to get it done in one day?
17          MR. JACKSON:  Yes.  And also substantively I
18  think that I'm still struggling to see why six hours of
19  deposition with any union official, especially Mr. Saff
20  who's already been cross examined, would be fruitful in
21  this case.
22          THE COURT:  Understood.  So Mr. Mendelson, what
23  I'm inclined to say is I will also limit it to three
24  hours but in the event you believe you need more time,
25  you can write to the Court and we can discuss that.

26

Proceedings

1   Okay?

2           MR. MENDELSON:  Understood, Judge.

3           THE COURT:  All right.  Does the NLRB want any

4   discovery?

5           MR. JACKSON:  No, your Honor.

6           THE COURT:  Okay.  I didn't think so.  Anything

7   else we need to address today?  I think we've covered it

8   all, right?

9           MR. MENDELSON:  Just one moment, Judge.  I just

10  want to check a couple of things.

11          MR. JACKSON:  Yes, Judge, there's something I

12  wanted to ask the Court.

13          THE COURT:  Yes.

14          MR. JACKSON:  Yes.  So Judge Ross I believe was

15  very clear in the limitations of the discovery respondent

16  is entitled to in this case.  And my concern is that in

17  these depositions respondent may go astray from that

18  order.

19          THE COURT:  Right.

20          MR. JACKSON:  And I wanted to know if there was

21  any procedure I might be able to follow to notify the

22  Court if I believe that that's something that's occurring

23  during one of the depositions.

24          THE COURT:  Understood.  So here are my

25  procedures for this expedited discovery.  I know lawyers

27

Proceedings

1  hate it but I like joint written submissions.  Is there
2  any discovery disputes?  Okay.  So again, I encourage the
3  parties to play nice.  All right?  And if there are any
4  discovery disputes not referring to depositions because
5  that's more timely, any discovery should be a submitted
6  joint letter so I have both sides' position in that joint
7  submission.  I will waive the page limitations so there
8  are no page limitations on those letters.  But submit a
9  joint letter.  All right?  If the parties really can
10 agree on a joint letter, that's fine.  It's basically one
11 side for their position and the other side responding in
12 the same letter just so it's fully briefed when it gets
13 to me.  Okay?  And I will then endeavor once that letter
14 is filed within 24 hours you should expect there to be a
15 hearing on that motion.  Okay?  If not 24, 48.  Not
16 inclusive of holidays or weekends.  Okay?  So I'm not
17 going to have calls on weekends or holidays for your
18 benefit.
19         So expect once the letter is filed that we will
20 try to schedule a hearing the following day by telephone.
21 Okay?  To address it immediately.
22         All right.  Now, in terms of depositions,
23 usually if a dispute arises during the deposition,
24 contact my chambers immediately by phone and I'll address
25 it if I'm available.  All right?  Given that this case is

28

Proceedings

1  moving very quickly, if you want to write a letter to the

2  Court indicating when these depositions are scheduled so

3  we should know to expect a phone call if something

4  happens, that would be helpful as well.  Just write a

5  letter to the Court saying here are the depositions,

6  they're scheduled for these days and times.  Okay?

7        All right.  If I'm not available to address the

8  issue, my thought is raise the objection and if you think

9  they can still answer, let the witness answer.  Your

10 objection is preserved.  And if at the appropriate time

11 you want the Court to disregard that testimony for

12 whatever reason, you can raise it at that point in time.

13 I think that might be more efficient than instructing the

14 witness not to answer.  And if the Court disagrees, have

15 the witness come back to answer their question.  Do you

16 think that's going to be problematic?  Or are you -- as

17 you sit here now, is there more concern than that or --

18       MR. JACKSON:  No, I think that adequately

19 addresses it especially -- my concern really is that

20 there's a whole line of questioning that kind of goes

21 towards the underlying merits of the Unfair Labor

22 Practice case that, you know, that there's some kind of

23 procedure in place that we could contact chambers and

24 have a ruling as to whether that line of questioning

25 should continue.

29

Proceedings

1      THE COURT:  Right.  Understood.  But he's under

2 the gun too.  Right?  He only has three hours.  So if he

3 wants to spend two and a half hours on things that are

4 duplicative of what happened before, that's on him.

5 Right?  And so if it is repetitive -- look, there's going

6 to be some repetition.  That's inevitable.  If it's a

7 true objection because it's something that should really

8 not be asked or there's, other than it's cumulative, I

9 would just allow the witness to answer.  Right?  Just let

10 it happen.  And then if you want the Court to disregard

11 at a future point in time, you can raise that with the

12 Court essentially like a motion in limine type motion.

13 Okay?  All right.  Because it is a deposition at the end

14 of the day.  Right?  And most of it is allowed to be

15 asked.  Okay?

16      MR. JACKSON:  Yes.  Understood, Judge.  Thank

17 you.

18      THE COURT:  All right.  Anything else for the

19 government today?

20      MR. JACKSON:  No.  No, your Honor.

21      THE COURT:  Okay.

22      MR. MENDELSON:  Do you know if the transcript

23 of the conference with Judge Ross will be made available

24 on the docket?

25      THE COURT:  The parties will have to order it.

30

Proceedings

1          MR. MENDELSON:  Okay.

2          THE COURT:  Okay.

3          MR. MENDELSON:  Thank you.

4          THE COURT:  All right.  Anything else for the

5   defendant?

6          MR. MENDELSON:  No, your Honor.

7          THE COURT:  Okay.  So look, if any discovery in

8   this case arises between now and the end of discovery,

9   just submit a joint letter and we'll get it on the

10  calendar immediately.  Okay?

11         MR. MENDELSON:  Thank you.

12         THE COURT:  All right.  But I remind the

13  parties try to play nice, right, during the time of year.

14  If it's Christmas Eve and you want to submit a joint

15  letter, it can probably wait till after the holidays.

16  Okay?  All right.  With that we are adjourned.

17         MR. MENDELSON:  Thank you

18         MR. JACKSON:  Thank you.

19                    (Matter concluded)

20                         -oOo-

21

22

23

24

25

31

# C E R T I F I C A T E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **22nd** day of **December**, 2022.

*Mary Greco*

Transcriptions Plus II, Inc.