# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

TERESA POOR, Regional Director
of Region 29 of the National Labor Relations
Board, for and on behalf of the NATIONAL
LABOR RELATIONS BOARD

               Petitioner

v.

STARBUCKS CORPORATION

               Respondent

1:22-cv-07255-ARR-JRC

## PETITIONER'S MOTION TO QUASH
## RESPONDENT'S SUBPOENAS DUCES TECUM, OR ALTERNATIVELY
## TO MODIFY THE COURT'S JANUARY 12, 2023, PROTECTIVE ORDER
## AND MEMORANDUM IN SUPPORT

Matthew A. Jackson
National Labor Relations Board
Two MetroTech Center, Suite 5100
Brooklyn, NY 11201

ATTORNEY FOR PETITIONER

# TABLE OF CONTENTS

TABLE OF CONTENTS ………………………………………………………… i

TABLE OF AUTHORITIES …………………………………………………… iii

I.      INTRODUCTION ……………………………………………….………… 1

II.     PETITIONER HAS STANDING TO OBJECT TO THE SUBPOENAS GIVEN
        ITS INTEREST AS THE AGENCY CHARGED BY CONGRESS WITH
        PROTECTING EMPLOYEE RIGHTS ………………………………………… 2

III.    THE COURT SHOULD QUASH THE SUBPOENAS UNDER FRCP RULES 26
        AND 45, AS WELL AS THE BOARD'S *GUESS?* FRAMEWORK, OR IN THE
        ALTERNATIVE, MODIFY THE PROTECTIVE ORDER ………………………….. 5

        A.  Subpoena Request No. 1(a) Should Be Quashed Because It Is Unduly
            Burdensome and the Employees' Section 7 Privacy Interests Outweigh
            Respondent's Need for the Information Sought ………………………… 10

        B.  Subpoena Request No. 1(b) Should Be Quashed Because It Is Unduly
            Burdensome and the Employees' Section 7 Privacy Interests Outweigh
            Respondent's Need for the Information Sought ………………………… 11

        C.  Subpoena Request No. 1(c) Should Be Quashed Because It Is Unduly
            Burdensome and the Employees' Section 7 Privacy Interests Outweigh
            Respondent's Need for the Information Sought ………………………… 12

        D.  Subpoena Request No. 1(d) Should Be Quashed Because It Is Irrelevant, Unduly
            Burdensome, and the Employees' Section 7 Privacy Interests Outweigh
            Respondent's Need for the Information Sought ………………………… 13

        E.  Subpoena Request No. 1(e) Should Be Quashed Because It Is Irrelevant, Unduly
            Burdensome, Has an Improper Purpose, and the Employees' Section 7 Privacy
            Interests Outweigh Respondent's Need for the Information Sought ……………. 14

        F.  Subpoena Request No. 1(f) Should Be Quashed Because It Is Irrelevant, Unduly
            Burdensome, Has an Improper Purpose, and the Employees' Section 7 Privacy
            Interests Outweigh Respondent's Need for the Information Sought ………….... 15

        G.  Subpoena Request No. 2 Should Be Quashed Because It Is Irrelevant, Unduly
            Burdensome, Has an Improper Purpose, and the Employees' Section 7 Privacy
            Interests Outweigh Respondent's Need for the Information …………………... 15

        H.  Subpoena Request Nos. 3-6 Should Be Quashed Because They Are Irrelevant,
            Unduly Burdensome, Have an Improper Purpose, and the Employees' Section 7
            Privacy Interests Outweigh Respondent's Need for the Information ………….. 16

        I.  Subpoena Request Nos. 7-8 Should Be Quashed Because They Are Unduly
            Burdensome, Seek Protected Matter, and the Employees' Section 7 Privacy
            Interests Outweigh Respondent's Need for the Information …………………... 19

J.  Subpoena Request No. 9 Should Be Quashed Because It Is Irrelevant, Unduly Burdensome, Has an Improper Purpose, and the Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information Sought ………….. 20

K.  Subpoena Request No. 10 Should Be Quashed Because It Is Overbroad and Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information Sought ………………………………………………………….. 21

L.  Subpoena Request No. 11 Should Be Quashed Because It Is Irrelevant, Unduly Burdensome, and the Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information Sought …………………….. 21

M.  Subpoena Request No. 12 Should Be Quashed Because It Is Irrelevant and Possibly Has an Improper Objective and the Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information Sought ………….... 21

N.  Subpoena Request No. 13 Should Be Quashed Because It Is Irrelevant, Unduly Burdensome, Has an Improper Objective, and the Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information Sought ………………………………………………………….. 22

O.  Subpoena Request No. 14 Should Be Quashed Because Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information Sought ….. 23

P.  Subpoena Request Nos. 15-18 Should Be Quashed Because They Are Irrelevant, Unduly Burdensome, Seek Protected Matter, and the Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information ………………………………………………………….. 23

Q.  Subpoena Request No. 19 Should Be Quashed Because It Is Irrelevant, Unduly Burdensome, Oppressive, and the Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information ………………….... 24

R.  Subpoena Request No. 20 Should Be Quashed Because Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information ………….. 24

S.  Joselyn Chuquillanqui's Additional Subpoena Requests Should Be Quashed Because They Are Irrelevant, Unduly Burdensome, and Oppressive ………… 25

IV.  CONCLUSION …………………………………………………………… 28

**Federal Cases**                                                                                    **Page(s)**

*ADL, LLC v. Tirakian*,
    No. 06 CV 5076, 2007 U.S. Dist. LEXIS 46198 (E.D.N.Y. June 26, 2007) ........................... 3

*All State Ins. Co. v. All Cty., LLC*,
    No. 19-CV-7121-WFK-SJB, 2020 U.S. Dist. LEXIS 176297 *3 (S.D.N.Y. Sep. 22, 2020)
    (S.D.N.Y. Sep. 22, 2020) ................................................................................................. 3

*Amalgamated Util. Workers v. Consol. Edison Co.*,
    309 U.S. 261 (1940) ........................................................................................................ 4

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
    300 F.R.D. 406, 412, n.6 (C.D. Cal. 2014) ...................................................................... 7

*Anwar v. Fairfield Greenwich Ltd.*,
    297 F.R.D. 223 (S.D.N.Y. 2013) ...................................................................................... 7

*Bill Johnson's Rests. v. NLRB*,
    461 U.S. 731 (1983) ........................................................................................................ 22

*Castle v. Sangamo Weston, Inc.*,
    744 F.2d 1464 (11th Cir. 1984) ........................................................................................ 18

*Cazorla v. Koch Foods of Miss., L.L.C.*,
    838 F.3d 540 (5th Cir. 2016) ............................................................................................ 6

*Chino Valley Medical Center*,
    362 NLRB 283, 283, n.1 (2015) ................................................................................ 26, 8

*Cusumano v. Microsoft Corp.*,
    162 F.3d 708 (1st Cir. 1998) .............................................................................. 17-18, 27, 5-6

*Duling v. Gristede's Operating Corp.*,
    266 F.R.D. 66 (S.D.N.Y. 2010) ........................................................................................ 19

*Ellis v. Tribune Telephone Co.*,
    443 F.3d 71 (2d Cir. 2006) ............................................................................................... 4

*Flexsteel Industries*,
    311 NLRB 257 (1993) ...................................................................................................... 14

*FTC v. Exxon Corp.*,
    636 F.2d 1336 (D.C. Cir. 1980) ....................................................................................... 9

*Guess?, Inc.*,
    339 NLRB 432 (2003) ........................................................................................... *passim*

*Haworth, Inc. v. Herman Miller, Inc.*,

998 F.2d 975 (Fed. Cir. 1993) ........................................................................ 16

*Heinrich Motors, Inc. v. NLRB,*
403 F.2d 145 (2d Cir. 1968) ........................................................................ 26

*Hernandez v. Office of the Comm'r of Baseball,*
331 F.R.D. 474 (S.D.N.Y. 2019) .................................................................... 6

