Cristina E. Gallo
Rachel S. Paster
Marie Hahn
COHEN, WEISS AND SIMON LLP
900 Third Avenue, Suite 2100
New York, NY 10022-4869
Tel.: 212-356-0226
Fax: 646-473-8226
cgallo@cwsny.com
rpaster@cwsny.com
mhahn@cwsny.com

*Attorneys for Workers United
and David Saff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TERESA POOR, Regional Director of Region 29 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD,<br><br>       Petitioner,<br><br>  vs.<br><br>STARBUCKS CORPORATION,<br><br>       Respondent. | **CASE NO. 22-CV-7255 (ARR)(JRC)**<br><br><br><br><br><br>Hon. Allyne R. Ross |

**MEMORANDUM OF LAW IN SUPPORT OF UNION NON-PARTIES' MOTION TO QUASH RESPONDENT'S RULE 45 SUBPOENAS TO WORKERS UNITED, DAVID SAFF, JOSELYN CHUQUILLANQUI, JUSTIN WOOSTER, MAX COOK, TAYDOE JONES, AND DARREN WISHER, OR, IN THE ALTERNATIVE, TO GRANT A PROTECTIVE ORDER**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS ................................................................................... 5

ARGUMENT ..................................................................................................... 8

I.    STARBUCKS HAS NOT SHOWN AND CANNOT SHOW THAT THE
INFORMATION IT SEEKS IS RELEVANT TO THE "JUST AND PROPER"
INQUIRY .................................................................................................... 9

    A.    Requests 1(f), 2-5, 11, 13, and 15-20 and the Additional Request to Ms.
Chuquillanqui are Wholly Irrelevant to the Just and Proper Analysis ................. 11

II.    THE SUBPOENAS ARE UNDULY BURDENSOME TO THE UNION AND
THE EMPLOYEES—NON-PARTIES TO THIS PROCEEDING—AND SEEK
INFORMATION ALREADY AVAILABLE TO THE EMPLOYER ........................... 13

    A.    The Subpoenas Are Unduly Burdensome ................................................. 14

    B.    The Subpoenas Seek Information Available From Other Sources as Well
as Cumulative and Duplicative Discovery .................................................. 16

III.    THE SUBPOENAS SEEK WHOLESALE DISCOVERY OF PRIVILEGED
AND CONFIDENTIAL INFORMATION ......................................................... 17

    A.    The Protective Order is Insufficient to Protect the Union and Employees'
Interests ........................................................................................... 17

    B.    The Subpoenas Violate Section 7 of the NLRA and Chill Workers' Rights
by Seeking Documents Protected from Disclosure by Section 7 ........................ 23

    C.    The Subpoenas Seek Material Protected by the Associational Privilege
Grounded in the First Amendment ......................................................... 27

    D.    The Subpoenas Also Seek Protected Internal Union Communications and
Strategy ........................................................................................... 30

    E.    The Requested Documents Encroach Upon the Union's Confidential,
Proprietary Information ...................................................................... 32

    F.    The Subpoenas Seek Information Protected by the Work Product Privilege
and/or the Common Interest Rule .......................................................... 35

i

IV.     IF THE COURT DECLINES TO QUASH THE SUBPOENAS IN THEIR
        ENTIRETY, THERE IS GOOD CAUSE FOR THE ISSUANCE OF A
        PROTECTIVE ORDER TO PROTECT THE UNION AND WORKERS FROM
        BEING COMPELLED TO TESTIFY AND PRODUCE DOCUMENTS
        CONCERNING CONFIDENTIAL AND PRIVILEGED MATTERS ............................ 39

CONCLUSION........................................................................................................................ 41

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A Michael's Piano, Inc. v. F.T.C.*,
    18 F.3d 138 (2d Cir. 1994)...............................................................................36, 37

*ABC Rug & Carpet Cleaning Serv. Inc. v. ABC Rug Cleaners, Inc.*,
    No. 08 Civ. 5737 (RMB)(RLE), 2009 WL 105503 (S.D.N.Y. Jan. 14, 2009).......................33

*Allied Irish Banks, P.L.C. v. Bank of America, N.A.*,
    252 F.R.D. 163 (S.D.N.Y. 2008) . Application of the ............................................35

*Allstate Ins. Co. v. All County LLC*,
    No. 19 Civ. 7121, 2020 WL 5668956 (E.D.N.Y. Sept. 22, 2020) .......................13, 19, 21, 22

*Anilao v. Spota*,
    No. 10 Civ. 32 (JFB)(AKT), 2015 WL 5793667 (E.D.N.Y. Sept. 30, 2015)..........................38

*Bell v. Village of Streamwood*,
    806 F. Supp. 2d 1052 (N.D. Ill. 2011) ..............................................................31, 32

*Berbiglia, Inc.*,
    233 NLRB 1476 (1977) ...................................................................................30, 31

*Bhatt v. Lalit Patel Physician P.C.*,
    No. 18 Civ. 2063 (ILG)(SJB), 2020 WL 13048694 (E.D.N.Y. Oct. 19, 2020)................14, 15

*Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank,
    Nat'l Ass'n*, No. 14 Civ. 9371 (KPF)(SN), 2017 WL 9401102
    (S.D.N.Y. Mar. 2, 2017) .................................................................................14

*Breaking Media, Inc. v. Jowers*,
    No. 21 MISC. 194 (KPF), 2021 WL 1299108 (S.D.N.Y. Apr. 7, 2021)....................14, 15, 17

*Brock v. Local 375, Plumbers Int'l Union of Am.*,
    860 F. 2d 346 (9th Cir. 1998) .........................................................................27

*Brockway v. Veterans Admin. Healthcare Sys.*,
    No. 10 Civ. 719, 2011 WL 1459592 (D. Conn. Apr. 15, 2011) .............................8

*Champ Corp.*,
    291 NLRB 803 (1988) ...................................................................................30

*Chino Valley Med. Center*,
   362 NLRB 283 (2015), *enf'd, United Nurses Ass'ns of Cal. v. NLRB*,
   871 F.3d 767 (9th Cir. 2017) ................................................26

*City of New York v. Blue Rage Inc.*,
   No. 17 Civ. 3480 (SJF)(AYS), 2018 WL 2709203 (E.D.N.Y. June 5, 2018) ..........................9

*Constellation Brands, U.S. Operations, Inc. v. NLRB*,
   842 F.3d 784 (2d Cir. 2016)................................................25

*D'Amico v. Cox Creek Refin. Co.*,
   126 F.R.D. 501 (D. Md. 1989)................................................26, 40

*Dole v. Serv. Emps. Union, AFL-CIO, Local 280*,
   950 F.2d 1456 (9th Cir. 1991) ................................................28

*Elec. Contractors, Inc. v. NLRB*,
   245 F.3d 109 (2d Cir. 2001)................................................25

*Fappiano v. City of New York*,
   640 F. App'x 115 (2d Cir. 2016) ................................................15

*FTC v. Exxon Corp.*,
   636 F.2d 1336 (D.C. Cir. 1980) ................................................21

*Gary Friedrich Enter., LLC v. Marvel Enter., Inc.*,
   No. 08 Civ. 1533 (BSJ)(JCF), 2011 WL 2020586 (S.D.N.Y. 2011).....................................36

*Guess?, Inc.*,
   339 NLRB 432 (2003) ................................................ *passim*

*Harvey's Wagon Wheel, Inc. v. NLRB*,
   550 F.2d 1139 (9th Cir. 1976) ................................................28

*Hernandez v. Off. Of the Comm'r of Baseball*,
   331 F.R.D. 474 (S.D.N.Y. 2019) ................................................32

*Hooks v. Hood River Distillers, Inc.*,
   No. 21 Civ. 268 (SI), 2021 WL 3732751 (D. Or. Mar. 30, 2021) ................................24, 30, 31

*Information Resources, Inc. v. Dunn & Bradstreet Corp.*,
   999 F. Supp. 591 (S.D.N.Y. 1998) ................................................38

*Int'l Bhd. of Teamsters, Airline Div. v. Allegiant Travel Co.*,
   No. 14 Civ. 43 (APG)(GWF), 2014 WL 6069851 (D. Nev. Nov. 12, 2014) ..........................28

iv

*International Union v. Garner*,
   102 F.R.D. 108 (M.D. Tenn. 1984) .........................................................................25, 28, 31

*Jean v. City of New York*,
   No. 09 Civ. 801 (RJD)(VVP), 2010 WL 148420 (E.D.N.Y. Jan 12, 2010) ...............35, 36, 37

*Johnnie's Poultry Co.*,
   146 NLRB No. 98 (1964) ............................................................................................26

*Kayata v. Foote, Cone & Belding Worldwide, LLC*,
   No. 99 Civ. 9022 (VM), 2000 WL 502859 (S.D.N.Y. Apr. 26, 2000)...................................38

*Kaynard v. Mego Corp.*,
   633 F.2d 1026 (2d Cir. 1980)............................................................................................16

*Kaynard v. Palby Lingerie, Inc.*,
   625 F.2d 1047 (2d. Cir. 1980)............................................................................................6

*Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*,
   No. 03 Civ. 5560 (RMB)(HBP), 2008 WL 4452134 (S.D.N.Y. Oct. 2, 2008) ........................9

*Kobell v. Reid Plastics, Inc.*,
   136 F.R.D. 575 (W.D. Pa. 1991) .............................................................................36, 38, 40

*Kreisberg v. HealthBridge Mgmt., LLC*,
   732 F.3d 131 (2d Cir. 2013)............................................................................................9

*Laguna College of Art and Design*,
   362 NLRB 965 (2015) ....................................................................................................25

*Leslie v. Starbucks Corp.*,
   No. 22 Civ. 478 (JLS) (W.D.N.Y.) ........................................................................... *passim*

*Ley v. Wingate*,
   182 F. Supp. 3d 93 (S.D.N.Y. 2016)....................................................................................10

*Mallick v. International Brotherhood of Electrical Workers*,
   749 F.2d 771 (D.C. Cir. 1984)............................................................................................35

*Manor Care of Easton, PA*,
   356 NLRB No. 39 (2010), *enf'd.* 661 F.3d 1139 (D.C. Cir. 2011)........................................20

*McDonald's USA*,
   363 NLRB 1362 (2016) ....................................................................................................19

*Fernbach ex rel. N.L.R.B v. Raz Dairy, Inc.*,
    881 F. Supp. 2d 452 (S.D.N.Y. 2012)...................................................................6

*NAACP v. Alabama ex rel. Patterson*,
    357 U.S. 449 (1958)...........................................................................................28

*Nat'l Tel. Directory Corp.*,
    319 NLRB 420 (1995) ..................................................................................24, 26

*Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders Ass'n*,
    646 F.2d 117 (4th Cir. 1981) .............................................................................3

*Hoffman ex rel. NLRB v. Inn Credible Caterers, Ltd.*,
    247 F.3d 360 (2d Cir. 2001)...............................................................................9

*Norton Audubon Hospital*,
    338 NLRB 320 (2002) ......................................................................................20

*Pain Relief Centers*,
    371 NLRB No. 143 (2022) ................................................................................26

*In re Parmalat Sec. Litig.*,
    258 F.R.D. 236 (S.D.N.Y. 2009) ..................................................................32, 33

*Paulsen v. Renaissance Equity Holdings, LLC*,
    849 F. Supp. 2d 335 (E.D.N.Y. 2012) ...............................................................9

*Pichler v. UNITE*,
    No. 04 Civ. 2841, 2005 WL 8166208 (E.D. Pa. Jan. 10, 2005) ......................34