*Hooks ex rel. NLRB v. Hood River Distillers, Inc.,*
No. 21-cv-268-SI, 2021 U.S. Dist. Lexis 160342 (D. Or. March 30, 2021) ......................... 27

*Hughes v. Hartford Life & Accident Ins. Co.,*
507 F. Supp. 3d 384 (D. Conn. 2020) ............................................................... 3

*Information Resources, Inc. v. Dunn & Bradstreet Corp.,*
999 F. Supp. 591 (S.D.N.Y. 1998) ................................................................. 18

*Int'l Union, U.A.W. v. Garner,*
102 F.R.D. 108 (M.D. Tenn. 1984) ............................................................... 6, 9

*Jordan,*
921 F.3d ......................................................................................... *passim*

*Kaiser Steel Corp. v. Mullins,*
455 U.S. 72 (1982) ................................................................................ 7

*Laguna College of Art & Design,*
362 NLRB 965 (2015) ............................................................................ 11

*Lechmere, Inc. v. NLRB,*
502 U.S. 527 (1992) .............................................................................. 17

*Madeira Nursing Center v. NLRB,*
615 F.2d 728 (6th Cir. 1980) ...................................................................... 9

*Micro Motion, Inc. v. Kane Steel Co.,*
894 F.2d 1318 (Fed. Cir. 1990) ................................................................... 16

*Nathanson v. NLRB,*
344 U.S. 25 (1952) ............................................................................... 4

National Telephone Directory Corp., 319 NLRB 420 (1995) .......................................... 12, 25, 3

*NLRB v. Nueva Eng'g, Inc.,*
761 F.2d 961 (4th Cir. 1985) ..................................................................... 14

*NLRB v. Robbins Tire & Rubber Co.,*
437 U.S. 214 (1978) ............................................................................. 26-27

*Noble Roman's, Inc.,*
314 F.R.D. 304 (S.D. Ind. 2016) .................................................................. 4

*NYC Med. Practice P.C. v. Shokrian*,
No. 19 CV 162, 2020 U.S. Dist. LEXIS 154386 (E.D.N.Y. August 25, 2020) .................. 2-3

*Overstreet v. David Saxe Prods., LLC*,
No. 2:18-cv-02187-APG-NJK, 2019 WL 332406 (D. Nev. 2019) ................................. 25-26

*Pacific Molasses Co. v. NLRB*,
577 F.2d 1172 (5th Cir. 1978) ............................................................................................ 3

*Phelps Dodge Corp. v. NLRB*,
313 U.S. 177 (1941) ........................................................................................................... 4

*San Diego Bldg. Trades Council v. Garmon*,
359 U.S. 236 (1957) ........................................................................................................... 9

*Schaaf v. Smithkline Beecham Corp.*,
233 F.R.D. 451 (E.D.N.C. 2005) ....................................................................................... 6

*Socol v. Haas*,
No. 3:18-cv-00090, 2021 U.S. Dist. LEXIS 118981 (W.D. Va. June 25, 2021) ................. 27

*Solow v. Conseco, Inc.*,
No. 06 CV 5988, 2008 U.S. Dist. LEXIS 4277 (S.D.N.Y. Jan. 18, 2008) ........................... 3

*Travelers Indem. Co. v. Metro. Life Ins. Co.*,
228 F.R.D. 111 (D. Conn. 2005) ...................................................................................... 16

*U.S. v. A.T. & T. Co.*,
642 F.2d 1285 (D.C. Cir. 1980) ....................................................................................... 18

*U.S. v. Schwimmer*,
892 F.2d 237 (2d Cir. 1989) ............................................................................................ 18

*United States v. Int'l Bus. Machs. Corp.*
(IBM), 83 F.R.D. 97 (S.D.N.Y. 1979) ............................................................................... 7

*United States v. Nachamie*,
91 F. Supp. 2d 552 (S.D.N.Y. 2000) .................................................................................. 3

*Veritas Health Servs.*, Inc. *v. NLRB*,
671 F.3d 1267 (D.C. Cir. 2012) ......................................................................................... 4

*Webco Industries*,
337 NLRB 361 (2004) ...................................................................................................... 26

*Wright Electric, Inc.*,
327 NLRB 1194 (1999) .................................................................................................. 3-4

*Zoological Soc. Of Buffalo, Inc. v. Carvedrock, LLC*,
No. 10-CV-35A SR, 2013 WL 5652759 (W.D.N.Y. Oct. 15, 2013) ....................................... 7

**Federal Statutes**

29 U.S.C. § 157 ................................................................................ *passim*

29 U.S.C. § 158(a)(4) ....................................................................... 26

29 U.S.C. § 160 ................................................................................ *passim*

29 U.S.C. §§ 151, 157, 158(a)(3) ................................................... 9

29 U.S.C. §§ 151-169] (the NLRA) ................................................ *passim*

**Rules**

Fed. R. Civ P. 26(b)(2)(C) .............................................................. 3

Fed. R. Civ. P. 26 ............................................................................. 26, 6

Fed. R. Civ. P. 26(b)(2)(C)(i) ......................................................... 15

Fed. R. Civ. P. 26(c)(1) ................................................................... 1, 6

Fed. R. Civ. P. 26(g)(1)(B)(ii) ........................................................ 7

Fed. R. Civ. P. 45 (d)(3)(A)(iii), (iv) .............................................. 20, 5

Fed. R. Civ. P. 45(d)(3) ................................................................... 1

Fed. R. Civ. P. 45(d)(3)(A)(iv) ....................................................... 27

Federal Rule of Civil Procedure 26(b)(2)(C)(i) .............................. 18

Rule 26 .............................................................................................. 27, 6, 8

Rule 26(b)(2)(C)(i) ........................................................................... 7

Rule 26(c) ......................................................................................... 19, 5

Rule 45 .............................................................................................. *passim*

# I.    INTRODUCTION

Petitioner Teresa Poor, Regional Director for Region 29 of the National Labor Relations Board (Petitioner or NLRB), hereby moves this Court to quash the Respondent Starbucks Corporation (Respondent or Starbucks) subpoenas duces tecum (collectively, Subpoenas) dated on December 23, 2022, pursuant to Fed. R. Civ. P. 45(d)(3), or alternatively to modify this Court's January 12, 2023, Protective Order, pursuant to Fed. R. Civ. P. 26(c)(1).

In this matter, the NLRB seeks an injunction pursuant to Section 10(j) of the National Labor Relations Act [29 U.S.C. §§ 151-169] (the NLRA) against Starbucks. On December 15, 2022, this Court limited discovery to the issue of whether the injunctive relief sought by the NLRB, solely as to the Starbucks' Great Neck store, is just and proper. On December 23, 2022, Counsel for Respondent notified the undersigned Counsel for Petitioner that it had served, or planned to serve, subpoenas duces tecum to former Starbucks employees Joselyn Chuquillanqui, Max Cook, Taydoe Jones, Darren Wisher and Justin Wooster (collectively, Employees), as well as Workers United (Union) organizer David Saff and the Union's Custodian of Records. A true copy of each of these subpoenas is attached hereto as **Exhibit A through G**, respectively. On January 12, 2023, the Court issued a Protective Order providing for the redaction of the names of individuals who had not previously identified their views on unionization from the initial production of documents. ECF No. 44. Petitioner will raise herein other potential concerns that the Protective Order does not address.