*In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address*
    *69.120.35.31 ("Cablevision")*, No. 08 Civ. 347 (ARR)(MDG),
    2010 WL 2219343 (E.D.N.Y. Feb. 5, 2010)......................................15, 17, 29

*Seattle Times Co. v. Rhinehart*,
    467 U.S. 20 (1984).......................................................................................39-40

*Seeler v. Trading Port, Inc.*,
    517 F.2d 33 (2d. Cir. 1975)...............................................................................10

*Silverman v. J.R.L. Food Corp.*,
    196 F.3d 334 (2d. Cir. 1999).............................................................................6

*Strauss v. Credit Lyonnais, S.A.*,
    242 F.R.D. 199 (E.D.N.Y. 2007) ......................................................................36

*Sunbelt Rentals, Inc.*,
    372 NLRB No. 24 (2022) ....................................................................................26

*Tankleff v. County of Suffolk*,
    No. 09 Civ. 1207 (JS), 2011 WL 5884218 (E.D.N.Y. Nov. 22, 2011)....................................35

*In re Terrorist Attacks on Sept. 11, 2001*,
    454 F. Supp. 2d 220 (S.D.N.Y. 2006)...................................................................39

*Topo v. Dhir*,
    210 F.R.D. 76 (S.D.N.Y. 2002) ...........................................................................39

*U.S. v. AT&T Co.*,
    642 F.2d 1285 (D.C. Cir. 1980) ...................................................................37, 38

*U.S. v. Int'l Bus. Machines Corp.*,
    83 F.R.D. 97 (S.D.N.Y. 1979) .............................................................................14

*United Nurses Ass'ns of Cal. v. NLRB*,
    871 F.3d 767 (9th Cir. 2017) ...............................................................21, 22, 23, 25

*Va. Dep't of Corr. v. Jordan*,
    921 F.3d 180 (4th Cir. 2019) ........................................................................15, 26

*Veritas Health Servs., Inc. v. NLRB*,
    671 F.3d 1267 (D.C. Cir. 2012).......................................................................3, 5, 19, 24

*Wilson v. City of New York*,
    No. 06 Civ. 229 (ARR)(VVP), 2009 WL 10705937 (E.D.N.Y. Jan. 20, 2009).....................35

**Statutes**

29 U.S.C § 151................................................................................................33

29 U.S.C. § 157................................................................................................5

29 U.S.C. § 160................................................................................................1

29 U.S.C. § 160(j) ............................................................................................6

National Labor Relations Act Section 10(j).............................................................. *passim*

NLRA......................................................................................................... *passim*

NLRA Section 7............................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 26 ................................................................................................5, 32

Fed. R. Civ. P. 26(b)(1) .............................................................................................9

Fed. R. Civ. P. 26(b)(3) ...........................................................................................35

Fed. R. Civ. P. 26(c) ....................................................................................4, 39, 41

Fed. R. Civ. P. 26(c)(1) .............................................................................................2

Fed. R. Civ. P. 26(c)(1)(G) ......................................................................................32

Fed. R. Civ. P. 45 ............................................................................................. *passim*

Fed. R. Civ. P. 45(c)(3)(B)(i) ...................................................................................32

Fed. R. Civ. P. 45(d)(1) .......................................................................................7, 14

Fed. R. Civ. P. 45(d)(3) ...........................................................................................41

Fed. R. Civ. P. 45(d)(3)(A)(iii) ................................................................................35

Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv) ...........................................................................8

Fed. R. Civ. P. 45(d)(3)(A)(iv) ................................................................................14

Fed. R. Civ. P. 45(d)(3)(B)(i) ..............................................................................8, 17

Fed. R. Civ. P. 45(d)(3) and 26(c) .............................................................................1

United States Constitution First Amendment ................................................... *passim*

Pursuant to Federal Rules of Civil Procedure 45(d)(3) and 26(c), non-parties Workers United, affiliated with Service Employees International Union ("Workers United" or the "Union") and David Saff, an employee of the Workers United New York-New Jersey Regional Joint Board, affiliated with Service Employees International Union (collectively, the "Union Non-Parties"),[1] respectfully submit this memorandum of law in support of their motion to quash non-party subpoenas *duces tecum* and subpoenas *ad testificandum* issued to the Union, Mr. Saff and five former employees of Starbucks Corporation (the "Employees"), or in the alternative, to issue a protective order.

## PRELIMINARY STATEMENT

In this action, the National Labor Relations Board ("NLRB") seeks expedited and interim injunctive relief against Respondent Starbucks Corporation ("Starbucks," "Respondent," or "Employer") pursuant to Section 10(j) of the National Labor Relations Act ("NLRA" or the "Act"), 29 U.S.C. § 160.  On December 15, 2022, District Judge Allyne R. Ross ordered limited discovery on an expedited schedule.  Judge Ross limited discovery *solely* to the issue of whether the injunctive relief sought by the NLRB as to the Great Neck store is "just and proper."

On December 23, Starbucks served non-party subpoenas *duces tecum* and subpoenas *ad testificandum* to (1) the Union's Custodian of Records,[2] (attached as Exhibit A to the Affirmation of Cristina Gallo in Support of Union Non-Parties' Motion to Quash Respondent's Rule 45 Subpoenas to Workers United, David Saff, Joselyn Chuquillanqui, Justin Wooster, Max Cook, Taydoe Jones, and Darren Wisher or to Grant a Protective Order ("Gallo Affirmation")), and

---

[1] For the purposes of this brief, "Workers United" and the "Union" include Mr. Saff.

[2] The Union notes that the Subpoena evidently intended for Workers United only identifies its recipient as "Custodian of Records" and lists the New York City address of the New York New Jersey Joint Board, an affiliate of Workers United.  The Union further notes that Starbucks did not issue a 30(b)(6) subpoena to the Union, which would have required it to identify the specific topics for examination and would in turn have allowed the Union to make objections to such topics.

1

(2) David Saff, attached to the Gallo Affirmation as Exhibit B (collectively, the "Union Subpoenas").  Upon information and belief, Starbucks issued non-party subpoenas *duces tecum* and subpoenas *ad testificandum*, dated December 23, 2022, to former employees Joselyn Chuquillanqui, Justin Wooster, Max Cook, Taydoe Jones, and Darren Wisher (hereinafter, the "Employee Subpoenas"), attached to the Gallo Affirmation as Exhibit C (collectively with the Union Subpoenas, the "Subpoenas.").  On January 13, 2023, the Union and Mr. Saff served their responses and objections to the Union Subpoenas (attached to the Gallo Affirmation as Exhibit D), as did Ms. Chuquillanqui and Mr. Wooster.  On February 1, 2023, the Employer reported that it had served Mr. Jones and Mr. Wisher but was unable to serve Mr. Cook.  (Dkt. No. 57.)

The Union respectfully requests that the Court (1) issue an Order quashing all of the Subpoenas and each of the requests therein (to the extent not already withdrawn by the Employer), including those issued to Ms. Chuquillanqui, Mr. Wooster, Mr. Cook, Mr. Jones, and Mr. Wisher pursuant to Rule 45 of the Federal Rules of Civil Procedure ("Rule 45") or, in the alternative, (2) grant a protective order pursuant to Rule 26(c)(1) protecting all of the non-parties from the oppression and undue burden caused by the Subpoenas.  These highly burdensome Subpoenas seek from the Union and former employees—all of whom are non-parties—large amounts of information that is not relevant to the merits of the limited proceeding before this Court.  The information sought is well outside the scope of the limited discovery permitted by Judge Ross and thus is in defiance of her directive.

The Subpoenas expressly seek documents regarding workers' protected activity as well as highly confidential information about the Union's organizing strategy and tactics—including, but not limited to, information that is privileged under the NLRA.  If this Court compels the

Union and/or the workers to produce this sensitive and legally-protected information over their objections, the inevitable result will be the further chilling of union activity by Starbucks employees at Great Neck and across the country.

Indeed, for this reason, the Union has filed an unfair labor practice ("ULP") charge alleging that the Subpoenas violate Section 7 of the NLRA, which protects the rights of workers to engage in concerted activity for their mutual aid and protection, including the right to communicate confidentially about union activity.[3]  *See Veritas Health Servs., Inc. v. NLRB*, 671 F.3d 1267, 1274 (D.C. Cir. 2012).  And, NLRB Region 3 has already issued an administrative complaint alleging that the substantively-identical subpoenas that Starbucks issued to the Union and workers in *Leslie v. Starbucks Corp.*, No. 22 Civ. 478 (JLS) (W.D.N.Y.) interfered with workers' rights in violation of the NLRA.[4]  Likewise, NLRB Regions 21 and 28 have issued complaints alleging that Starbucks violated the Act by serving subpoenas upon workers which sought, *inter alia*, communications with the Union and employees.[5]  Here, at a minimum, a stay of enforcement of the Subpoenas as to Section 7 privileged and confidential materials pending the NLRB's determination of the legality of the Subpoenas will avoid inconsistent results and the irreversible disclosure of protected information.  *See Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders Ass'n*, 646 F.2d 117, 120-22 (4th Cir. 1981) (district courts should not interfere in areas where the NLRB has "exclusive jurisdiction" in recognition of the possibility of

---

[3] A copy of the Union's ULP charge in Case Number 29-CA-309779 is attached to the Gallo Affirmation as Exhibit E.  The Union's charge alleges that Starbucks interfered with employees' Section 7 rights, in violation of Section 8(a)(1) of the Act, by issuing the Subpoenas.  The charge further alleges that the Subpoenas were issued in retaliation against Mr. Saff, Ms. Chuquillanqui, and Mr. Wooster for their participation in the underlying ULP hearing, in violation of Section 8(a)(4) of the Act.

[4] A copy of the NLRB's Complaint from Region 3 is attached to the Gallo Affirmation as Exhibit F.

[5] A copy of the NLRB's Complaints from Region 21 (Case Numbers 21-CA-296716, *et al.*) and Region 28 (Case Numbers 19-CA-290162, *et al.*) are attached to the Gallo Affirmation as Exhibits G and H, respectively.

"inconsistent adjudications").

In addition to unlawfully seeking protected and confidential communications, the Subpoenas are also burdensome in their vast scope.  Upon initial receipt of the Subpoenas, the Union Non-Parties began searching through their files, devices and accounts.  The Union Non-Parties have thus far identified thousands of pages of documents that could conceivably be deemed responsive to the Subpoenas.[6]

These Subpoenas are part and parcel of the Employer's campaign strategy to oppose the Union's organizing drive.  The Employer's tactics—and their resulting interference with employees' protected statutory rights—are what prompted the NLRB to seek Section 10(j) relief in this court.  By issuing the Subpoenas, Starbucks has moved its anti-union campaign from the Great Neck store into this court of law, and is now using the Court's processes to punish the workers, and stifle the Union, for engaging in protected activity and to further dissuade Starbucks employees from supporting the Union.

For all of these reasons, the document and testimony Subpoenas should be quashed in full pursuant to Rule 45 and relevant case law.

In the alternative, or in the event the Court grants the motion to quash only in part, Workers United respectfully requests that the Court issue a comprehensive protective order pursuant to Rule 26(c) protecting the Union and the subpoenaed former employees from being required to produce documents regarding or to testify about any information concerning (1) the Union's confidential and proprietary organizing and campaign strategy, (2) any other confidential Union information, and (3) any organizing and protected, concerted activity that is

---

[6] The Union Non-Parties are in the process of determining whether, and to what extent, the Employer's January 30, 2023, withdrawal of certain requests will impact the potential universe of documents.  (Gallo Aff., ¶ 15 & n.1.)