On January 4, 2023, the Union filed an administrative unfair labor practice charge against Starbucks with Region 29 of the NLRB concerning these subpoenas. Specifically, the charge alleges that Starbucks, by its attorneys, interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act in violation of Section 8(a)(1) by issuing document and testimony subpoenas in the instant matter to current and former employees, the

Union, and to one of the Union's employees. The charge is pending before the Region and no merit determination has yet been made.[1]

The Subpoenas primarily seek employee communications regarding union organizing. For the reasons explained below, the Subpoenas should be quashed to the extent they seek protected material, impose undue burdens on third-parties, demand production of duplicative and/or irrelevant material far beyond the scope of the limited discovery ordered by the Court (which must be confined to evidence related to whether the injunctive relief which Petitioner seeks at the Great Neck store is just and proper) and potentially coerce employees in the exercise of rights protected under the NLRA. Additionally, they should be quashed to the extent they seek documents that are irrelevant to determining whether injunctive relief at the Great Neck store is just and proper. Moreover, Respondent's intrusive and voluminous document demands forced upon former employees, some of whom remain unrepresented by counsel in this matter, simply because they participated in union activities and/or cooperated with the NLRB, is potentially itself a form of coercion and a violation of the NLRA under *Guess?, Inc.*, 339 NLRB 432, 434 (2003).

## II. PETITIONER HAS STANDING TO OBJECT TO THE SUBPOENAS GIVEN ITS INTEREST AS THE AGENCY CHARGED BY CONGRESS WITH PROTECTING EMPLOYEE RIGHTS

"A party generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege or a proprietary interest in the subpoenaed matter." *NYC Med. Practice P.C. v.*

---

[1] Notably, in a similar 10(j) injunction case against Starbucks in Buffalo, New York, the same Union filed a similar charge with the NLRB's Region 3, on October 5, 2022 (NLRB Case No. 03-CA-304675), based upon subpoenas served on employees and the Union. The attachments to those subpoenas seek documents strikingly similar to the subpoenas at issue in the instant case. *See Leslie v. Starbucks Corporation*, No. 1:22-cv-00478-JLS (W.D.N.Y.) (ECF No. 71-1 at 1). After an investigation of the Region 3 charge, on December 15, 2022, the NLRB's General Counsel issued a Complaint and Notice of Hearing against Starbucks alleging violations of Section 8(a)(1) and 8(a)(4) of the Act. An evidentiary hearing before an administrative law judge is currently scheduled in that case to begin on February 9, 2023. *Id.* Exceptions may be filed to a decision by the administrative law judge with the Board. A final decision by the NLRB in that matter would then be subject to review by a circuit court of appeals.

*Shokrian*, No. 19 CV 162, 2020 U.S. Dist. LEXIS 154386 (E.D.N.Y. August 25, 2020) (citing *United States v. Nachamie,* 91 F. Supp. 2d 552, 558 (S.D.N.Y. 2000)). Standing has also been found where the movant "has a sufficient privacy interest in the confidentiality of the records sought." *ADL, LLC v. Tirakian,* No. 06 CV 5076, 2007 U.S. Dist. LEXIS 46198 (E.D.N.Y. June 26, 2007); *see also Solow v. Conseco, Inc.,* No. 06 CV 5988, 2008 U.S. Dist. LEXIS 4277 (S.D.N.Y. Jan. 18, 2008) ("While Rule 45 speaks of objections to subpoenas being asserted by the person commanded to produce and permit inspection of the subpoenaed documents, it is well-established that a party with a real interest in the documents has standing to raise objections to their production. . . . Thus, courts have recognized that parties with a privacy interest in subpoenaed documents have standing to oppose the subpoena.").[2]

The subpoenaed third-party witnesses are largely current or former rank-and-file employees (some of whom are unrepresented). Employees' confidentiality interests regarding Section 7 activity "have long been an overriding concern to the Board." *National Telephone Directory Corp.*, 319 NLRB 420, 421 (1995). Because employers so commonly retaliate against employees for exercising their Section 7 rights, the Board and courts have recognized that a "right to privacy" in their personal sentiments regarding union representation is "necessary to full and free exercise of the organizational rights guaranteed by the [Act]." *Pacific Molasses Co. v. NLRB*, 577 F.2d 1172, 1182 (5th Cir. 1978); *see also Wright Electric, Inc.*, 327 NLRB 1194, 1195 (1999)

---

[2] Where a party's objection to a Rule 45 subpoena on the grounds of relevancy and proportionality, the court will treat the motion to quash as a motion for protective order. *See All State Ins. Co. v. All Cty., LLC,* No. 19-CV-7121-WFK-SJB, 2020 U.S. Dist. LEXIS 176297 *3 (S.D.N.Y. Sep. 22, 2020); *Hughes v. Hartford Life & Accident Ins. Co.,* 507 F. Supp. 3d 384, 405 (D. Conn. 2020) ("In cases where the party lacks standing to challenge a subpoena served on a nonparty, the Court may nevertheless exercise its inherent authority to limit irrelevant or non-proportional discovery."). Fed R. Civ P. 26(b)(2)(C) ("On motion or on its own, the court must limit the frequency or extent of discovery if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . [or] is outside the scope permitted by Rule 26(b)(1)").

("The Board zealously seeks to protect the confidentiality interests of employees because of the possibility of intimidation by employers"), *enforced*, 200 F.3d 1162 (8th Cir. 2000); *Veritas Health Servs., Inc. v. NLRB*, 671 F.3d 1267, 1274 (D.C. Cir. 2012) ("Section 7 of the Act gives employees the right to keep confidential their union activities" (quoting *Guess?, Inc.*, 339 NLRB at 434)). The NLRB is charged with the duty to protect these rights and prevent coercion of employee witnesses, and accordingly, retains the requisite standing to move to challenge these Subpoenas. *See, e.g.*, *Noble Roman's, Inc.*, 314 F.R.D. 304, 305-07 (S.D. Ind. 2016) (affirming court's power to consider objections from a plaintiff that objects to a non-party subpoena, especially where the subpoena infringes upon the movant's legitimate interests).

Further, the Board possesses the statutory authority to determine whether the Subpoenas violate the NLRA and to remedy any violations in the public interest. *Amalgamated Util. Workers v. Consol. Edison Co.*, 309 U.S. 261, 265 (1940). So, while "[o]rdinarily, a party lacks standing to challenge a non-party subpoena on the basis of relevance or burden," *In re Lloyds Banking Grp. PLC*, No. 21-MC-00376, 2021 U.S. Dist. LEXIS 134046, at *8 (S.D.N.Y. July 19, 2021), special consideration should be given to the fact that the NLRB is the "public agent chosen by Congress" to enforce its provisions and secure remedies for violations. *Nathanson v. NLRB*, 344 U.S. 25 (1952). Such remedies are not limited "merely to questions of monetary loss," but attach to the "achievement and maintenance of workers' self-organization." *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 193 (1941). For that reason, this Court should grant deference to the significant concerns raised by these subpoenas, which would enable the Court "to take advantage of an agency's specialized knowledge, expertise, and central position within the regulatory regime." *Ellis v. Tribune Telephone Co.*, 443 F.3d 71, 82 (2d Cir. 2006). Indeed, as described in footnote 1 above, the NLRB General Counsel has recently issued an unfair labor practice complaint against

Starbucks alleging that Respondent violated Section 8(a)(1) and (4) of the Act by issuing subpoenas in *Leslie v. Starbucks Corporation*, No. 1:22-cv-00478-JLS (W.D.N.Y. 2022), which closely mirror the Subpoenas at issue here. And as also noted above, the Region is currently investigating the Union's unfair labor practice charge in NLRB Case No. 29-CA-309779, which similarly contends that the Subpoenas issued in the instant case violate the Act. This consideration by the Region is necessary to prevent this Section 10(j) proceeding from devolving into a further forum for coercion and retaliation by Starbucks against individual employees for exercising their rights under the Act.

### III. THE COURT SHOULD QUASH THE SUBPOENAS UNDER FRCP RULES 26 AND 45, AS WELL AS THE BOARD'S *GUESS?* FRAMEWORK, OR IN THE ALTERNATIVE, MODIFY THE PROTECTIVE ORDER

The Court should quash the instant Subpoenas because Respondent's intrusive requests fail to strike a proper balance between Respondent's rights to discover relevant evidence and employees' rights protected by Section 7 of the NLRA, consistent with Rule 26(c) of the Federal Rules of Civil Procedure, as well as the Board's framework in *Guess?, Inc.*, 339 NLRB at 434. For the reasons explained below, this Court should recognize that Starbucks' asserted need for the voluminous requests (when added to the extensive evidence already produced in the administrative record before the Court), is outweighed by the rights of employees protected by Section 7 of the NLRA. 29 U.S.C. § 157.