4

protected by Section 7 of the Act, 29 U.S.C. § 157, or by the First Amendment of the United States Constitution.  *See Veritas*, 671 F.3d at 1274 (the Act protects the rights of workers to engage in concerted activity and to communicate in confidence about union activity).  Workers United further requests that Starbucks be barred from requesting confidential work product or questioning the subpoenaed employees regarding the Union attorneys' work product.

Workers United is aware that a protective order was previously entered in this case. (Dkt. No. 44.)  However, as discussed in Section III.A., *infra*, the Order does not sufficiently protect the statutory and constitutional rights of Starbucks' employees under Section 7 of the Act and the First Amendment, respectively.  For the reasons set forth at length in Section IV herein, "good cause" exists for the issuance of a further protective order under Rule 26 which will sharply limit the testimony and/or documents to be provided.

## STATEMENT OF FACTS

Since August 2021, employees at almost four hundred Starbucks stores have filed election petitions with the NLRB seeking to be represented by Workers United.  Great Neck, which is located in Long Island, is one of these stores.  Over a few short weeks in early 2022, after learning of an ongoing union organizing drive at its Great Neck store, Starbucks ran an aggressive antiunion campaign, committing extensive ULPs in the process.  The ULPs are the subject of the underlying administrative proceeding before the NLRB.  The ULPs included disciplining and terminating worker leader Joselyn Chuquillanqui.  Starbucks' pervasive ULPs led to a significant decline in Union support: in a shop where all fifteen workers had signed authorization cards prior to the Union's filing of a representation petition, only one third voted

for the Union, causing a 6-5 vote loss for the Union.[7]

Based on the egregious nature of this conduct, the Regional Director of NLRB Region 29 filed a petition to seek immediate relief on behalf of the workers at the Great Neck store, including, but not limited to, a bargaining order and the reinstatement of Ms. Chuquillanqui.  As the Court is aware, Region 29 ("Petitioner" or the "NLRB") sought to try this case on the basis of the voluminous record developed in the underlying administrative proceeding before NLRB Administrative Law Judge ("ALJ") Jeffrey Gardner.  (Dkt. No. 2 at 1.)  This record was developed over many days of hearing in October and November 2022.  Starbucks opposed Petitioner's request to proceed on the administrative record and sought to engage in discovery.  (Dkt. Nos. 12, 18.)  On December 15, 2022, Judge Ross ordered that (1) any relief the Court would provide in the 10(j) case would be limited to the Great Neck store, and (2) Petitioner's request to try the case on the basis of the underlying record be denied as to the "just and proper" remedy—the second prong of the Section 10(j) analysis[8]—thereby allowing for limited discovery on that prong only.[9]

As this Court is also aware, this proceeding is one of several Section 10(j) proceedings pending against Starbucks.  One such proceeding is *Leslie*, No. 22 Civ. 478 (JLS) (W.D.N.Y.).  In *Leslie*, Starbucks served subpoenas which are largely identical to the Subpoenas.  *See id*., No.

---

[7] (Dkt. No. 16-2, Ex. 18) (authorization cards signed by all Great Neck employees).)

[8] Under Section 10(j) of the NLRA, a district court "shall have jurisdiction to grant the Board such temporary relief or restraining order as it deems just and proper."  29 U.S.C. § 160(j).

[9] In the Southern and Eastern Districts of New York, the Union notes that it is common for cases seeking Section 10(j) relief to be tried on the administrative record, as Petitioner sought to do here.  *See, e.g. Silverman v. J.R.L. Food Corp.*, 196 F.3d 334 (2d. Cir. 1999) (reversing lower court's denial of injunction; both Second Circuit and district court relied on record); *Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047, 1051-52 (2d. Cir. 1980) (affirming a preliminary injunction under Section 10(j) that was granted based on the hearing transcript and exhibits adduced before the ALJ in the underlying administrative proceeding); *Fernbach ex rel. N.L.R.B v. Raz Dairy, Inc.*, 881 F. Supp. 452, 456-60 (S.D.N.Y. 2012) (granting a preliminary injunction under Section 10(j) based on affidavits).

22 Civ. 478 (Dkt. No. 49 at 4).[10]  Following the Union's motion in that case, the Court quashed a

quotient of the subpoenas' requests on the basis of undue burden and because the information

sought was not necessary to the 10(j) proceeding.  *Id.*, No. 22 Civ. 478 (Dkt. No. 49 at 4)

(quoting *U.S. v. Electro-Voice, Inc.*, 879 F. Supp. 919, 923 (N.D. Ind. 1995)).  Specifically, the

Court quashed requests that mirror Requests 1(d), 1(e), 2, 6-10, and 12 in all of the Union, Saff,

and Employee Subpoenas, as well as those that mirror Requests 15-18 in Ms. Chuquillanqui's

subpoena.[11]  Despite the ruling quashing these requests, and notwithstanding its obligation under

Rule 45(d)(1) to take reasonable steps to avoid imposing undue burden or expense on non-

parties, Starbucks nonetheless served subpoenas in this case that included all of the requests that

had been quashed in *Leslie*.  This is further evidence that the Subpoenas were propounded as part

of the Employer's antiunion campaign and not for legitimate fact-finding purposes.

    In response to the Union's anticipated motion to quash, on January 30, 2023, Starbucks

withdrew some but not all of the requests that were quashed in *Leslie*.  However, Starbucks did

not withdraw Request 2, for social media posts (Exhibits A-C), or Request 15 of the

Chuquillanqui subpoena for mitigation evidence (Exhibit C), though both of these requests were

---

[10] The subpoena served upon the Union's Custodian of Records in *Leslie* is attached to the Gallo Affirmation as Exhibit I; one of the substantively identical subpoenas served upon 21 Union and Starbucks employees is attached to the Gallo Affirmation as Exhibit J.  We note that the Subpoenas here include additional requests, Requests 15 to 20, not sought in *Leslie*.

[11] On December 28, 2022, the Union, amongst others, petitioned the Second Circuit for a writ of mandamus vacating the district court's discovery order in *Leslie*.  *See In re Workers United et al.*, No. 22-3299 (Dec. 28, 2022), attached to the Gallo Affirmation as Exhibit K.  The petitioners seek a determination of the existence of a "union communication privilege" preventing the disclosure of confidential communications, barring a showing of compelling need, "regarding: (1) union advice to members regarding protected activity; and (2) organizing efforts that would expose union strategies or worker support for the union."  (Gallo Aff., Ex. K at 34.)

On January 27, 2022, the NLRB petitioned the Second Circuit for a writ of injunction in *Leslie*.  *See In re National Labor Relations Board*, No. 23-120 (Jan. 27, 2023), attached to the Gallo Affirmation as Exhibit L.  The NLRB argues that the "predatory discovery" in the district court proceeding threatens to prevent the appellate court from effectively exercising its review of interim relief for the ULPs and "from meaningfully enforcing a final [NLRB] order in the underlying" ULP proceeding, and further, because there is a pending ULP case regarding the subpoenas, "allowing the subpoenas to be enforced or permitting the nonparties to be held in contempt would also defeat [the Second Circuit's] prospective jurisdiction over that proceeding."  (Gallo Aff., Ex. L at 18-19, 23.)

quashed in *Leslie*.[12]

## **PROCEDURAL BACKGROUND**

On January 13, 2023, the Union and Mr. Saff served their responses and objections to the Union Subpoenas, as did Ms. Chuquillanqui and Mr. Wooster.  (Gallo Aff., ¶ 6; *id.*, Ex. D.)  On January 23, 2023, the Union conferred with Respondent regarding its objections.  (*Id.*, ¶ 17.)  That same day, the Union Non-Parties produced non-privileged documents responsive to two of the Subpoenas' requests.  (*Id.*, ¶ 16.)  The parties engaged in good faith negotiations but were unable to reach agreement regarding this dispute.  (*Id.*, ¶ 17.)

The Court held oral argument on January 27, 2023.  On January 30, 2023, Starbucks withdrew certain requests in the Subpoenas: Requests 1(d), 1(e), 6-10, and 12 of all the Subpoenas, (Exhibits A-C), as well as Requests 16-18 of Ms. Chuquillanqui's subpoena.  (Dkt. No. 56.)

## **ARGUMENT**

Rule 45 states that a subpoena "*must*" be quashed if it, *inter alia*, demands protected or privileged information or subjects the recipient to an undue burden.  Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).  Further, pursuant to Rule 45(d)(3)(B)(i), a subpoena may be quashed if it requires the disclosure of confidential information, including "trade secret[s]."

---

[12] Starbucks effectuated service upon Mr. Jones and Mr. Wisher, who are not represented in this proceeding, in late December.  (Dkt. No. 57.)  Mr. Jones and Mr. Wisher may have already produced documents, information, or testimony in response to the Subpoenas or may do so during the pendency of this motion.  If this Court grants any of the relief sought herein, that relief should be applied to the same extent to documents, information, or testimony produced theretofore by Mr. Jones and Mr. Wisher, and Starbucks should be ordered to return and/or destroy any such documents, information, or transcripts that would not have been subject to production had the Court's order been in effect.  *See, e.g.*, *Brockway v. Veterans Admin. Healthcare Sys.*, No. 10 Civ. 719, 2011 WL 1459592, at *8 (D. Conn. Apr. 15, 2011) (retroactively quashing subpoenas).  Starbucks should further be precluded from relying on these materials, either inside or outside of this litigation, consistent with the protective order.  (Dkt. No. 44.)

## I.   STARBUCKS HAS NOT SHOWN AND CANNOT SHOW THAT THE INFORMATION IT SEEKS IS RELEVANT TO THE "JUST AND PROPER" INQUIRY

The Federal Rules of Civil Procedure limit discovery to nonprivileged matters[13] that are "relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The party issuing the subpoena bears the burden of demonstrating "that the information sought is relevant and material to the allegations and claims at issue in the proceedings."  *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560 (RMB)(HBP), 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008) (collecting cases).  In the absence of such a demonstration, federal courts will quash the subpoena.  *See, e.g.*, *City of New York v. Blue Rage Inc.*, No. 17 Civ. 3480 (SJF)(AYS), 2018 WL 2709203, at *4 (E.D.N.Y. June 5, 2018) (granting motion to quash where party issuing subpoena failed to demonstrate the relevance of requested documents).

The sole inquiry about which Judge Ross has permitted discovery in this case is whether the relief requested is "just and proper."[14]  Section 10(j) interim injunctive relief is "just and proper" when "it is necessary to prevent irreparable harm or to preserve the status quo."  *Kreisberg v. HealthBridge Mgmt., LLC*, 732 F.3d 131, 142 (2d Cir. 2013) (citation and internal quotation marks omitted).  In evaluating irreparable harm, the test is "whether the employees' collective bargaining rights may be undermined by the . . . [alleged] [ULPs] and whether any further delay may impair or undermine such bargaining in the future."  *Hoffman ex rel. NLRB v. Inn Credible Caterers, Ltd.*, 247 F.3d 360, 369 (2d Cir. 2001); *see, e.g.*, *Paulsen v. Renaissance*

---

[13] As discussed further in Sections III.B – III.F., *infra*, the information Starbucks seeks is privileged.

[14] Judge Ross *did not* permit the Employer to seek discovery as to the question of whether there is "reasonable cause" to believe that a violation of the Act has occurred—*i.e.*, whether there is reasonable cause to believe that the employer committed the ULPs underlying the Board's petition for 10(j) relief.  (*See* Dkt. Entry (Dec. 15, 2022).)