Courts "must" quash or modify a subpoena to a nonparty that "requires disclosure of privileged or *other protected matter*." Fed. R. Civ. P. 45 (d)(3)(A)(iii), (iv) (emphasis added). And "protected matter" is not limited to evidentiary privileges. *See Va. Dep't of Corr. V. Jordan*, 921 F.3d 180, 192 (4th Cir. 2019) (recognizing state law confidentiality interest in identity of suppliers of execution drugs); *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (finding First

Amendment-protected confidentiality interest of journalists and academic researchers in their investigative records). The Section 7 confidentiality interest asserted by the NLRB here protects information concerning the exercise of rights under the NLRA and is a distinct concept from an evidentiary "union-employee privilege," discussed in *Hernandez v. Office of the Comm'r of Baseball*, 331 F.R.D. 474, 477 (S.D.N.Y. 2019). Similarly, discovery that imposes undue burdens on federally protected rights or interests and seeks protected matter is not permissible.

Accordingly, federal courts must also quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 26(c)(1); 45(d)(3)(A)(iii), (iv); *see, e.g., Cazorla v. Koch Foods of Miss., L.L.C.*, 838 F.3d 540, 564 (5th Cir. 2016) (finding that discovery order directing production of employee immigration visa information imposed an undue burden on public interests and remanding to the district court to use Rule 26 to "protect the diverse and competing interests" involved); *Int'l Union, U.A.W. v. Garner*, 102 F.R.D. 108, 114 (M.D. Tenn. 1984) (denying motion to compel production of information related to union organizing because "compulsory disclosure of organizational ties can constitute a significant encroachment on freedom of association").

Courts have also delineated "a heightened regard for the burden to be imposed on a third party" in determining whether to quash a subpoena served upon a non-party to the case, as here. *In re Subpoena to Goldberg,* 693 F. Supp. 2d 81, 88 (D.D.C. 2010); *Schaaf v. Smithkline Beecham Corp.,* 233 F.R.D. 451, 453 (E.D.N.C. 2005); *accord Jordan*, 921 F.3d at 189 (describing Rule 45's proscription against imposing an undue burden on non-parties as a "more demanding variant of the proportionality analysis" applied under Rule 26 and noting that "courts must give the recipient's non-party status 'special weight,' leading to an even more 'demanding and sensitive' inquiry than the one governing discovery generally") (quoting *In re Pub Offering PLE Antitrust Litig.*, 427 F.3d 49, 53 (1st Cir. 2005)).

As a result, federal courts have quashed subpoenas to third parties when the information sought would be available through other sources. *See, e.g.*, *Zoological Soc. Of Buffalo, Inc. v. Carvedrock, LLC*, No. 10-CV-35A SR, 2013 WL 5652759, at *3 (W.D.N.Y. Oct. 15, 2013) (Rule 26(b)(2)(C)(i) requires courts to limit discovery if the materials sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive.") (citations omitted); *Va. Dep't of Corr.*, 921 F.3d at 189 ("Courts should also consider what information is available to the requesting party from other sources."); *Anwar v. Fairfield Greenwich Ltd.*, 297 F.R.D. 223, 226 (S.D.N.Y. 2013) (citation omitted); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 412, n.6 (C.D. Cal. 2014). When determining if a subpoena is unduly burdensome on a nonparty, courts must also consider the "size of and resources available to the responding party." *United States v. Int'l Bus. Machs. Corp. (IBM)*, 83 F.R.D. 97, 108 (S.D.N.Y. 1979).

Specifically, under the Federal Rules, discovery requests interposed for an improper purpose—including unlawful ones under the NLRA—should not be permitted. *See* Fed. R. Civ. P. 26(g)(1)(B)(ii). The Supreme Court has instructed that courts should not allow their proceedings to be used to further a violation of the Act, but instead must take cognizance of rights under the NLRA. *See Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83-85 (1982). In addition to traditional inquiries of oppression and burden on nonparties, as well as whether requests are made for an improper purpose, the Court should consider both the confidentiality interests conferred by the NLRA and the judiciary's circumscribed function in Section 10(j) cases in evaluating the need for the discovery sought.

The three-step analysis developed by the Board in *Guess?* to determine whether discovery requests propounded by an employer during a civil proceeding unlawfully coerces employees in the exercise of their rights under the Act is fully consistent with how Rule 26 and Rule 45 of the

Federal Rules of Civil Procedure guide federal courts in deciding discovery issues, while accounting for the special statutory concerns of the NLRA. *Guess?, Inc.*, 339 NLRB at 434-35. To be lawful, the employer's discovery requests: (1) must be relevant; (2) must not have an illegal objective; and (3) if the questioning is relevant and does not have an illegal objective, then the employer's interest in obtaining the information must outweigh employees' confidentiality interests under Section 7 of the Act. *Id.*; *see also Pain Relief Centers*, *P.A.*, 371 NLRB No. 143, slip op. at 2-3 (2022) (finding unlawful a discovery request (i) seeking documents that employees had submitted to the General Counsel or planned to introduce into evidence in an Agency hearing, (ii) the identity of all persons with whom they had discussed their NLRB case, (iii) all facts they had alleged to support a violation of the Act, and (iv) all persons they had contacted about serving as a witness in the NLRB case); *Chino Valley Medical Center*, 362 NLRB 283, 283, n.1 (2015) (finding employer subpoena—seeking communications between employees and their union, authorization and membership cards, and communications relating to card distribution and solicitation—unlawful because it would "subject employees' Sec[tion] 7 activities to unwarranted investigation and interrogation"), *enforced*, 871 F.3d 767 (9th Cir. 2017). This Court should consider the impact of discovery on employee Section 7 rights under the NLRA, including the right to confidentiality. It should also consider the unavoidable impact that employees subject to intrusive discovery will be inhibited from access to the Board, and chilled from communicating about protected activity with other employees, union organizers, and allied individuals or organizations.[3]

---

[3] To prevent interference with the NLRB's statutory role of defining the scope of rights under the NLRA, this Court should presume an activity is protected if it is arguably protected. *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1957). Information concerning Section 7 activity in general is arguably protected. 29 U.S.C. §§ 151, 157, 158(a)(3).

Moreover, the existing Protective Order regarding discovery in this case, which was entered without the participation of the nonparties under subpoena, is likely not sufficient to abate the chilling effects on NLRA rights. Under that Protective Order, Starbucks may, in its discretion, share protected information with managers (subject to authority of higher levels of Starbucks' management) who have power over employees' duties, schedules, and discipline. "The inevitable result of the availability of this information would be to chill the right of employees to express their favorable union sentiments." *Garner*, 102 F.R.D. at 116 (quoting *Madeira Nursing Center v. NLRB*, 615 F.2d 728, 731 (6th Cir. 1980), which concerned requests for authorization cards). And even if company officials were conscientious in following the Protective Order's dictates, which would be extremely difficult to police, "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350-51 (D.C. Cir. 1980).

The application of these principles, as outlined below, reveals that Respondent's subpoena requests here may violate Section 8(a)(1) of the NLRA under the *Guess?* standard to the extent they seek a substantial amount of material protected by the Act that is either irrelevant, was sought for an illegal objective, or the need for which is outweighed by the employees' Section 7 confidentiality interests.[4] The Subpoenas, *in toto*, may be considered to have an illegal objective in so far as it may have been carried out to retaliate against employees who testified for the General Counsel at the administrative hearing in Cases 29-CA-292741, et al., or gain intelligence or otherwise advance its anti-Union campaign, rather than to support its defenses in this proceeding.