*Equity Holdings, LLC*, 849 F. Supp. 2d 335, 360 (E.D.N.Y. 2012) ("The erosion of support for the Union presents a threat of irreparable harm that justifies injunctive relief.") (citation omitted). "The status quo that must be restored" by Section 10(j) relief "is the one reflected by the authorization cards before [the employer's ULPs] occurred." *Ley v. Wingate*, 182 F. Supp. 3d 93, 104 (S.D.N.Y. 2016) (citation omitted); *see Seeler v. Trading Port, Inc.*, 517 F.2d 33, 38 (2d. Cir. 1975) ("[S]ection 10(j) was intended as a means of preserving or *restoring* the status quo as it existed before the onset of [ULPs]") (emphasis added) (citation omitted).

  As an initial matter, all of the requests are overbroad because they seek documents spanning the period August 2021 to the present, even though the Union did not file the election petition until February 9, 2022.  The date of the filing of the petition—at which time it is undisputed that all fifteen of the Great Neck employees had signed authorization cards—is the date of the relevant "status quo."  *See Wingate*, 182 F. Supp. 3d at 104.

  The Subpoenas seek extremely broad information about employees' protected Section 7 activity and the Union's internal operations, communications, and organizing activity— information that is simply not relevant to the limited inquiry of whether injunctive relief is "just and proper."  Specifically, the only relevant areas of inquiry are whether—in order to prevent harm or preserve the rights of Great Neck employees—it is just and proper to order Starbucks to (1) cease and desist from engaging in alleged ULP conduct, (2) bargain with the Union, (3) rescind the discipline of and offer reinstatement to Ms. Chuquillanqui, and (4) post notices regarding the Section 10(j) order.

A. **Requests 1(f), 2-5, 11, 13, and 15-20 and the Additional Request to Ms. Chuquillanqui are Wholly Irrelevant to the Just and Proper Analysis**

Each of Requests 1(f), 2-5, 13, and 15-20[15] are facially irrelevant to the "just and proper" inquiry, as is the additional request in Ms. Chuquillanqui's subpoena (Request 15), which concerns whether Ms. Chuquillanqui mitigated any damages following her termination.

Request 1(f) seeks documents regarding Starbucks employees *not employed* at the Great Neck store, notwithstanding the facts that the ULPs at issue here are alleged to have occurred at the Great Neck against Great Neck employees, and the relief sought in this proceeding is specific to Great Neck.  (Dkt. No. 15.)  With regard to the Employees, Request 1(f) seeks communications with non-Great Neck employees—in other words, communications entirely unrelated to the issues in this case, and indeed would catch in its overbroad net communications about organizing efforts at other stores—the epitome of Section 7 protected activity.

Request 2 seeks documents pertaining to the Union's and employees' social media posts "concerning union organizing at the Great Neck store," ULPs Starbucks is alleged to have engaged in, and "rallies, protests, strikes, forums, seminars, programs or the like involving union organizing at, or alleged [ULPs] by, Starbucks at the Great Neck store and matters related thereto."  To the extent Request 2 seeks public posts on social media, the Union, Mr. Saff, Ms. Chuquillanqui, and Mr. Wooster have already produced responsive documents in their possession, custody, or control.  However, to the extent this request seeks private messages exchanged using social media or messaging apps,[16] it should be quashed.  Notably, the same request was quashed in *Leslie*, as were several other requests that seek the very same information

---

[15] The document subpoena issued to Ms. Chuquillanqui contains the same requests, plus an additional request.  However, the numbering is slightly different.  The corresponding requests in Ms. Chuquillanqui's subpoena are 1(f), 2–5, 11, 13, and 19-24.  (Gallo Aff., Ex. C.)

[16] The scope of the request is unclear as the term "social media" is vague and is not defined by Starbucks.

11

(and which Starbucks has withdrawn here—Requests 1(e) (communications concerning ULPs committed by Starbucks) and 6 (documents relating to speeches, comments, remarks, or responses at rallies, protests, strikes, forms, seminars, etc.)).  The information sought by this request has nothing to do with the just and proper inquiry and further is so incredibly overbroad that it sweeps in all communications relating in any way to the union campaign.

Requests 3, 4, and 5 seek documents relating to the Union's and employees' communications with the media.  Request 13 seeks emails sent from the email account sbworkersunited@gmail.com by Great Neck store employees reflecting their support for the Union.  None of these requests seek information that has any bearing on the question of whether the issuance of interim injunctive relief would be just and proper.[17]

Requests 15 to 18 seek documents relating to "the work environment" and employees' relationships following the vote count on May 3, 2022 and Ms. Chuquillanqui's subsequent unlawful termination;[18] Request 19 seeks documents "reflecting when Starbucks became aware of the Union's organizing drive at the Great Neck store"; and Request 20 seeks communications relating to the signing of union authorization cards.  None of these requests were included in the *Leslie* subpoenas.  And, none are relevant to the only issue on which the Court has authorized discovery.

The additional request in Ms. Chuquillanqui's subpoena, which seeks "[a]ll documents relating to [her] employment" after her termination from Starbucks, is also plainly irrelevant to whether immediate interim relief is warranted.  The same request was quashed in *Leslie* and

---

[17] Starbucks is apparently seeking this information in support of its unfounded claim that the Union is "driving a false narrative in the media and social media that there is a crisis afoot."  (Dkt. No. 12 at 3.)  But what the Union and employees posted or shared with the press has no bearing on whether injunctive relief is just and proper to remedy the harm caused by Starbucks' conduct.

[18] These requests are also unduly vague.

should be quashed here.  In addition to bearing no relevance to these proceedings, the request is so overbroad it would require Ms. Chuquillanqui to produce her resume, employment application, and every paystub, tax document, letter or communication from her employer, among other documents.

Further, the documents are not specifically described by the Subpoenas.  As was set forth in the Union's objections, the overwhelming majority of the requests are overbroad because they seek "all documents."  The breadth of these requests is compounded by the fact that Requests 2 to 5 of the Union and Employee Subpoenas seek "all documents" "relating in any way" to the requested documents, thereby indiscriminately sweeping in even more documents with limited or no bearing on this case and should be quashed.  *See, e.g.*, *Allstate Ins. Co. v. All County LLC*, No. 19 Civ. 7121, 2020 WL 5668956, at *3 (E.D.N.Y. Sept. 22, 2020) (noting that a request for "all documents in any way related to" defendants would be an impermissible "fishing expedition") (citation omitted).  Many of the Subpoenas' requests are also confoundingly vague or overbroad: two seek documents "relating to the work environment" at the Great Neck store, and two seek documents "relating to the relationships among and between partners[19]."  (Gallo Aff., Exs. A-B (Requests 15-18); *id.*, Ex. C (Requests 19-22).)

Because Starbucks has not shown and cannot show that the information it seeks in Requests 1(f), 2–5, 13, and 15-20 of the Subpoenas and Request 15 of the Chuquillanqui subpoena is relevant and narrowly tailored to the question of whether interim injunctive relief is just and proper, these requests should be quashed.

## II.   THE SUBPOENAS ARE UNDULY BURDENSOME TO THE UNION AND THE EMPLOYEES—NON-PARTIES TO THIS PROCEEDING—AND SEEK INFORMATION ALREADY AVAILABLE TO THE EMPLOYER

---

[19] "Partners" is the term that Starbucks uses to refer to its employees.

## A.     The Subpoenas Are Unduly Burdensome

The Subpoenas should also be quashed in their entirety pursuant to Rule 45(d)(3)(A)(iv) because they are *in toto* unduly burdensome to the Union Non-Parties and the Employees. *See Bhatt v. Lalit Patel Physician P.C.*, No. 18 Civ. 2063 (ILG)(SJB), 2020 WL 13048694, at *2 (E.D.N.Y. Oct. 19, 2020) ("[I]t is up to the court to strike a delicate balance among the degree of relevance of the requested materials, the severity of the burden . . . , and the utility of the protective mechanisms provided by the Federal Rules") (quoting 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2459 (3d ed. 2020)).  In analyzing a motion to quash, "special weight [should be given] to the burden on non-parties of producing documents to parties involved in litigation."  *Breaking Media, Inc. v. Jowers*, No. 21 MISC. 194 (KPF), 2021 WL 1299108, at *6 (S.D.N.Y. Apr. 7, 2021) (granting motion to quash and awarding attorneys' fees incurred in subpoena response) (citation and internal quotation marks omitted); *see also Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14 Civ. 9371 (KPF)(SN), 2017 WL 9401102, at *1 (S.D.N.Y. Mar. 2, 2017) ("[T]he Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on [a] non party.") (citations and internal quotation marks omitted).

Rule 45(d)(1) states that the issuing party "*must* take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  *Id.* (emphasis added).  Whether a subpoena imposes an undue burden depends on considerations that include a party's need for documents, the scope of the request, the time period covered, the specificity with which documents are described in the request, and the burden imposed.  *U.S. v. Int'l Bus. Machines Corp.*, 83 F.R.D. 97, 104, 108 (S.D.N.Y. 1979) ("size of and resources available to" responding

14

party should be considered).

Starbucks has abjectly failed to meet its obligation to minimize the burden the Subpoenas would impose upon the Union Non-Parties and the Employees.  The recipients of the Subpoenas are not parties to this action, and thus should not be burdened with weeks or more of work reviewing and producing thousands of pages of documents created over the course of a year and a half that, as argued above, have no bearing on the limited issues before this Court.  *See Breaking Media*, 2021 WL 1299108, at *7 (granting motion to quash non-party subpoena); *Bhatt*, 2020 WL 13048694, at *2 (same).  This is particularly so because some of what Starbucks seeks here is publicly available or already in its possession.[20]

Further, as discussed in Sections III.B., III.C., and III.D., *infra*, the Subpoenas infringe upon confidential and privacy interests of the workers and the Union.  This, too, renders the Subpoenas unduly burdensome.  *See Va. Dep't of Corr. v. Jordan,* 921 F.3d 180, 189 (4th Cir. 2019) ("a subpoena may impose a burden by invading privacy or confidentiality interests") (citations omitted) (affirming non-party subpoena was unduly burdensome, *inter alia*, because it would reveal privacy interests); *Fappiano v. City of New York*, 640 F. App'x 115, 121 (2d Cir. 2016) (upholding district court's modification of subpoena to testify on grounds that subpoena unduly burdened witness's privacy interests).

As a result, Starbucks' need for the requested documents has not been and cannot be demonstrated and the Subpoenas should be quashed.  *See In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31 ("Cablevision")*, No. 08 Civ. 347 (ARR)(MDG), 2010 WL 2219343, at *10-11 (E.D.N.Y. Feb. 5, 2010), *report and*

---

[20] (Gallo Aff., Exs. A-B (Request 3 (social media posts), Request 5 (news publications), Request 19 (information regarding when Starbucks itself learned of the Great Neck union campaign).)

*recommendation adopted in part*, 2010 WL 1686811 (E.D.N.Y. Apr. 26, 2010).

### B.   The Subpoenas Seek Information Available From Other Sources as Well as Cumulative and Duplicative Discovery

Adding to the unduly burdensome nature of the Subpoenas is the fact that a significant volume of the information sought is already available to Starbucks, and/or has already been provided to it as part of the discovery process in the course of the underlying proceeding.  This cumulative and duplicative discovery is completely unnecessary and is fundamentally contrary to the purpose of the expedited injunctive relief sought here, the sole purpose of which is to provide temporary, interim relief "where serious and pervasive [ULPs] threaten to render the Board's processes 'totally ineffective' by precluding a meaningful final remedy."  *Kaynard v. Mego Corp.*, 633 F.2d 1026, 1034 (2d Cir. 1980) (citations omitted).