---

[4] To the extent that this conduct by Starbucks may constitute an unfair labor practice in violation of the NLRA, such a finding is subject to a final determination by the NLRB pursuant to Section 10 of the NLRA, 29 U.S.C. § 160.

Respondent knew of the subpoenaed recipients' testimony in the administrative hearing, as well as their prior affidavit testimony in that case. And under the Federal Rules, the Subpoenas overall appear to be interposed for an improper purpose, seek protected matter, impose an undue burden, and oppress federally protected rights.[5]

### A. Subpoena Request No. 1(a) Should Be Quashed Because It Is Unduly Burdensome and the Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information Sought

Request No. 1(a) of the Subpoenas[6] seeks documents and recordings relating to communications between the subpoenaed witnesses and any Starbucks employees, the Union, the NLRB, and/or the media about the number of Great Neck store employees expected to vote *in favor* and *against* Union representation between the time when the Union filed with the NLRB its petition for a representation election at the Great Neck store and the time the votes in that election were tallied. First, this request has the apparent improper purpose and illegal objective of

---

[5] Preliminarily, we note that in the Subpoena "Definitions and Instructions" Paragraph 16 states that documents should be unredacted and while Paragraph 23 purports to limit the scope of the discovery requests to avoid unlawfully infringing upon employees' exercise of Section 7 rights, it is contradictory and ineffectual. Although Paragraph 23 requests subpoenaed individuals to "redact from responsive Documents the name of any Starbucks hourly employee . . . or information from which the identity of any Starbucks hourly employee could be discerned" where a failure to redact would disclose the employee's sentiment toward the Union, the paragraph's exceptions are so broad as to nullify its stated purpose. First, Paragraph 23's redaction language does not apply to the seven employees who testified at the administrative hearing and any additional employees who provided an NLRB affidavit. Second, regarding all employees, the redaction language does not apply to documents that "could be construed to reflect matters that affected the employee's interest . . . in union organizing or . . . representation" or that "otherwise relates to whether Section 10(j) relief would be 'just and proper.'" Thus, Paragraph 23 is internally inconsistent, giving with one hand what it takes away with the other. Despite the superseding protective order, it is worth highlighting that this ineffective provision illustrates Starbucks' attempt to maintain a pretense that the subpoenas do not coerce NLRA rights while exposing their contrary design. Moreover, the likelihood of different employees, some of whom are not represented by counsel, of misunderstanding these instructions or making an error in redactions is significant. Indeed, it is difficult to imagine that this is not one of the objectives of this exercise. Additionally, Instruction Paragraph 14 states that the Subpoena requests cover the period from August 2021 to the present which is overly broad given that the election petition was filed in February 2022 and all the alleged unfair labor practices followed. Therefore, anything preceding February 2022 is irrelevant as it seeks information concerning nationwide organizing and is beyond the scope of discovery order, but moreover reflects Respondent's unlawful objective and contributes to the coercive scheme of these Subpoenas.

[6] Request Nos. 1(a)-(f) of the Subpoenas, respectively, each call for production of virtually the same materials from each of the subpoenaed witnesses.

oppressing the employee witnesses. The administrative record contains the full set of facts from which to conclude that there is *both* reasonable cause to believe the violations occurred *and* that injunctive relief is just and proper. Furthermore, Respondent has already been given a full and fair opportunity to cross-examine Petitioner's witnesses and examine Petitioner's documentary evidence, so additional discovery at this post-full-litigation stage is moot. Permitting additional discovery at this stage serves to do nothing more than to unduly burden these individuals. Moreover, it is clear that the employees' strong Section 7 privacy interests outweigh Respondent's need for the information sought. *See, e.g.*, *Laguna College of Art & Design*, 362 NLRB 965, 965 n.1 (2015) (upholding hearing officer's determination to quash a subpoena seeking pro-union supervisor's personal emails and text messages with the union organizing committee and union officials involving organizing strategy because the "considerable interests" of the employees "in keeping their Section 7 activity confidential" outweighed the employer's need for the subpoenaed information). Request 1(a) therefore seeks protected information, imposes an undue burden, apparently violates Section 8(a)(1) of the NLRA and the Federal Rules regarding non-party subpoenas, and should be quashed.

**B.** **Subpoena Request No. 1(b) Should Be Quashed Because It Is Unduly Burdensome and the Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information Sought**

Request No. 1(b) seeks documents and recordings relating to communications between the witnesses and other Starbucks employees, the Union, the NLRB, and/or the media about Great Neck store employees who were considered to have changed their mind about supporting the Union and any statements such employees made or "things that the [employee] did that factored into that determination." Respondent's request for communications concerning "things that the [employee] did" is impermissibly vague, overly broad and unduly burdensome. The request is so

nebulous that it could encompass a limitless range of "things," such that witnesses will be unable to understand what must be produced. Additionally, Respondent's need for this information is outweighed by the employees' strong Section 7 confidentiality interests. Unlike Request No. 1(a), this request seeks documents containing employees' names—along with statements they made or things they did—that reflect a change in their position from supporting the Union to not supporting the Union. *See National Telephone Directory Corp.*, 319 NLRB at 421. Respondent's interest in ascertaining this *reason* employees changed from supporting to opposing the Union does not outweigh the employees' strong confidentiality interest in not exposing their Union activities to Respondent; the request thus evidences a violation of the NLRA, seeks protected matter, and is unduly burdensome under the Federal Rules.

### C. Subpoena Request No. 1(c) Should Be Quashed Because It Is Unduly Burdensome and the Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information Sought

Request No. 1(c) seeks documents and recordings relating to communications between the witnesses and other Starbucks employees, the Union, the NLRB, and/or the media about the number of Great Neck store employees who *favored* or *disfavored* union representation from the outset of organizing activity at that store until the Union filed its petition for a representation election there, and since the time the votes from that election were tallied by the NLRB to the present.  This request seeks essentially the same information as Request 1(a) above but for two broader timeframes spanning from the time when the organizing started to the present. For the same reasons, Respondent's interest in this information does not appear to outweigh the employees' Section 7 confidentiality interests, and under the Federal Rules, it should likewise be quashed.

**D. Subpoena Request No. 1(d) Should Be Quashed Because It Is Irrelevant, Unduly Burdensome, and the Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information Sought**

Request No. 1(d) seeks documents and recordings relating to communications between the witnesses and other Starbucks employees, the Union, the NLRB, and/or the media about the number of Starbucks employees from stores *other than the Great Neck store* who have communicated with the Union or with Great Neck store employees about unionization at the Great Neck store. First, the information requested is not relevant because Petitioner did not rely on chill at other stores in its argument for a national remedy (which this Court already declined), instead Petitioner was relying on Respondent's recidivism given its repeated pattern of discharging Union organizers and the number of Complaints that have issued across the country. For the same reason, the request is also beyond the scope of the Court's discovery order. Additionally, like Requests Nos. 1(a) and (c), although this request literally only seeks numbers of employees, the types of documents and recordings subject to the request will likely be embedded in protected documents, or recordings, as requested in the preface to this item. This clearly seeks protected matter and "[i]nvading privacy or confidentiality interests" constitutes a burden under Rule 45. *See Jordan*, 921 F.3d at 184. And the employees' privacy interests would appear to outweigh Respondent's need for the information. "[E]mployees should be free to participate in union organizing campaigns [or other protected concerted activity] without the fear that members of management are peering over their shoulders, taking note of who is involved in union activities, and in what particular ways." *Flexsteel Industries*, 311 NLRB 257, 257 (1993). Accordingly, Request 1(d) should be quashed, as it is irrelevant, impermissibly broad and unduly burdensome under the Federal Rules, and additionally, may indicate a violation of NLRA rights.