The parties held a multi-day hearing on every aspect of this case, and Starbucks had ample opportunity to gather information, including the opportunity to cross-examine all of the NLRB's witnesses—among them Mr. Saff and several of the workers Starbucks has now subpoenaed—and to call its own witnesses.  (*See, e.g.*, Dkt. No. 2-1 at 140-84 (cross-examination of Mr. Saff); Dkt. No. 2-3 at 458-506 & Dkt. No. 2-5 at 749-852 (cross-examination of Ms. Chuquillanqui); Dkt. No. 2-4 at 586-638 (cross-examination of Mr. Wooster).)  Evidence relating to all of the remaining requests was presented at the hearing.  This includes evidence regarding the status of Union support at the Great Neck store and the reasons for the decline.  Specifically, the NLRB's witnesses testified about the severe chill on workers' union activity caused by the Employer's conduct both before and after the election, including fears of retaliation for such activity following Ms. Chuquillanqui's discharge.  (Dkt. No. 2-1 at 138-39, 184-85 (examination of D. Saff); *id.* at 454-55 (examination of J. Chuquillanqui).)

16

In addition, Starbucks was given access to voluminous information regarding the charges—and thus any potential defenses—as part of the lengthy filing that supported the NLRB's instant petition.  (Dkt. No. 1.)  Thus, the Subpoenas should be quashed because they seek information that the Union and employees need not provide in order for Starbucks to develop a comprehensive record.  *See Cablevision*, 2010 WL 2219343, at *10-11.  Lastly, as discussed above, quashing the Subpoenas for this reason is particularly appropriate because the recipients are not parties to the district court litigation.  *See Breaking Media*, 2021 WL 1299108, at *7.

## III.    THE SUBPOENAS SEEK WHOLESALE DISCOVERY OF PRIVILEGED AND CONFIDENTIAL INFORMATION

The Subpoenas invasively seek documents that are protected by a variety of privileges and which will not be sufficiently protected by the protective order (the "Order") entered in this case.  (Dkt. No. 44.)  First and foremost, the requests seek documents concerning workers' concerted activity that is protected by Section 7 of the NLRA (*see* Section III.B.) as well as the First Amendment of the Constitution and union-employee privileges (*see* Sections III.C. and III.D.).  The Subpoenas also seek documents that would reveal the Union's organizing and campaign strategy, which are likewise protected by Section 7, as well as the collective bargaining and union-employee privileges, and/or concern confidential Union strategy and communications that should be protected as "trade secrets" under Fed. R. Civ. P. 45(d)(3)(B)(i) (*see* Sections III.D. and III.E.).  Further, many of the documents requested by the Subpoenas are protected by the attorney-client and work product privileges (*see* Section III.F.).

### A.    The Protective Order is Insufficient to Protect the Union and Employees' Interests

The protective order ("Order") previously entered in this case is insufficient to protect the

17

overriding interests of the Union and the Employees.  (Dkt. No. 44.)  After conferences between
the Petitioner and Respondent, Judge Cho entered an Order on January 12, 2022 that was
intended to protect at least some of the interests raised heretofore.  However, neither the Union
nor the subpoenaed Employees had an opportunity to be heard with regard to the content of the
Order.  Both the Union and the Employees have a number of independent interests that the Order
does not adequately protect.

     First, although the Order allows for redaction of some employees' names as well as other
"identifying information," these redactions will not, as a practical matter, protect the anonymity
of the workers.  The entire Great Neck store was comprised of no more than 15 employees
during the organizing campaign.  The Employer seeks, and the Order arguably allows it to
obtain, *unredacted* communications concerning seven of those employees: Stephanie Olsen,
Nicole Green, Akeeb Ali, Abigail Tioship, Ms. Chuquillanqui, and Mr. Wooster.  (*See* Gallo
Aff., Exs. A-C (Definitions and Instructions 23).)[21]  The Order also arguably allows the
Employer to obtained unredacted communications regarding Revna Charasz.[22]  The Employer
has sought unredacted documents from three other employees—Darren Wisher, Taydoe Jones,
and Max Cook—thereby rendering any redaction of documents relating to these individuals
ineffectual, for if such individuals do produce documents, their protected Section 7 activity
would plainly be revealed when others produce these same exact (albeit unredacted)

---

[21] The Order does not permit redaction of names and identifying information of employees "who have publicly
identified their views on unionization."  (Dkt. No. 44.)  Arguably, any employee who testified during the
administrative proceedings (including the seven employees listed here) falls into this category.

[22] Former employee Revna Charasz was a member of the organizing committee at Great Neck and likely falls
into the category of employees who "have publicly identified their views on unionization," (Docket Number 44, ¶
4(c)), given that they openly declared they were on an indefinite "strike" upon separating from employment.  (Dkt.
No. 2-1 at 107, 109) (examination of D. Saff).; *id.* at 374-75 (examination of J. Chuquillanqui).)

communications.[23]  This leaves only five individuals: Manav (Jerry) Singh; Monathai (Yuki) Hsieh, Briana Hinds, Lavendar Sandi, and Luiza Arama.[24]  There is every reason to believe that, even with redactions, the Employer would be able to determine who has participated in and/or is mentioned in such communications and thereby inquire into the union sympathies and protected activities of *every single employee* at the Great Neck store—something they are plainly prohibited from doing by the NLRA's prohibition on employer surveillance.

The Order also requires the production of *unredacted* information regarding the Section 7 activities of employees "who have publicly identified their views on unionization."  It appears that this provision is meant to carve out at least the names and other identifying information regarding Ms. Chuquillanqui, Mr. Wooster, and Revna Charasz,[25] thereby allowing all of their communications to be revealed without any limits.  This provision of the Order is in clear conflict with the NLRA.  "It is well settled that Section 7 of the Act gives employees the right to keep confidential their union activities."[26]  *Veritas Health Servs., Inc. v. NLRB*, 671 F.3d 1267, 1273-74 (D.C. Cir. 2012).  Workers do not waive the right to confidentiality with respect to *all* of their union activities simply because they have publicly identified their views on unionization.  If

---

[23] For instance, if Ms. Chuquillanqui texted Mr. Cook, but produces a text wherein Mr. Cook's name is redacted, if Mr. Cook then produced the same text, his identity as the recipient of Ms. Chuquillanqui's text would be revealed.

[24] While Section 4(c) of the Order provides that "[n]ames and identifying information of current and former Starbucks partners, except those who have publicly identified their views on unionization, may be redacted," the Order provides no guidance as to the meaning of "publicly identified . . . views on unionization" and further goes on to provide for *unredacted* versions of the same documents to be provided to Starbucks' counsel.  (Dkt. No. 44.)

[25] *See* note 20, *supra*.

[26] Given these rights, Instruction 23 of the Subpoenas, which directs subpoena recipients to redact the names of some, but not all, employees cannot save the Subpoenas from violating the Act.  (Gallo Aff., Exs. A-C.)  The instruction requests that subpoenaed individuals "redact . . . the name of any Starbucks hourly employee . . . or information from which the identity of any Starbucks hourly employee could be discerned," but excepts from redaction the seven (of fifteen) employees who testified at the ALJ hearing or any others who gave affidavits.  The instruction further excepts any documents that "could be construed to reflect matters that affected the employee's interest . . . in union organizing or . . . representation."  In other words, the Subpoenas explicitly request information showing workers' exercise of their Section 7 rights.  A similar clause was found insufficient to protect employees' "confidentiality interests" in *McDonald's USA*, 363 NLRB 1362, 1375 (2016).

that were so, an employer would have the right to interrogate any employee who wore a union button to work about all of their union activities; Board law does not give employers such broad license. *See Norton Audubon Hospital*, 338 NLRB 320, 320-21 (2002) (Board uses a totality of the circumstances test to assess whether interrogation is impermissibly coercive) (employer violated the Act by interrogating open supporter); *see also Manor Care of Easton, PA*, 356 NLRB No. 39 (2010), *enf'd.* 661 F.3d 1139 (D.C. Cir. 2011) (the fact that manager found worker letter stating support for the union did not legitimate further inquiry into union activity).

Further, the Order requires the Union and workers to produce *unredacted* information concerning Union strategy directly to Starbucks' counsel, who are deeply entrenched in the company's antiunion campaign. These provisions do not adequately protect the Union from the harm that would result from the disclosure of its confidential internal organizing and strategy documents and communications directly into the hands of its adversary, Starbucks. Even if access to this information were limited to Starbucks' attorneys, the harm to the Union would be irreparable. But the Order goes even further than that, permitting Starbucks' counsel to share confidential information with the manager and "partners currently or formerly employed" at the Great Neck store on a "need-to-know" basis. The order does not define "need-to-know," apparently leaving the determination solely to Starbucks' counsel, and does not require any weighing of the Union's and workers' need to confidentiality; only a determination by Starbucks that its managers "need to know" the information. (Dkt. No. 44 at ¶ 4(a)(ii).) Although the Order limits the "use" of the information that Starbucks obtains from the documents to "this litigation," this limitation is largely illusory. Once Starbucks and its attorneys review the Union's internal communications and strategy documents, they cannot "unknow" the

information, and they will use it, whether consciously or not, to further their efforts to oppose the Union in Great Neck and beyond.  *See FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980) ("it is very difficult for the human mind to compartmentalize and selectively suppress information once learned").

This is quite evident with regard to the Order's provisions regarding depositions, which compel witnesses to answer questions first and seek the designation of "confidential" later.  (Dkt. No. 44.)  While this would prevent confidential or protected information from being used by Starbucks outside of this proceeding, it will not prevent the harm occasioned by the act of interrogating Union staff about strategy or interrogating Union staff and workers about workers' protected union conduct, which, we note, may be found unlawful.  *See, e.g.*, *Guess?, Inc.*, 339 NLRB 432, 434-35 (2003) (employer violated the Act, *inter alia*, by deposing worker about identity of union supporters).

As the Ninth Circuit has recognized, permitting an employer to obtain communications among *any* employees concerning their union activities, whether the employees are "out" or not, will invariably have a chilling effect on *all* employees' exercise of their NLRA rights.  *United Nurses Ass'ns of Cal. v. NLRB*, 871 F.3d 767, 785 (9th Cir. 2017).  In *United Nurses*, the Board quashed subpoenas, which (like those issued by Starbucks) sought employees' communications about their union activity, reasoning that "the breadth of the subpoenas . . . and the nature of the information requested . . . would subject employees' [Section 7] activities to unwarranted investigation and interrogation."  *Id*. (citation and internal quotation marks omitted).  The Ninth Circuit rejected the argument that the subpoenas "had no chilling effect" because the workers had "outed" themselves as supporters, stating, "This argument simply ignores the harmful effect that an

employer's demand for information has on *all* workers, any one of whom might be dissuaded from union activity if they think an employer may learn of it." *Id*. (collecting cases).   Moreover, the Order allows Starbucks to share "confidential" information with the manager and "partners currently or formerly employed" at the Great Neck store on an undefined need-to-know basis, taking no account of the workers' need for confidentiality.

Third, even where the Order permits the redaction of information, it nonetheless requires the subpoenaed non-parties to produce to Starbucks counsel unredacted copies of the documents, and further permits Starbucks counsel to share the unredacted documents with one or more Starbucks' local or regional managers on the same, undefined "need to know" basis.  (Dkt. No. 44, ¶ 4(a)(ii).)