E. **Subpoena Request No. 1(e) Should Be Quashed Because It Is Irrelevant, Unduly Burdensome, Has an Improper Purpose, and the Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information Sought**

Request No. 1(e) seeks documents and recordings relating to communications between the witnesses and other Starbucks employees, the Union, the NLRB, and/or the media about the conduct in which Respondent is alleged to have engaged, which Petitioner alleges constitute unfair labor practice violations under the Act. First, the request is irrelevant because it goes to "reasonable cause" rather than "just and proper" as proscribed by the Court's December 15, 2022 order limiting the scope of discovery. Moreover, given that the administrative record upon which the Board will make its final decision has closed, it seeks to inappropriately introduce evidence that will not be considered by the Board or the Court of Appeals, and thus would be inappropriate for the district court to rely on it in evaluating reasonable cause. Second, Respondent's "just and proper" interests are weak and are outweighed by the employees' rights; Respondent already has access to all relevant evidence through the administrative proceeding and had a full and fair opportunity to elicit information about whether interim relief is "just and proper." *See generally NLRB v. Nueva Eng'g, Inc.*, 761 F.2d 961, 969 (4th Cir. 1985) (affirming administrative denial of employer's motion for exculpatory material in government's file based on strong policy of confidentiality of witness testimony). Because Respondent already possesses that information, seeking it from non-party witnesses may constitute an illegal objective, as the request is duplicative, harassing, punitive, oppressive and an undue burden in contravention of Federal Rule of Civil Procedure 26(b)(2)(C)(i). Request No. 1(e) is therefore irrelevant, propounded for improper purposes, unduly burdensome and oppressive under the Federal Rules, an apparent violation of NLRA rights, and should be quashed.

**F. Subpoena Request No. 1(f) Should Be Quashed Because It Is Irrelevant, Unduly Burdensome, Has an Improper Purpose, and the Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information Sought**

Request No. 1(f) seeks documents and recordings relating to communications between the witnesses and other Starbucks employees, the Union, the NLRB, and/or the media about Starbucks employees from *outside* the Great Neck store and whether those employees support or disfavor union representation "and the reasons for their position." This request goes beyond the scope of the Court's discovery order which was limited to the Great Neck store, thus seeking an improper purpose and it does not appear to have relevance to its defenses in this proceeding. For the same reasons stated above for 1(a), (c) and (d), Respondent cannot show any interest in this information that outweighs employees' Section 7 confidentiality interests. This request should be quashed for seeking an improper purpose, being irrelevant, unduly burdensome, oppressive, and potentially coercive of NLRA rights.

**G. Subpoena Request No. 2 Should Be Quashed Because It Is Irrelevant, Unduly Burdensome, Has an Improper Purpose, and the Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information**

Request No. 2 of the Subpoenas seeks documents relating to statements and information the witnesses posted to social media since December 2021 about organizing at the Great Neck store, Respondent's conduct alleged in the Complaint, and protected concerted activity involving union organizing or Respondent's unfair labor practices. The relevance of this request is unclear. As an initial matter, and as mentioned above, the timeframe is overly broad as this request seeks documents prior to February 2022. To the extent the information sought relates to "reasonable cause" the request is irrelevant given that the Board relies only upon the administrative record, and the Court's order limiting discovery curtailed this. To the extent the information sought somehow

relates to the "just and proper" prong, it seeks redundant and irrelevant information.[7] All relevant evidence as to both prongs has already been adduced in the administrative hearing during which Respondent had a full and fair opportunity to vet and elicit evidence on this issue; it should not be allowed to launch a cumulative, oppressive, and unduly burdensome parallel proceeding now. Aside from the lack or relevance and possibly illegal objective, the employees have strong Section 7 confidentiality interests in their social media posts regarding the Union, which far outweigh Respondent's need for these documents. Indeed, Request No. 2 broadly seeks all documents relating "in any way" to statements and information posted in social media regarding various forms of Union activity, and it is not targeted to the type of material that could potentially support a just-and-proper defense, e.g., social media statements indicating whether unfair labor practices chilled Section 7 activity. Rather, the request appears to be no more than an unwarranted fishing expedition regarding the employees' protected activities on social media. *See generally Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005) (whether a subpoena imposes an "undue burden" on a nonparty considers "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed."). Due to this overbreadth, Request No. 2 is impermissible under the Federal Rules and appears to coerce NLRA rights.

### H. <u>Subpoena Request Nos. 3-6 Should Be Quashed Because They Are Irrelevant, Unduly Burdensome, Have an Improper Purpose, and the Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information</u>

---

[7] *Cf. Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (discovery was properly disallowed in an ancillary proceeding when information sought was "obtainable from some other source that is more convenient, less burdensome, or less expensive" in another forum); *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990) ("[e]ven if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information").

Request No. 3 of the subpoenas seeks communications between employees and/or organizers and the Union concerning media contacts. Request No. 4 of the subpoenas seeks information about communications between employees and/or organizers and the Union concerning information to be provided to the media. Request No. 5 of the subpoenas seeks information about communications between employees and/or union organizers and the media. Request No. 6 of the subpoenas seeks information about statements made by employees and/or union organizers regarding various forms of protected concerted activity. The purpose of Request Nos. 3-6 is indeterminable and overly broad. Whether the individuals spoke to the media is entirely irrelevant. These requests seek documents reflecting the Union's internal deliberations and the employees' protected activities. Compelling disclosure of internal information that would reveal plans for the direction of the Union's nationwide organizing campaign to Starbucks, which emphatically opposes that campaign, would reasonably tend to coerce employees by preemptively closing off channels of communication.[8] Additionally, at least three of the subpoenaed employees did not testify at the administrative hearing and their Union affiliation is unknown, thus, production would likely result in revealing their Union sentiments, contrary to the Protective Order.

Additionally, the requests are worded such as to cover a broad swath of employee Union activity and protected communications with other employees, the media, and the general public—they do not specify the type of information that would potentially support a Section 10(j) defense. Additionally, the requests appear to have an illegal objective as they concern protected matter. *See Cusumano*, 162 F.3d at 717 (finding First Amendment-protected confidentiality interest of journalists and academic researchers in their investigative records). Additionally, quotes given to

---

[8] As the Supreme Court has recognized, "employees' right of self-organization depends in some measure on their ability to learn the advantages of self-organization from others." *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 532 (1992).

the media are a matter of public record and requesting such information from government witnesses places an undue burden on them in contravention of Federal Rule of Civil Procedure 26(b)(2)(C)(i). Similarly, Request No. 6 is so vague it seeks information about statements about various forms of conduct that it is impossible to determine what is being requested. Moreover, it is a legal conclusion as to whether certain conduct is "protected concerted activity." Second, communications between the Petitioner's witnesses and the Charging Party Union are shielded by the common interest rule, which "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties." *U.S. v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989). As the Charging Party before the NLRB, the Union in this case shares common interests with the Petitioner, and the common interest rule would privilege such documents from disclosure by the Petitioner. The Respondent now seeks the same privileged information from a third-party source, but the privilege covering the information remains intact. Neither Petitioner nor the third-party witnesses may be compelled to produce the work product of litigation allies. *See*, *e.g., Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1466 (11th Cir. 1984) (holding plaintiff did not waive privilege by sharing work product with EEOC in joint actions against defendant; district court order that EEOC produce documents received was overturned); *U.S. v. A.T. & T. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) (holding work product privilege not waived where party gave information to a government agency); *Information Resources, Inc. v. Dunn & Bradstreet Corp.*, 999 F. Supp. 591, 591-92 (S.D.N.Y. 1998), and cases cited therein (holding work product privilege not waived when product shared with allied party). Lastly, the employees' substantial Section 7 confidentiality interests in Requests 3-6 outweigh Respondent's need for the information to

support a potential Section 10(j) defense, and thus apparently coerce employees in the exercise of NLRA rights.