The harm to and the chilling of workers nationwide that would result from Starbucks counsel and potentially managers (on a "need-to-know" basis) being permitted to view unredacted documents that discuss and reveal workers' protected Section 7 activity cannot be overstated.  *See United Nurses*, 871 F.3d at 785 (enforcing Board order rejecting employer argument that employees' rights could be safeguarded by having a hearing officer conduct in-camera inspection of documents concerning Section 7 protected activity because "the harm is in the very request itself, which would have a chilling effect on employees' willingness to engage in (or refrain from) protected activities") (citations and internal quotation marks omitted)).  It is hard to imagine any legitimate reason that Starbucks' attorneys (or any other Starbucks' management employee) could have for needing to know the identity of the workers engaged in protected activity.  Whatever conceivable justification Starbucks proffers will surely be outweighed by the employees' substantial confidentiality interests.  *See Guess?, Inc.*, 339 NLRB

at 433-34 (if questioning is relevant and lacks an "illegal objective," NLRB considers whether employer's "need for the information outweighs the employees' rights under Section 7 of the Act") (citation omitted).

Finally, the Order does not preclude the production of documents or testimony about privileged subjects, including topics privileged by Section 7.  (Dkt. No. 44 at ¶ 2 (instructing deponents to answer questions to which objections have been lodged).)  As a result, workers will very likely be compelled to testify about protected activity.  Further compounding this injury is the fact that the Order does not limit attendance at depositions.  Thus, workers will likely be compelled to testify in front of one or more of Starbucks' managers, executives, or representatives—individuals who similarly may not be able to "unknow" the information learned.

Critically, the harm to the witnesses occasioned by a Court-sanctioned interrogation regarding their Section 7 protected activity will not be abated by the provisions of the Order that permit counsel to later designate sections of the deposition testimony as confidential.  Once the witnesses have been compelled to answer the questions in front of Starbucks counsel and likely also one or more Starbucks managers, executives, or representatives, the harm is done.  *Cf. United Nurses*, 871 F.3d at 785 (harm is in the request itself); *see Guess?, Inc.*, 339 NLRB at 434-35 (employer violated the Act by, *inter alia*, deposing worker about identity of union supporters).

### B.     The Subpoenas Violate Section 7 of the NLRA and Chill Workers' Rights by Seeking Documents Protected from Disclosure by Section 7

Section 7 of the Act guarantees employees "the right to self-organization, to form, join, or assist labor organizations . . . ."  The most troubling aspect of the Subpoenas is that they are a

blatant attempt to interfere with the Employees' rights under Section 7.[27]  Federal courts recognize

that Section 7 of the Act allows employees to maintain the confidentiality of union activities,

including communications with union representatives and attendance at union meetings.  *See*

*Hooks v. Hood River Distillers, Inc.*, No. 21 Civ. 268 (SI), 2021 WL 3732751, at *1-2 (D. Or. Mar.

30, 2021) (granting motion to quash subpoena for union employees' communications with workers

under NLRA doctrine); *Veritas*, 671 F.3d at 1274; *see also Guess?, Inc.*, 339 NLRB at 434-35 &

435 n.8 ("[E]mployees are guaranteed a certain degree of assurance that their [Section] 7 activities

will be kept confidential, if they so desire.").  An employer seeking to obtain information about

workers' confidential union activities must show that its interests outweigh the workers' statutory

Section 7 interests.  *Nat'l Tel. Directory Corp.*, 319 NLRB 420, 421 (1995) (shielding the identity

of card-signing workers due to the "the potential chilling effect on union activity that could result

from employer knowledge of the information").  The NLRB, in decisions enforced by federal

courts, has consistently held that communications *among* employees and *between* employees and

their union representative should be shielded from disclosure because the employers' interests

could not outweigh the NLRA's statutory protection of the employees' concerted and/or union

activities.

Thus, in *Veritas*, the D.C. Circuit upheld the Board's exclusion of testimony regarding the

identity of workers who attended union meetings, the identity of workers who spoke about the

union, and the content of communications between the workers and the union.  *Id.*, 671 F.3d at

1273-74 ("It is well settled that Section 7 of the Act gives employees the right to keep confidential

their union activities . . . .") (citation and internal quotation marks omitted).  Similarly, in

---

[27] As noted in note 11, *supra*, the Union and the NLRB have filed Petitions at the Second Circuit concerning this exact issue; if Starbucks is allowed to proceed with its discovery, irreparable harm could be caused to workers' rights in the interim.  (Gallo Aff., Ex. K and L.)

*International Union v. Garner*, 102 F.R.D. 108 (M.D. Tenn. 1984), the district court shielded

employees' union authorization cards from discovery as "privileged communications" by denying

the employer's motion to compel. *Id.* at 116-17 (employer has not shown a "legitimate or

compelling interest" for the disclosure). "The employees who signed did so under a promise of

confidentiality," the Court opined, and "[c]onfidentiality is important to the policies of the

[NLRA]." *Id.* at 114; *see also United Nurses*, 871 F.3d at 785 (enforcing NLRB decision to quash

subpoenas that sought employee communications about union activity because the subpoenas

"would subject employees' [Section 7] activities to unwarranted investigation and interrogation");

*Laguna College of Art and Design*, 362 NLRB 965, 965 n.1 (2015) (upholding ALJ's decision to

quash employer's subpoena that sought pro-union supervisor's messages relating to organizing

campaign and election; employer's interests outweighed by employees' interests "in keeping

their Sec[tion] 7 activity confidential").

  In its letter brief, the Employer asserts that the Union Non-Parties' Section 7 arguments

"exalt" Section 7-protected material "over any other material and exempt it from any form of

disclosure" pursuant to Board law. (Dkt. No. 55 at 5.) Starbucks misunderstands the Union's

argument. The Union is not requesting that this Court honor Section 7 rights above all else;[28]

rather, the Union is requesting that the Court apply federal court jurisprudence pursuant to the

Federal Rules of Civil Procedure in this proceeding. Rule 45, for example, protects non-parties

from undue burden , including the burden of discovery requests that infringe upon their privacy

---

[28] The Union notes, however, that this court often looks to Board precedent in interpreting the NLRA, given the
NLRB's specialized role in enforcing the Act, and this Court affords the Board's interpretations of the Act
deference. *See Elec. Contractors, Inc. v. NLRB*, 245 F.3d 109, 116 (2d Cir. 2001); *Constellation Brands, U.S.
Operations, Inc. v. NLRB*, 842 F.3d 784 (2d Cir. 2016). Moreover, and it should go without saying, the NLRA is
every bit as much a federal law as are the Federal Rules of Civil Procedure, and equally entitled to this Court's
consideration.

and confidentiality rights.  *See, e.g.*, *Jordan*, 921 F.3d at 189.  But these burdens can be overcome;

Section 7-privileged material, just like work product privileged material, may be disclosed where

the party seeking it demonstrates that its need outweighs the impact upon the rights of the

subpoenaed party.  *See, e.g.*, *Nat'l Tel. Directory Corp.*, 319 NLRB at 421.  Thus, federal court

jurisprudence contemplates a balancing exercise that contemplates that disclosure may be

warranted in the limited circumstances.  Here, however, Starbucks has not and cannot demonstrate

that its needs outweigh workers' Section 7 rights.

The Subpoenas seek detailed information about Starbucks workers engaging in legally

protected organizing activity under the Act.  The Employer is thus seeking to obtain through

litigation what it could not obtain through interrogating the workers directly; in addition, the *very*

*act of requesting the documents* is a violation of workers' Section 7 rights.[29]  *See, e.g.*, *Chino*

*Valley Med. Center*, 362 NLRB 283, 283 n.1 (2015) (revoking broad subpoena seeking, *inter alia*,

documents relating to the solicitation of union authorization cards) (citations omitted), *enf'd*,

*United Nurses Ass'ns of Cal. v. NLRB*, 871 F.3d 767 (9th Cir. 2017); *cf.* Request 20 of

Subpoenas).  Further, because the Subpoenas seek extensive protected and confidential information

from and impose substantial burdens on witnesses who participated in the NLRB's investigation

and hearing (Ms. Chuquillanqui, Mr. Wooster, and Mr. Saff), the Subpoenas also violate Section

8(a)(4) of the Act, which protects witnesses from retaliation.  *See, e.g.*, *Pain Relief Centers*, 371

---

[29] NLRA doctrine protects employees from involuntary questioning on union matters conducted by employers in advance of NLRB unfair labor practice hearings.  Under *Johnnie's Poultry*, employers must, *inter alia*, observe specific safeguards, including obtaining the employee's participation on a voluntary basis, conducting questioning in a context free from employer hostility that is not coercive, and refraining from asking questions that exceed the employer's legitimate purposes by "'eliciting information concerning an employee's subjective state of mind, or otherwise interfering with the statutory rights of employees.'"  *Sunbelt Rentals, Inc.*, 372 NLRB No. 24, at *1 n.6 (2022) (quoting *Johnnie's Poultry Co.*, 146 NLRB No. 98, 775 (1964)).  The Employer's Subpoenas flout each one of the *Johnnie's Poultry* safeguards; these safeguards should not evaporate when the venue of an NLRA proceeding moves from the NLRB to federal court.  *See, e.g.*, *D'Amico v. Cox Creek Refin. Co.*, 126 F.R.D. 501, 507 (D. Md. 1989) (requiring employer to observe most *Johnnie's Poultry* safeguards in preparation of 10(j) defense).

NLRB No. 143, at *2 (2022) (discovery requests promulgated in court within a month of issuance of NLRB complaint "demonstrate[] a motive to retaliate").  As discussed above, Region 3 of the NLRB is already civilly prosecuting Starbucks for the issuance of subpoenas that are largely identical to the Subpoenas herein.  *Starbucks*, Case No. 03-CA-304675.  The NLRB is now seeking a writ of injunction in the Second Circuit to prevent "predatory discovery" from transpiring in the district court proceeding pursuant to Starbucks' subpoenas during the pendency of the ULP investigation.  (Gallo Aff., Ex. L.)

For all of these reasons, the Subpoenas manifest an "illegal objective" under *Guess?, Inc.*, and thus should not be enforced.  *Id.*, 339 NLRB at 433 ("If," and only if, the discovery request "is found to be both relevant *and* lacking an illegal objective, the analysis must then consider whether the [r]espondent's need for the information outweighs the employees' rights under Section 7 of the Act.").  If the Employer is permitted to compel the Union and Employees to comply with these subpoenas, there is no question that employees' Section 7 conduct will be significantly chilled, not only at the Great Neck store, but at stores across the country.  Further, communications about this activity—among the Union, the employees, and third parties—will also inevitably be chilled.  To protect the full scope of workers' Section 7 rights, the Subpoenas must be quashed in their entirety.

### C.     The Subpoenas Seek Material Protected by the Associational Privilege Grounded in the First Amendment

The Subpoenas also seek information that is protected from disclosure by the First Amendment of the United States Constitution.  The associational privilege attaches where the disclosure of information would result in "(1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or chilling of, the members' associational rights."  *Brock v. Local 375, Plumbers Int'l Union*

27

*of Am.,* 860 F. 2d 346, 350 (9th Cir. 1998).

Federal courts have protected internal union documents and other documents that reveal the identities of union supporters from disclosure on the basis of associational privilege.  *See, e.g.*, *Dole v. Serv. Emps. Union, AFL-CIO, Local 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that union was entitled to a protective order for production of union authorization cards and certain financial records due to risk of chill to union members and First Amendment concerns); *Harvey's Wagon Wheel, Inc. v. NLRB*, 550 F.2d 1139, 1143 (9th Cir. 1976) (protecting "crucial material regarding pending union negotiations" from disclosure under the Freedom of Information Act); *Int'l Bhd. of Teamsters, Airline Div. v. Allegiant Travel Co.*, No. 14 Civ. 43 (APG)(GWF), 2014 WL 6069851, at *8 (D. Nev. Nov. 12, 2014) (limiting disclosure of employee names and member lists in light of First Amendment interests); *Garner*, 102 F.R.D. 108 (denying employer's motion to compel release of union's organizing plans, meeting attendees, and authorization cards, citing, *inter alia*, the constitutional rights of members).