I. **Subpoena Request Nos. 7-8 Should Be Quashed Because They Are Unduly Burdensome, Seek Protected Matter, and the Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information**

Request No. 7 of the subpoenas seeks information relating to payments to employees and/or organizers by the Union. Request No. 8 of the subpoenas seeks information relating to payments made to employees and/or organizers by any person or entity at the Union's request related to protected concerted activity or in any way to Respondent. Without reaching whether Requests 7 and 8 are relevant or have an illegal objective, it is apparent that Respondent's need for the requested documents is outweighed by the employees' Section 7 privacy interests. Under the Federal Rules, courts take privacy interests into account when protecting information like personal or financial records, typically those belonging to nonparties. *See, e.g.*, *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 72 (S.D.N.Y. 2010) (entering protective order pursuant to Rule 26(c) governing use of employee personnel records in discovery). Moreover, employees have a substantial privacy interest in keeping confidential the fact that they may have worked for the Union, the same way they have a confidentiality interest in not revealing conversations they have had with their Union. To the extent the documents Respondent seeks arguably would assist in establishing a just-and-proper defense in the Section 10(j) proceeding, Respondent could obtain that information in a less intrusive manner. For example, the Union would be much better equipped to provide this information and anonymize it or break it down into numbers rather than outing employees, however Respondent did not attempt to do this. As discussed above, neither the Protective Order, nor Paragraph 23, cure these Requests' overreach. Accordingly, Requests 7 and

8 seek protected matter, impose and undue burden, are apparently coercive of NLRA rights and should be modified, if not quashed in their entirety.

**J. Subpoena Request No. 9 Should Be Quashed Because It Is Irrelevant, Unduly Burdensome, Has an Improper Purpose, and the Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information Sought**

Request No. 9 of the subpoenas seeks information relating to employees' and/or organizers' communications with the Union about recording conversations. This request bears no relevance to these proceedings and is beyond the scope of discovery insofar as it relates whether there is "reasonable cause" to believe that Respondent has violated the NLRA. Respondent could readily use this information for an illegal objective, specifically, retaliating against employees who may have broken its company policy concerning recordings (even though the policy allows for recordings that are permitted under federal labor laws). Indeed, employees may well reasonably conclude that they—or their coworkers—would be subject to discipline depending upon how they answer this question. Even if communications regarding these types of recordings could potentially reveal information regarding, e.g., the extent of how employee support for the Union changed following Respondent's unfair labor practices, the request is far broader than necessary to achieve that aim. But even assuming this request is relevant and lacks an "illegal objective," Respondent's interest in obtaining this information to support its Section 10(j) defense is outweighed by employees' significant confidentiality interests in their communications with the Union regarding the recording of conversations while employed by Respondent. As noted above, the Court "must" quash or modify a subpoena to a nonparty that requires disclosure of protected matter or subjects a person to undue burden. Fed. R. Civ. P. 45 (d)(3)(A)(iii), (iv) (emphasis added). Accordingly, because Request No. 9 seeks protected matter, unduly burdens the subpoena recipients, and apparently coerces NLRA rights, it should be quashed.

**K. Subpoena Request No. 10 Should Be Quashed Because It Is Overbroad and Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information Sought**

Request No. 10 of the subpoenas seeks information related to calls involving employees, organizers, and Union agents. Without reaching whether this query is relevant or has an "illegal objective," the employees' interest in protecting their confidential discussions and meetings with the Union outweighs Respondent's interest in these documents. To the extent Respondent seeks to ascertain levels of Union support at various points in time in relation to Respondent's unfair labor practices, this request—which would likely reveal the identities of employee supporters of the Union—goes well beyond what is necessary. Also "Union agents" is remarkably overbroad. As described above, the confusing and ambiguous Paragraph 23 and the Protective Order are will not protect such employees' identities from being revealed. Accordingly, Request No. 10 seeks protected matter, imposes an undue burden, and apparently coerces NLRA rights.

**L. Subpoena Request No. 11 Should Be Quashed Because It Is Irrelevant, Unduly Burdensome, and the Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information Sought**

Request No. 11 of the subpoenas seeks information related to discussions by employees and/or organizers about any increase or decline in support of organizing campaigns at the Great Neck store. This request appears to seek documents already included in Requests 1(a)-1(f), and it is impermissible for the same reasons.

**M. Subpoena Request No. 12 Should Be Quashed Because It is Irrelevant and Possibly Has an Improper Objective and the Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information Sought**

Request No. 12 of the subpoenas seeks information related to communications between employees, organizers, and the Union with publicly elected or appointed officials. This request is plainly irrelevant to potential Employer defenses in the Section 10(j) proceedings Rather, it

appears to seek information for some other purpose. Accordingly, this request seeks protected matter, is irrelevant, propounded for an improper purpose, unduly burdensome, and goes beyond the scope of the Court's Protective Order.

Furthermore, by subjecting employees and the Union to intrusive and burdensome requests concerning their contact with public officials, this request appears to infringe upon employees' and the Union's First Amendment rights to petition the government. *See generally Bill Johnson's Rests. v. NLRB*, 461 U.S. 731, 741 (1983) (First Amendment protects "right to petition the Government for redress of grievances").[9]

### N. **Subpoena Request No. 13 Should Be Quashed Because It Is Irrelevant, Unduly Burdensome, Has an Improper Objective, and the Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information Sought**

Request No. 13 of the subpoenas seeks emails from the "sbworkersunited@gmail.com" email account regarding support for the Union, protected concerted activity, and fear of retaliation for engaging in union activities, since August 2021. First, the timeframe for this request is overly broad. Given that the election petition was filed in February 2022 and the unfair labor practices then followed, Respondent is seeking information entirely unrelated to the instant proceeding, but rather that goes toward nationwide organizing, outside the scope of the Court's order limiting discovery. This request seeks to pierce the veil of the Union's organizing committee and to sort through all their emails. Requiring the employee/recipient to provide this information may well kneecap the Union's national organizing campaign by forcing employees to reveal internal information about organizing, including the identities and locations of employees participating in the campaign, which also, as discussed above, prospectively interferes with employees' rights to

_____

[9] Indeed, in the ongoing case against Starbucks in the W.D.N.Y., the court quashed similar subpoena requests made to the Union and individuals about their contact with elected officials. *See Leslie v. Starbucks Corporation*, No. 1:22-cv-00478-JLS (W.D.N.Y.) (ECF No. 49 at 6 (denying "Request 14 to the individuals/Request 12 to the [Union's] custodian of records)).

self-organization. Respondent could have easily drafted a request more directly targeted toward information that could potentially support a Section 10(j) defense, rather than this attempt to sift through all the bargaining committee's emails. Again, the employees' Section 7 confidentiality interests outweigh Respondent's need for the information to support its Section 10(j) defense. This request should be quashed as being irrelevant, duly burdensome, and as having an improper objective.

O. **Subpoena Request No. 14 Should Be Quashed Because Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information Sought**

Request No. 14 of the subpoenas seeks documents relating to and/or discussing reasons other than alleged retaliation that employees have cited as a reason for not supporting the Union. Without reaching whether this request is relevant or has an "illegal objective," it is clear the employees' Section 7 rights to keep this information confidential outweighs Respondent's interest in developing a potential Section 10(j) defense. The documents sought in Request No. 14 are also covered by Requests 1(a)-1(d) and 11, and the rationale for finding those requests potentially unlawful apply here as well.