As the *Garner* court explained, "'compulsory disclosure of organizational ties can constitute a significant encroachment on freedom of association.'"  *Id.*, 102 F.R.D. at 114 (quoting *Familias Unidas v. Briscoe*, 619 F.2d 391, 399 (5th Cir. 1980)) (citation omitted).  In *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 461 (1958), the U.S. Supreme Court held that NAACP membership lists should be protected because disclosure "would have the practical effect 'of discouraging' the exercise of constitutionally protected political rights."  *Id.* (citation omitted).

Given the invasive (and burdensome) nature of the Subpoenas, there is a substantial risk that if they are enforced, they will chill union activity nationwide; indeed, that may well be the point.  If this Court compels the workers to comply with the Subpoenas, the message to

28

Starbucks workers nationwide will be clear: if you organize, you will—even long after you have left your employment at Starbucks—be compelled to find counsel, forced to take unpaid time off from your new job to sit in a law office and be interrogated by Starbucks' lawyers about your union activity, and be required to spend hours sifting through and then turning over to Starbucks and its lawyers hundreds or thousands of pages of your private communications and documents. Under these circumstances, it is difficult to avoid the conclusion that the Employer's goal here is to produce this chilling effect—not to seek relevant information related to the "just and proper" analysis. The Court should preclude Starbucks from carrying out this outrageous antiunion strategy.

In its letter brief, Starbucks argues that the Union's First Amendment arguments are misplaced because "Starbucks is not the government." (Dkt. No. 55. at 3.) This misstates the applicable law. The associational privilege under the First Amendment protects private litigants faced with the state action of enforcing a subpoena. *See, e.g.*, *Cablevision*, 2010 WL 2219343, at *7 ("[T]his Court notes that because a court order invoked by private litigants constitutes state action, [subpoenaing party's] attempt to utilize the subpoena power is subject to review by this Court for consideration of the First Amendment concerns raised by [movant]."). Thus, it protects the workers here.

Starbucks fares no better with its unsupported claim that the Union has "merely assert[ed] the general possibility of a remote injury" rather than presenting "'solid, uncontroverted evidence that the disclosure of those associated with an organization is likely to result in physical or economic reprisals.'" (Dkt. No. 55. at 3 (quoting *E.E.O.C. v. Local 32B-32J, Serv. Employees Int'l Union*, No. M 8-85, 1992 WL 84474 (S.D.N.Y. Apr. 14, 1992).) The underlying record is,

29

in fact, replete with evidence of economic reprisal or threats thereof.  In response to her Union activity, the Employer first reduced Ms. Chuquillanqui's hours; it then terminated her—the capital punishment of the workplace.  (Dkt. No. 1, ¶ (V)(b)(xix).  The Employer made a litany of threats of future economic harm to the Great Neck employees.  (*Id.*, ¶¶ (V)(b)(v), (vi), (xi), (xii), (xvi).)  This evidence shows that disclosure has and can in the future result in reprisal to Starbucks workers.

### D.     The Subpoenas Also Seek Protected Internal Union Communications and Strategy

The Subpoenas seek a laundry list of internal Union documents showing or regarding the following: the Union's assessment of employee support during the Union campaign (Requests 1, 11); the Union's social media,[30] communications, and press strategy (Requests 2-5); emails from workers seeking to exercise their NLRA Section 7 rights to organize (Request 13); and the signing of union cards by Great Neck employees and statements made by employees (Request 20).

In order to protect the right to organize under Section 7, the NLRB has consistently recognized that internal union communications and strategy, including collective bargaining strategy, must also be protected.  *See Berbiglia, Inc.*, 233 NLRB 1476, 1495 (1977) (affirming decision to quash subpoena requests that sought, among other things, communications between a Union and its members); *see also Champ Corp.*, 291 NLRB 803, 817-18 (1988) (adopting the *Berbiglia* rationale to revoke an overbroad subpoena for union communications because failing to do so would "do unwarranted injury to the process of collective bargaining").

Federal courts have also recognized the need to protect this information.  In *Hood River*, for example, a Section 10(j) proceeding, the subpoenaed union moved to quash the respondent

---

[30] Because "social media" is not defined, the Subpoenas could be read to capture private and confidential messaging applications used by the Union and workers.  (Gallo Aff., Exs. A-C.)

employer's subpoena for its records.  The district court reviewed the employer's subpoena requests "from the perspective of what facts will be in front of the NLRB."  2021 WL 3732751 at *2. Because the NLRB would be "likely to apply its labor relations privilege doctrine" under *Berbiglia*, 233 NLRB 1476,[31] to the subpoenaed communications between the union and its members, the court held that the requested communications should be shielded from disclosure in its forum.  *Hood River*, 2021 WL 3732751 at *3.  The Court explained that to decline to apply the "labor relations privilege doctrine" of *Berbiglia* in the federal proceeding "would render the privilege virtually meaningless."  *Id.* at *3.  This Court should similarly defer to the animating principles of the NLRA and protect internal Union communications and documents from being exposed to Starbucks.  *See, e.g.*, *Garner*, 102 F.R.D. at 114 (denying employer's motion to compel disclosure of union's organizing plans, lists of attendance at union meetings, and employee authorization cards, stating that "[c]onfidentiality is important to the policies of the [NLRA], which provides generally for secrecy in elections.").  Thus, Starbucks' request seeking such documents must be quashed.

Federal courts have also recognized that communications between employees and their union representatives are protected by an "employee-union representative privilege."  In *Bell v. Village of Streamwood*, 806 F. Supp. 2d 1052 (N.D. Ill. 2011), for example, the court found a

---

[31] In *Berbiglia*, the NLRB affirmed the decision to quash subpoena requests that sought "to obtain a wide-ranging examination of the Union's records, including communications between the Union and its members and with other organizations."  As the ALJ explained,

> the basic reason for revocation of the subp[o]enas so far as here relevant was my view that requiring the [u]nion to open its files to [r]espondent would be inconsistent with and subversive of the very essence of collective bargaining and the quasi-fiduciary relationship between a union and its members.  If collective bargaining is to work, the parties must be able to formulate their positions and devise their strategies without fear of exposure. This necessity is so self-evident as apparently never to have been questioned.

*Id.*, 233 NLRB at 1495.

privilege necessary because "[w]ithout confidentiality, union members would be hesitant to be fully forthcoming with their representatives, detrimentally impacting a union representative's ability to advise and represent union members with questions or problems." *Id*. at 1057; *see also Hernandez v. Off. Of the Comm'r of Baseball*, 331 F.R.D. 474, 477 (S.D.N.Y. 2019) ("*Bell* likened the employee-union representative privilege . . . to that of attorney and client, noting that '[a]s with the attorney-client privilege, there is a strong interest in encouraging an employee accused of wrongdoing to communicate fully and frankly with his union representative, in order to receive accurate advice about the disciplinary process.'") (citations omitted).  Thus, to the extent the Subpoenas seek union-employee communications—including, but not limited to, communications relating to employee discipline (Requests 4 and 5) and internal Union and Union-employee communications about the ULPs (Request 1(e)), which include the discipline and discharge of Ms. Chuquillanqui—they should be quashed.

### E.     The Requested Documents Encroach Upon the Union's Confidential, Proprietary Information

The Subpoenas demand the Union's highly confidential and proprietary information, tantamount to "trade secrets," and should, as a result, be quashed or modified to exclude requests for such information.  *See* Fed. R. Civ. P. 45(c)(3)(B)(i) (permitting courts to quash or modify a subpoena requiring the "disclosure of a trade secret, or other confidential research, development, or commercial information"); Fed. R. Civ. P. 26(c)(1)(G) (allowing for protective orders shielding "trade secret[s] or other confidential research, development, or commercial information").

In order to be protected as a "trade secret" under Rules 26 and 45, information must be "sufficiently valuable and secret to afford an actual or potential economic advantage over

others." *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 245 (S.D.N.Y. 2009) (citation and internal

quotation marks omitted); *see also* 8A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE

§ 2043.  In determining whether information is tantamount to a trade secret, the Southern District

of New York has noted that it is instructive to consider "the value of the information to [the

business] and [its] competitors." *Parmalat*, 258 F.R.D. at 245.  The party seeking protection

must make a showing that disclosure would result in "sufficiently serious" injury.  *Id.* at 244

(citations omitted).

Many of the Subpoenas' requests seek specific information regarding union organizing

and campaign strategy through requests for "communications" about these subjects.  This is

information that Union organizers nationwide trust and endeavor to be kept confidential from

employers.[32]  Disclosure of the Union's organizing strategy to Starbucks is akin to company's

revelation of its "entire business model and customer base to a competitor[.]"  *ABC Rug &*

*Carpet Cleaning Serv. Inc. v. ABC Rug Cleaners, Inc.*, No. 08 Civ. 5737 (RMB)(RLE), 2009 WL

105503, at *2 (S.D.N.Y. Jan. 14, 2009).  Such insight would provide an "actual . . . economic

advantage" to Starbucks, which has vigorously opposed the Union's campaign.  *Parmalat*, 258

F.R.D. at 245.

The Employer's claim that the Union and Starbucks are not competitors and that the

Union is therefore not entitled to trade secret protection is erroneous.  Indeed, the stated purpose

of the Act is to address "[t]he inequality of bargaining power between employees who do not

possess full freedom of association or actual liberty of contract and employers who are organized

in the corporate or other forms of ownership."  29 U.S.C § 151.  In short, the Union and

---

[32] To the extent that this information is shared with workers in the course of an organizing campaign, it remains "secret" because it is shared within the penumbra of the protection of Section 7 of the Act.

Employer are competing for bargaining power, and the Employer's Subpoenas seek to give it an unfair advantage in that arena.

From Starbucks' perspective, it is hard to imagine information more valuable to the Employer's anti-union efforts than the Union's own internal communications about a recent campaign, the identities and contact information of those with whom they engage, the strategies used to engage with workers who seek union representation, and communications and strategies used to encourage the workers to join the union.  The information the Union seeks to protect includes the substance of those communications as well as the methods, manner, and timing of such communications.  The requested documents and the information they reveal are critically important to (1) the Union, (2) the workers' nationwide, ongoing campaign to organize Starbucks, and (3) protecting the Section 7 rights of Starbucks' employees.  Thus, responding to the Subpoenas carries great risk of harm to the Union.  Revelation of the Union's internal communications would provide Starbucks and its managers with unbridled access to the Union's methods of organizing and campaign strategies.  The disclosure of the information would not only hinder future organizing at Great Neck, but, by revealing the Union's methods, could assist Starbucks in opposing current and future organizing at *any store* in the country, thereby impinging upon the employees' statutory rights to organize.  *See, e.g.*, *Pichler v. UNITE*, No. 04 Civ. 2841, 2005 WL 8166208, at *1, *4 (E.D. Pa. Jan. 10, 2005) (granting motion for confidentiality order as to union "organizing or mobilization strategies" and finding that discovery requests would require union to divulge details about organizing strategies, the disclosure of which "would seriously jeopardize" organizing because the information would be used by the employer to "devise preemptive defenses").

34

For these reasons, the D.C. Circuit has recognized that internal union documents may be akin to proprietary information or trade secrets.  In *Mallick v. International Brotherhood of Electrical Workers*, 749 F.2d 771, 785 (D.C. Cir. 1984), the Court found that a "union's disclosure of organizing strategy, negotiating plans, or other secrets" could "be comparable to, for example, a corporation's disclosure of trade secrets, confidential earnings projections, or the like . . . ."  In such a circumstance, the Court held, the documents should be protected.  *Id.*

Finally, because production responsive to these Subpoenas would be delivered directly into the Employer's hands, a protective order will not mitigate the damaging effects of disclosure of this proprietary information.  Thus, all requests that will result in disclosure of the Union's proprietary information must be quashed.