P. **Subpoena Request Nos. 15-18 Should Be Quashed Because They Are Irrelevant, Unduly Burdensome, Seek Protected Matter, and the Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information**

Request No. 15 of the subpoenas seeks documents relating to employees' perceptions of the work environment at the Great Neck store since Joselyn Chuquillanqui's separation. Request No. 16 of the subpoenas seeks documents relating to employee's relationships among and between each other at the Great Neck store since Joselyn Chuquillanqui's separation. Request No. 17 of the subpoenas seeks documents and communications relating to the work environment at the Great Neck store since the vote count on May 3, 2022. Request No. 18 of the subpoenas seeks documents and communications relating to employee's relationships among and between each other at the

Great Neck store since May 3, 2022. It is unclear how the requested information in Requests 15-18 bears on whether interim relief is "just and proper." Not only is the information sought here irrelevant, but the language in Requests 16 and 18 regarding employee "relationships" and "work environments" is impermissibly vague and overly broad and therefore has an apparent improper purpose and arguably illegal objective. Respondent's effort to compel third-party production of documents pertaining to perceptions at its own Great Neck store is particularly egregious because Respondent has superior access to such evidence, insofar as it might weigh against finding harm to employees' rights under the Act. Respondent has full control over its own supervisors, managers, and agents, for example, who may provide testimony and evidence as to whether employees continued to support the union, notwithstanding the unfair labor practices in question. To the extent Respondent is trying to establish that reinstatement of Joselyn Chuquillanqui would not be just or proper, it has a weak interest compared to the employees' Section 7 rights to keep this information confidential. Thus, Requests 15-18 may impinge upon Section 7 rights

### Q. Subpoena Request No. 19 Should Be Quashed Because It Is Irrelevant, Unduly Burdensome, Oppressive, and the Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information

Request No. 19 of the subpoenas seeks documents reflecting when Starbucks became aware of the Union's organizing drive at the Great Neck store. Plainly, Starbucks is in the best position to know when it became aware of the Union's organizing drive at the Great Neck store. The query calls for employees to speculate as to when Respondent had actual or implied knowledge of the Union's organizing drive at the Great Neck store, making any response irrelevant and overly burdensome. Thus Request No. 19 may impinge upon Section 7 rights and should be quashed in its entirety.

### R. Subpoena Request No. 20 Should Be Quashed Because Employees' Section 7 Privacy Interests Outweigh Respondent's Need for the Information

Request No. 20 of the subpoenas seeks documents related to Great Neck store employees signing authorization cards, including questions or concerns expressed directed to the Union or were later reported or conveyed to the Union. Without reaching whether this request is relevant or has an "illegal objective," the NLRB has specifically found employees' Section 7 rights to keep this information confidential outweighs Respondent's interest in developing a potential Section 10(j) defense. *See generally National Telephone Directory Corp.*, 319 NLRB at 421 ("the confidentiality interests of employees who have signed authorization cards and attended union meetings are paramount to the [employer's] need to obtain the identities of such employees for cross-examination and credibility impeachment purposes").

### S. **Joselyn Chuquillanqui's Additional Subpoena Requests Should Be Quashed Because They Are Irrelevant, Unduly Burdensome, and Oppressive**

The subpoena to Joselyn Chuquillanqui seeks further production from her of additional documents related to her employment history and availability to work after she was discharged by Starbucks in July 2022 and her history of academic enrollment during that same period.[10] This information holds very little relevance to whether it is "just and proper" to order her reinstatement. Even if Chuquillanqui has obtained alternate interim employment, she testified that she still desires interim reinstatement under the protection of an injunction or her circumstances may change by the time an injunction issues. Moreover, an order requiring her interim reinstatement would be just and proper even if she were to decline it because it would send necessary reassurances to other employees that their rights will be protected. *See Overstreet v. David Saxe Prods., LLC*, No. 2:18-cv-02187-APG-NJK, 2019 WL 332406, at *9 n.4 (D. Nev. 2019) (assigning little weight to

---

[10] See Chuquillanqui's subpoena request nos. 15-18.-Chuquillanqui's subpoena request nos. 1-14 and 19-24 are identical to Employee subpoena request nos. 1-20.

whether the discriminatees wanted their jobs back because reinstatement also "sends a message to other employees that retaliatory discharges will be redressed"); *cf. Heinrich Motors, Inc. v. NLRB*, 403 F.2d 145, 150 (2d Cir. 1968) (reinstatement offer has "dual purpose of protecting the discharged employee and demonstrating the [employer's] good faith to its other employees"). Respondent already has this information from the administrative hearing. In seeking this information again, Respondent is harassing Chuquillanqui and creating an undue burden and oppression under Rules 26 and 45.

As mentioned above earlier, the Subpoenas, *in toto*, target employees who testified for the General Counsel at the administrative hearing with the apparent goal of inhibiting employee participation in Board proceedings, which may evidence a violation of Section 8(a)(1) and (4).[11] *Cf. Webco Industries*, 337 NLRB 361, 361 (2004) (employer violated 8(a)(1) and (4) by filing and pursuing preempted lawsuit against employees who had filed charges with the Board). This Court should consider the facts and circumstances surrounding the discovery at issue, which indicate that the Subpoenas would impose extremely burdensome responsibilities on the five individual employees under subpoena, who have jobs, families, and personal lives, compelling them to undertake the immense task of collecting and redacting potentially thousands of documents. This sort of weaponized and punitive discovery has the predictable effect of creating disaffection and discouraging initiating or cooperating with NLRB investigations and proceedings. *See Chino Valley Med. Ctr.*, *supra*, 362 NLRB at 283 n.1; *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 239-41 (1978) (disclosure of witness statements would create a risk witnesses might "be reluctant to give statements to NLRB investigators at all" because of the "all too familiar unwillingness [of

---

[11] Section 8(a)(4) of the NLRA prohibits discriminatory actions because an employee has filed charges or given testimony under the statute. 29 U.S.C. § 158(a)(4).

employees] to 'get too involved' [in formal proceedings] unless absolutely necessary"). Because Respondent failed to make efforts to limit their requests or obtain the information in the less burdensome ways, and nearly every subpoena request is overbroad, disproportionate, and unduly burdensome, this supports the inference that the entire effort was in support of an improper purpose rather than to support legitimate defenses. This constitutes both "undue burden" and "oppression" sufficient to quash the Subpoenas. Fed. R. Civ. P. 45(d)(3)(A)(iv), 26(c). Because "[n]on-parties have a different set of expectations," *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998), they should be accorded a greater degree of protection from the discovery requests. *See Socol v. Haas,* No. 3:18-cv-00090, 2021 U.S. Dist. LEXIS 118981, at *10 (W.D. Va. June 25, 2021) ("the standard of review for a nonparty subpoena is higher than that used to assess discovery requests to litigants"). Accordingly, "courts must give [a Rule 45 subpoena] recipient's nonparty status special weight, leading to an even more demanding and sensitive inquiry than the one governing discovery generally." *Jordan*, 921 F.3d at 189 (quotation marks omitted).

Consistent with the principles underlying the Federal Rules of Civil Procedure, as well as the Board's *Guess?, Inc*. standard concerning Section 7 rights and discovery, this Court should quash or modify the third-party Subpoenas for protection from "annoyance, embarrassment, oppression, or undue burden or expense." *Id.*; *see also Hooks ex rel. NLRB v. Hood River Distillers, Inc.*, No. 21-cv-268-SI, 2021 U.S. Dist. Lexis 160342 (D. Or. March 30, 2021) (applying Rule 26 in Section 10(j) case and granting in part union's motion to quash employer's subpoena). Applying the *Guess?* standard accommodates both the parties' legitimate needs for relevant information and the NLRA rights of employees within the provisions of the Federal Rules.

## IV. CONCLUSION

In this matter, Respondent has subpoenaed information directly from non-party witnesses rather than relying on the robust administrative record. In doing so, it seeks unreasonably cumulative and duplicative information. It also places an undue burden on those witnesses who have already testified in full at the administrative hearing, after being subject to Respondent's myriad unfair labor practices and under the stress of large-scale litigation over that conduct. Finally, Respondent's Subpoenas are inherently coercive and may violate the NLRA under the *Guess?* framework. For the reasons stated above, Petitioner respectfully urges the Court to quash Respondent's Subpoenas to third-party witnesses in this matter, or in the alternative, issue a modified Protective Order that addresses the NLRB's concerns as set forth above.

Dated January 13, 2023.

Matthew A. Jackson
National Labor Relations Board
Two MetroTech Center, Suite 5100
Brooklyn, NY 11201
Telephone: (718) 765-6202
Email: Matthew.Jackson@nlrb.gov