### F.     The Subpoenas Seek Information Protected by the Work Product Privilege and/or the Common Interest Rule

The Subpoenas should also be quashed to the extent they seek work product-protected documents and information of the Union or documents and information protected by the common interest rule.[33]  Fed. R. Civ. P. 45(d)(3)(A)(iii).

Although by its terms Fed. R. Civ. P. 26(b)(3) does not apply to non-parties, courts have extended work product protection to non-parties pursuant to the broader common law work product doctrine.  *Tankleff v. County of Suffolk*, No. 09 Civ. 1207 (JS)(WDW), 2011 WL 5884218, at *2 (E.D.N.Y. Nov. 22, 2011); *Wilson v. City of New York*, No. 06 Civ. 229 (ARR)(VVP), 2009 WL 10705937, at *3 (E.D.N.Y. Jan. 20, 2009); *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163, 175 (S.D.N.Y. 2008) (citation omitted).  Application of the work-product doctrine to non-parties is appropriate to "protect[] an attorney's ability to

---

[33] The Subpoenas should also be quashed to the extent they seek attorney-client privileged documents in violation of Fed. R. Civ. P. 45(d)(3)(A)(iii).

formulate legal theories and prepare cases, prevent[] opponents from 'freeloading' off their adversaries' work, and prevent[] interference with ongoing litigation." *Jean v. City of New York*, No. 09 Civ. 801 (RJD)(VVP), 2010 WL 148420, at *2 (E.D.N.Y. Jan 12, 2010). This is particularly so where the non-party has "interests that [a]re likely to be affected by the litigation in which the work product [is] sought." *Id*. This standard applies to non-party subpoenas made during the course of proceedings for Section 10(j) relief. *Kobell v. Reid Plastics, Inc.*, 136 F.R.D. 575 (W.D. Pa. 1991) (quashing employer's document subpoena to union field organizer during Section 10(j) suit insofar as it sought documents protected by the work product privilege).

The Supreme Court made clear in *Hickman v. Taylor* that work product includes "interviews, statements, memoranda, correspondence, briefs, mental impressions, [and] personal beliefs . . . ." 329 U.S. 495, 511 (1947). The work-product privilege is "'intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries.'" *Gary Friedrich Enter., LLC v. Marvel Enter., Inc.*, No. 08 Civ. 1533 (BSJ)(JCF), 2011 WL 2020586, at *3 (S.D.N.Y. 2011) (quoting *William A. Gross Const. Assocs., Inc. v. Am. Mfr. Mutual Ins. Co.*, 262 F.R.D. 354, 359 (S.D.N.Y. 2009); *U.S. v. Adlman*, 134 F.3d 1194, 1196 (2d Cir.1998)). Indeed, the work-product doctrine protects attorneys' mental impressions and thought processes from disclosure, even if not reduced to writing. *A Michael's Piano, Inc. v. F.T.C.*, 18 F.3d 138, 146 (2d Cir. 1994); *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 231 (E.D.N.Y. 2007) ("Although the work product doctrine is most commonly applied to documents and things, unjustified disclosure of the opinions or mental processes of counsel may occur when questions are posed which seek information at depositions . . . .") (quoting *U.S. v. District Council of New*

36

*York City and Vicinity of the United Bhd. of Carpenters & Joiners of Am.*, No. 90 Civ. 5722, 1992 WL 208284, at *7 (S.D.N.Y. Aug.18, 1992)).  Litigation need not be a certainty when the materials were obtained or prepared for the work product protection to apply.  *See, e.g.*, *A. Michael's Piano*, 18 F.3d at 146 (quoting *Hickman*, 329 U.S. at 511).  In order to defeat this doctrine, the subpoenaing party must "demonstrate *substantial* need for the information and an inability to obtain the information, or a substantial equivalent of it, by other means without undue hardship." *Jean*, 2010 WL 148420, at *2.

Many of the documents sought by the Subpoenas fall into the category of protected work product given the extensive communication among workers, the Union, and the Union's attorneys in the period leading up to and following the filing of the underlying ULP charges that the NLRB is now prosecuting.  Most of the requests seek communications between the Union and employees, thereby capturing communications between Union counsel—or Union staff acting at the behest of Union counsel—and employees, which were made for, *inter alia¸* the purpose of investigating and litigating Starbucks' ULPs, and, eventually, federal court, as well as documents gathered by employees and provided to the Union at the direction of Union attorneys for the same purposes, all of which is protected work product.

To the extent that any of this information was shared with NLRB prosecuting attorneys, such disclosure did not waive work product protection.  Work product confidentiality is not waived when information is disclosed to a third party whose interests are aligned with the party claiming confidentiality.  *See, e.g.*, *U.S. v. AT&T Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) ("So long as transferor and transferee anticipate litigation against a common adversary on the same issue or issues, they have strong common interests in sharing the fruit of the trial preparation

efforts.").  As the appellate court explained in *AT&T*, the "common interest" rule protects more

than simply "co-parties" to litigation and thus protects information given to a government

agency.  *Id.*, 642 F.2d at 1299; *see Information Resources, Inc. v. Dunn & Bradstreet Corp.*, 999

F. Supp. 591, 591-92 (S.D.N.Y. 1998) (holding work product privilege not waived when product

shared with allied party) (citing cases).  The protection of this doctrine is not lost when non-

attorneys act at the direction of attorneys.  *Kayata v. Foote, Cone & Belding Worldwide, LLC*,

No. 99 Civ. 9022 (VM)(KNF), 2000 WL 502859, at *2 (S.D.N.Y. Apr. 26, 2000) (work-product

doctrine "extends to those who are enlisted by legal counsel to perform investigative . . . tasks to

aid counsel in preparing for litigation") (citing *U.S. v. Nobles*, 422 U.S. 225, 238 (1975)).

Therefore, the Subpoenas' Requests seeking information shared with the NLRB impermissibly

captures documents protected by the work product doctrine.

The Union anticipates that Starbucks will pursue deposition questions regarding

communications between and among workers, the Union, the Union's attorneys, and the NLRB

in the time leading up to and following the filing of the underlying ULP charges that the NLRB

is now prosecuting.  For the same reasons set forth above, Starbucks should be precluded from

examining witnesses regarding the communications and documents exchanged in anticipation of

the underlying ULP case.  *See, e.g.*, *Anilao v. Spota*, No. 10 Civ. 32 (JFB)(AKT), 2015 WL

5793667, at *14 (E.D.N.Y. Sept. 30, 2015) (deponent not required to answer deposition

questions seeking work product privileged information); *Reid Plastics*, 136 F.R.D. at 580 (same).

Starbucks will not be able to articulate a "substantial need" to access Union

communications and documents produced in the course of preparing for administrative agency or

court litigation or to elicit testimony of this ilk, especially since (1) the purpose of discovery in

this case is merely to evaluate the appropriateness of injunctive relief as a remedy for unlawful conduct, and (2) all relevant information is already available to Starbucks.  By contrast, disclosure of such information would severely curtail the Union's ability to adequately protect Starbucks employees' Section 7 rights in pending litigation both in New York and nationwide. Thus, the vast bulk of the information sought by Starbucks is protected attorney work product that should be shielded from disclosure.

For all of the above reasons, the Subpoenas should be quashed in their entirety.

## IV.    IF THE COURT DECLINES TO QUASH THE SUBPOENAS IN THEIR ENTIRETY, THERE IS GOOD CAUSE FOR THE ISSUANCE OF A PROTECTIVE ORDER TO PROTECT THE UNION AND WORKERS FROM BEING COMPELLED TO TESTIFY AND PRODUCE DOCUMENTS CONCERNING CONFIDENTIAL AND PRIVILEGED MATTERS

For the reasons discussed in Section III.A, *supra*, the Order is not sufficient to protect the privileged and confidential information of the Union and the employees from being disclosed to Starbucks.  Accordingly, in the event that the Court does not grant the Union's motion to quash in its entirety, "good cause" has been shown to issue a significantly more stringent protective order pursuant to Rule 26(c).

For "good cause," the Court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . . "  Fed. R. Civ. P. 26(c). "Good cause" exists when it is shown that "disclosure will result in a clearly defined, specific and serious injury."  *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (citation and internal quotation marks omitted).  However, no specific showing of injury is required to protect individuals, such as the subpoenaed Employees.  *Topo v. Dhir*, 210 F.R.D. 76, 78 (S.D.N.Y. 2002).  The Court has "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required."  *Seattle Times Co. v.*

*Rhinehart*, 467 U.S. 20, 36 (1984).

It is clear from the document subpoenas served in this case that Starbucks intends to depose the Union representatives about their communications with workers in furtherance of those workers' Section 7-protected activity and to depose Starbucks' own former employees in gratuitous detail about workers' Section 7-protected activity and union association, which they have a Constitutional right to protect from disclosure.[34]  It is also clear that Starbucks intends to probe into confidential Union strategy.[35]  For the reasons discussed *supra*, forcing Union representatives and employees to answer questions about organizing tactics and the various protected and concerted activities that the workers engaged in, will be oppressive and injurious. *See, e.g.*, *Reid Plastics*, 136 F.R.D. at 579 (strictly limiting deposition of Union organizer, limiting inquiry into "confidential Union affairs," and barring inquiry into "private and financial affairs of the Union"); *Cox Creek*, 126 F.R.D. at 508 (union organizer could be deposed in 10(j) proceeding only on matters contained in his NLRB affidavits and any "personal factual knowledge" of the events alleged as ULPs, but "his testimony concerning union organizational methods or policies generally, or what he may have said to employees to encourage union support" deemed not relevant).  In light of this showing of concrete injury and in light of the interests at stake, there is good cause to issue a protective order.  Such order should issue in advance of the conduct of the depositions.

---

[34] For example, *inter alia*, in the Union Subpoenas, Requests 1, 11, 13 to 18, and 20 broadly request communications between employees and the Union, which are protected, and Requests 1(f), 2, 13-14, and 19-20 request documents showing workers' protected, concerted activity.  (Gallo Aff., Exs. A-B.)  These same requests are reiterated in Ms. Chuquillanqui's subpoena, Requests 1(f), 2, 11, 13-14, and 23-24, and for the remaining Employees, Requests 1(f), 2, 11, 13-14, and 19-20.

[35] For example, *inter alia*, in the Union Subpoenas, Requests 1 and 11 request communications and documents showing the Union's assessment of worker support for the Union, and Requests 1 and 3 to 5 request Union communications with third parties, including the NLRB and the media, all of which reveal Union strategy.  (Gallo Aff., Exs. A-B.)  These same requests are reiterated in the Employee Subpoenas.  (*Id.*, Ex. C (Requests 1, 3 to 5).)

## **CONCLUSION**

For these reasons, the subpoenas should be quashed in their entirety pursuant to Rule 45(d)(3), or, in the alternative, the Court should grant a protective order pursuant to Rule 26(c), in addition to any other remedy the Court deems appropriate.

Dated: February 1, 2023                              Respectfully Submitted,

<u>/s/ Cristina E. Gallo</u>
Cristina Gallo (CG-3503)
Rachel S. Paster (RP-1216)
Marie Hahn (MH-2183)
Cohen, Weiss and Simon LLP
900 Third Avenue, Suite 2100
New York, NY 10022
(212) 563-4100
cgallo@cwsny.com
rpaster@cwsny.com
mhahn@cwsny.com

*Attorneys for Workers United and David Saff*