Cristina E. Gallo
COHEN, WEISS AND SIMON LLP
900 Third Avenue, Suite 2100
New York, NY 10022-4869
Tel.: 212-356-0226
Fax: 646-473-8226
cgallo@cwsny.com
*Attorneys for Workers United*
*and David Saff*

Jessica E. Harris
GLADSTEIN, REIF & MEGINNISS LLP
39 Broadway, Suite 2430
New York, NY 10006
Tel.: 212-228-7727
Fax: 212-228-7654
jharris@grmny.com
*Attorneys for Joselyn Chuquillanqui*
*and Justin Wooster*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| TERESA POOR, Regional Director of Region 29 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, <br><br> Petitioner, <br><br> vs. <br><br> STARBUCKS CORPORATION, <br><br> Respondent. | CASE NO. 22-CV-7255 (ARR)(JRC) |

## SUBPOENAED NON-PARTIES MEMORANDUM OF LAW IN FURTHER OPPOSITION TO STARBUCKS'S MOTION TO COMPEL COMPLIANCE WITH THE MAGISTRATE JUDGE'S DISCOVERY ORDER <u>AND SUBPOENAS DUCES TECUM</u>

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

PROCEDURAL HISTORY ................................................................................................. 2

ARGUMENT ....................................................................................................................... 3

I.      STARBUCKS'S MOTION TO COMPEL SHOULD BE DENIED AS TO
        REQUEST NO. 2 ....................................................................................................... 3

        A.      Starbucks Has Failed to Show that Request No. 2 is Relevant and Proper. .......... 3

        B.      Request No. 2 is Unduly Vague and Overbroad. ................................................... 8

        C.      Request No. 2 is a Transparent Attempt to Utilize the Court to Intimidate
                Workers and Chill Union Organization in Great Neck and Beyond. ..................... 9

        D.      Request No. 2 is Unduly Burdensome on Employees' Privacy and
                Confidentiality Rights and Seeks Privileged and Confidential Information. ......... 9

II.     STARBUCKS'S MOTION TO COMPEL SHOULD BE DENIED AS TO
        REQUEST NO. 1 ...................................................................................................... 10

CONCLUSION .................................................................................................................. 12

CERTIFICATE OF SERVICE .......................................................................................... 13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Da Silva v. New York City Transit Auth.*,
No. 17-CV-4550 (FB)(VMS), 2022 WL 17572337 (E.D.N.Y. Dec. 9, 2022) .........................4

*Dorchester Fin. Holdings Corp. v. Banco BRJ, S.A.*,
No. 11-CV-1529 (KMW)(KNF), 2014 WL 3747160 (S.D.N.Y. July 3, 2014) .......................4

*Herbert v. Lando*,
441 U.S. 153 (1979)..............................................................................................................4

*Kaynard v. Palby Lingerie, Inc.*,
625 F.2d 1047 (2d Cir. 1980).................................................................................................4

*Ley v. Wingate*,
182 F. Supp. 3d 93 (S.D.N.Y. 2016).................................................................................4, 10

*NLRB v. Gissel Packing Co., Inc.*,
395 U.S. 575 (1969)...............................................................................................................4

*Seeler v. Trading Port, Inc.*,
517 F.2d 33 (2d Cir. 1975).....................................................................................................4

*United States v. UBS Sec. LLC*,
No. 1:18-CV-6369 (RPK)(PK), 2020 WL 7062789 (E.D.N.Y. Nov. 30, 2020) .......................5

**Statutes**

National Labor Relations Act ("NLRA") ....................................................................................1

NLRA Section 7..................................................................................................................1, 2, 9, 10

**Other Authorities**

First Amendment ......................................................................................................................1, 9

Fed. R. Civ. P. 37 ......................................................................................................................4

Fed. R. Civ. P. 72(a) ................................................................................................................2

Local Rule 37.1 ........................................................................................................................4

Rule 26 ....................................................................................................................................4

Non-parties Workers United, affiliated with SEIU ("Workers United" or the "Union"), and David Saff, an employee of the Workers United New York-New Jersey Regional Joint Board (collectively, the "Union Non-Parties"), jointly with Joselyn Chuquillanqui and Justin Wooster (collectively, the "Workers" and with the Union Non-Parties, "the Subpoenaed Non-Parties"), respectfully submit this memorandum of law in opposition to the Motion to Compel Compliance with the Magistrate Judge's Discovery Order and Subpoenas Duces Tecum and the Supplemental Briefing of Starbucks Corporation in Support of its Motion to Compel Compliance with the Magistrate Judge's Discovery Order and Subpoenas Duces Tecum.  (Dkt. Nos. 94, 99.) The motion of Starbucks Corporation ("Starbucks" or "Respondent") should still be denied.

## INTRODUCTION

On April 17, 2023, the Court permitted Starbucks to serve amended discovery demands "relating to the post-termination period" (July 27 to September 30, 2022), (Docket Entry, April 17, 2023), on the "very narrow issue" of whether the termination of former employee Joselyn Chuquillanqui chilled employees from engaging in Union activity.  (Dkt. No. 86 at 23, 28.) However, the sweeping and burdensome subpoenas that Starbucks issued to the Subpoenaed Non-Parties and the three current and/or former employees (the "Employees") (again) seek irrelevant information that goes well beyond the limited inquiry that was authorized by the Court, and will only serve to further chill employee support of the Union.  (The Subpoenas are hereinafter referred to as the "2023 Subpoenas").

Moreover, compliance with the 2023 Subpoenas would disclose protected communications in violation of Section 7 of the National Labor Relations Act ("NLRA" or the "Act"), violate First Amendment associational rights, and would disclose protected Union trade secrets.

## PROCEDURAL HISTORY

The scope of discovery permitted by Judge Allyne R. Ross in this matter is limited solely to "the equitable consideration of whether the injunctive relief sought by Petitioner, solely as to the Great Neck store, is just and proper." (Dkt. Entry, Dec. 15, 2022.) On April 17, following Motions to Quash the subpoenas Starbucks served in or around December 2022 (the "2022 Subpoenas") filed by the Subpoenaed Non-Parties and Petitioner (Docket Numbers 58-62), the Court ruled that further discovery could be permitted for the time period between July 27, 2023 and September 30, 2023. (Dkt. Entry Apr. 17, 2023).[1] Respondent thereafter served the 2023 Subpoenas, which seek documents and information, upon the Subpoenaed Non-Parties and the Employees on or around April 19, 2023.[2] The Subpoenaed Non-Parties, on behalf of themselves

---

[1] Both the Subpoenaed Non-Parties and Starbucks have indicated an intent to file objections to the Court's orders on the various motions to quash. (Dkt. Nos. 85, 89.) In the interest of judicial efficiency, Judge Ross has ordered the parties to file all Federal Rule of Civil Procedure 72(a) objections to all orders concerning subpoenas within fourteen days of a full adjudication of all disputes arising from the various subpoenas. (Dkt. Entries, Mar. 6, 2023, Apr. 24, 2023.) As explained below, discovery litigation continues, and thus objections have not been – and cannot yet be – filed.

[2] The 2023 Subpoenas seek the following:
Request 1: All Documents and/or Recordings relating to any Communications by you to, or to you from (i) any Partner employed at any Starbucks store, (ii) the Union, (iii) the NLRB, (iv) any digital, print, radio, TV, internet-based or other media outlet concerning any of the following matters:
    (a)  The number of Partners (not names) at the Great Neck store who were considered to be in favor of union representation ("yes" votes) and the number of Partners who were considered not to be in favor of union representation ("no" votes) as of July 27, 2022, and each week thereafter (or whatever other interval was used) until September 30, 2022; and
    (b)  For each Partner at the Great Neck store who at any time (i) from February 9, 2022 (the date on or about which the Union filed its representation petition) to May 3, 2022 (the date the votes cast by Partners in the election were counted) and (ii) from July 27, 2022, to September 30, 2022, changed or was considered to have changed from being in favor of union representation to not being in favor of union representation, all reason(s) why the Partner may have changed his/her/their sentiments regarding the Union during the period from February 9, 2022, to September 30, 2022.
    (c)  All Documents from the period July 27, 2022, to September 30, 2022, relating in any way to whether the termination of Joselyn Chuquillanqui's employment had, or did not have, a "chilling" or adverse effect on Great Neck Partners' Section 7 or union activities, including, but not limited to, any Documents relating in any way to:
Request 2: All Documents from the period July 27, 2022, to September 30, 2022, relating in any way to whether the termination of Joselyn Chuquillanqui's employment had, or did not have, a "chilling" or adverse effect on Great Neck Partners' Section 7 or union activities, including, but not

and the three employees, objected to the 2023 Subpoenas.  (The objections are attached to the Declaration of Cristina Gallo in Support of Subpoenaed Non-Parties' Further Opposition to Starbucks's Motion to Compel Compliance with the Magistrate Judge's Discovery Order and Subpoenas Duces Tecum as Exhibit A.)  Starbucks thereafter filed a threadbare Motion to Compel, Docket Number 94, which the Subpoenaed Non-Parties opposed, Docket Number 95. Starbucks was ordered to supplement its motion.  (Dkt. Entry, Aug. 9, 2023.)  Starbucks made a supplementary filing.  (Dkt. No. 99.)

## ARGUMENT

Starbucks's motion to compel should be denied in its entirety for the reasons that follow. Because Starbucks devotes most of its motion to compel to Request No. 2, the Subpoenaed Non-Parties address that request first and then turn to Request No. 1.

## I.   STARBUCKS'S MOTION TO COMPEL SHOULD BE DENIED AS TO REQUEST NO. 2.

### A.   Starbucks Has Failed to Show that Request No. 2 is Relevant and Proper.

Request No. 2 seeks documents relating to whether something about Ms. Chuquillanqui (specifically, what she said or did; her job performance as a barista; or her efficacy as a union organizer) caused – "or may be inferred to" have caused – workers to become disaffected from

---

limited to, any Documents relating in any way to:

    (a)  Whether Ms. Chuquillanqui's termination, or anything Ms. Chuquillanqui said or did, had any effect, or may be inferred to have had any effect, on any Partner's interests in unionization or sentiments toward the Union;

    (b)  Whether Ms. Chuquillanqui's job performance, including matters relating to her compliance, or lack thereof, with Starbucks' policies and procedures, effected, or may be inferred to have effected, any Partner's interests in unionization or sentiments toward the Union; and

    (c)  Whether Ms. Chuquillanqui was an effective union organizer including whether her performance as a union organizer effected, or may be inferred to have effected, one way or another, any Partner's interest in unionization or sentiments toward the Union.

the Union.  This request seeks information that is both irrelevant and beyond the scope of discovery permitted by the Court.

It is well established that "[t]he party moving to compel the disclosure of information bears the initial burden of demonstrating that the information sought is relevant and proportional."  *Da Silva v. New York City Transit Auth*., No. 17-CV-4550 (FB)(VMS), 2022 WL 17572337, at *2 (E.D.N.Y. Dec. 9, 2022) (internal quotations omitted); *see also Herbert v. Lando*, 441 U.S. 153, 177 (1979) (requirement of Rule 26 that the "material sought in discovery be 'relevant' should be firmly applied").[3]  Despite being given a second opportunity to meet its burden, Starbucks has again utterly failed to do so.

The only issue on which Starbucks is entitled to discovery under Judge Ross's order is whether the interim injunctive relief sought by Petitioner is just and proper.  To the extent the Court believes this necessitates inquiry into whether employees were chilled from engaging in protected activity because of Starbucks's commission of unfair labor practices,[4] it is *Starbucks's* conduct that is relevant – not that of Ms. Chuquillanqui.  If employees were chilled *because of* Starbucks's conduct, whether they also disliked Ms. Chuquillanqui or believed she was a bad employee or ineffective organizer is of no moment.  Likewise, if employees were *not* chilled

---

[3] Starbucks also failed to comply with Local Rule 37.1 (any "motion or application [involving discovery or disclosure requests under Fed. R. Civ. P. 37] shall also set forth the grounds upon which the moving party is entitled to prevail as to each request or response").  *See, e.g.*, *Dorchester Fin. Holdings Corp. v. Banco BRJ, S.A.*, No. 11-CV-1529 (KMW)(KNF), 2014 WL 3747160, at *5 (S.D.N.Y. July 3, 2014) (denying motion to compel that, *inter alia*, did not comply with Rule 37.1).

[4] As argued at Docket Numbers 67, 68, 79, and 83, the Subpoenaed Non-Parties dispute that this is a relevant area of inquiry or that discovery is warranted on the subject.  *See, e.g.*, *Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047, 1053 (2d Cir. 1980) (where the two discharged employees "were active and open union supporters," "discharges therefore risked a serious adverse impact on employee interest in unionization" and court inferred that interim reinstatement was proper); *see also Seeler v. Trading Port, Inc.*, 517 F.2d 33, 40 (2d Cir. 1975) (where employees' support was established, no further evidence needed to establish a bargaining order was necessary to restore *status quo ante*); *Ley v. Wingate*, 182 F. Supp. 3d 93, 103 (S.D.N.Y. 2016) (same).  As the Supreme Court has held, "subjective" reports from employees after an employer's unfair labor practice are inherently "unreliable." *NLRB v. Gissel Packing Co., Inc.*, 395 U.S. 575, 608 (1969) (questioning following coercive unfair labor practices is unlikely to adduce probative evidence from employees).

because of Starbucks's conduct, it is irrelevant if Ms. Chuquillanqui's conduct, job performance, or efficacy was the reason they stopped supporting the Union.

It is plain that Starbucks's request is nothing more than a fishing expedition, which seeks evidence Starbucks can use to assassinate Ms. Chuquillanqui's character.  Though the law is clear that "'[t]he party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition,'" *United States v. UBS Sec. LLC*, No. 1:18-CV-6369 (RPK)(PK), 2020 WL 7062789, at *3 (E.D.N.Y. Nov. 30, 2020) (quoting *Mamakos v. United Airlines, Inc*., No. 14-CV-7294 (JFB)(AKT), 2018 WL 4861392, at *2 (E.D.N.Y. Sept. 28, 2018)), Starbucks has made no such showing here.[5]  This failing is particularly notable because Starbucks had available to it the transcript of a nine-day hearing on the underlying unfair labor practice allegations – during which it had the opportunity to examine, call, and cross-examine fifteen witnesses, including numerous workers.

Despite citing no evidence that any employee was chilled by Ms. Chuquillanqui's conduct, Starbucks nonetheless asserts that its request is not "a shot in the dark" because "the record and the [National Labor Relations Board's] affidavits show that employees at the Great Neck store had expressed a wide range of concerns about unionizing . . . including not wanting to pay union dues or go on strike, and not wanting to subject their terms and conditions of employment to the uncertainty of the bargaining process."  (Dkt. No. 99 at 4.)  But, on their face, these presupposed "concerns" have nothing to do with Ms. Chuquillanqui or her conduct – the subject of Starbucks's request – and therefore do not support a *prima facie* showing that the discovery sought is more than merely a fishing expedition.  Moreover, tellingly, the "concerns"

---

[5] The burden does not shift to the responding party "'to justify curtailing discovery'" unless and until such *prima facie* showing is made.  *UBS Sec. LLC*, 2020 WL 7062789, at *3 (quoting *New Falls Corp. v. Soni*, No. 16-CV-6805 (ADS)(AKT), 2020 WL 2836787, at *1 (E.D.N.Y. May 29, 2020)).

Starbucks cites were "concerns" propagated by *Starbucks itself* during its campaign to coerce employees to vote against unionization and were the subject of multiple unfair labor practice charges in the underlying administrative proceedings.[6]

Nor is there any merit to Starbucks's assertion that "it is not unreasonable to assert that employees at Great Neck grew resentful of Ms. Chuquillanqui's failure to follow Starbucks's policies, and the manner in which she attempted to convince employees to support Workers United, and that in turn would cause the erosion of support for Workers United at Great Neck." (Dkt. No. 99 at 4.)  In the absence of any evidence to support this theory, the assertion is, in fact, *patently* unreasonable.  There are at least two fallacies in the logic underlying Starbucks's theory.

First, the sequence of events does not support this theory: the record shows that Ms. Chuquillanqui was sometimes late to work (as were many others) *before* the advent of the Union campaign.  In fact, Ms. Chuquillanqui testified that her timeliness began to "slip[]" starting in late December 2021 and into January 2022.  (Dkt. No. 2-3 at 145-46.)  Yet, there is no dispute that, notwithstanding Ms. Chuquillanqui's tardiness, by the beginning of February, 100% of workers supported the Union.  Therefore, workers' concerns, if any, about Ms. Chuquillanqui's tardiness would have predated the Union campaign and thus cannot explain why workers who supported the Union in February were chilled from continuing to do so at the time of the election and/or after Ms. Chuquillanqui's termination in July.

Second, even if the sequence of events could support Starbucks's theory, the theory is incomprehensible.  The logic Starbucks appears to employ here is: (1) Ms. Chuquillanqui

---

[6] For example, the Complaint in the underlying unfair labor practice case alleges that Starbucks's district manager "threatened employees that the Union would require employees to participate in strikes if employees chose to be represented by the Union."  (Compl., Case No. 29-CA-292741, *et al.*, ¶ 7(f)).  The Complaint further alleges that Starbucks (unlawfully) cast significant doubt on employees' ability to achieve improvements to their terms and conditions of employment in bargaining by, *inter alia*, telling employees it would "futile" for them to select the Union, ¶¶ 7(g), 11(f), and threatening employees with the loss of myriad benefits, including wages, promotions and transfer opportunities, tuition reimbursement, and loss of access to management, ¶¶ 7(a), 7(c), 7(d), 7(e).

6

supported the Union; (2) before Ms. Chuquillanqui was fired from her job as a Starbucks barista, she was sometimes late to work; (3) other workers may have been upset that Ms. Chuquillanqui was sometimes late for work; therefore (4) after Ms. Chuquillanqui was fired, workers were dissuaded from supporting the Union.  The glaring problem with this theory is that there is no logical connection between steps 3 and 4.  Why would a worker, who was upset that Ms. Chuquillanqui was sometimes late to work, conclude – *after* Ms. Chuquillanqui was fired – that her previous tardiness was a reason not to support the Union?  Under this head-scratching logic, an equally plausible theory would be: Ms. Chuquillanqui played classical music at work; workers may have been upset about this because they did not like classical music; and therefore, after Ms. Chuquillanqui was fired, workers stopped supporting the Union.  Starbucks is, however, surely not entitled to discovery on Ms. Chuquillanqui's music collection.

If Starbucks instead meant to argue that some employees may have been happy that Ms. Chuquillanqui was fired (whether because she was sometimes late to work, because they did not like her personally, or thought she was a poor organizer), and therefore those employees could not have been chilled by her termination, this theory fares no better.  First, as noted above, Starbucks has offered no evidentiary basis for any of these claims and therefore has not made a *prima facie* showing to support its discovery requests.  Second, even if there were workers who celebrated Ms. Chuquillanqui's termination because they did not like her, because she was late to work, or because they thought she was a bad organizer, it does not follow that those workers were not *also* afraid to support the Union or engage in Union activity after seeing what Starbucks did to Ms. Chuquillanqui (whatever the employees' feelings towards her as a person, employee, or organizer).  There is nothing inconsistent between a worker being happy not to have to work with Ms. Chuquillanqui anymore and also being afraid to engage in Union activity because Ms.

Chuquillanqui was fired for her own Union activity.

As Starbucks has utterly failed to meet its burden of making a *prima facie* showing of relevance, its motion to compel compliance with Request No. 2 should be denied.

**B.      Request No. 2 is Unduly Vague and Overbroad.**

Starbucks's motion should additionally be denied as to Request No. 2 because each of the subparts of the Request seeks documents from which it "may be inferred" that employees lost interest in unionization for reasons related to Ms. Chuquillanqui's conduct.  The use of the phrase "may be "inferred" renders the request impermissibly vague and ambiguous because different people can reach vastly different conclusions about what may be inferred from a given document.  This is evidenced by Respondent's apparent conclusion – which the Subpoenaed Non-Parties vigorously dispute – that it "may be inferred" that Starbucks's retaliatory termination of Ms. Chuquillanqui did not chill other workers if those workers believed that Ms. Chuquillanqui was an unsatisfactory worker and ineffective organizer.

The inclusion of the "may be inferred" language appears to be an attempt by Starbucks to capture documents that state, for example, "I hate Ms. Chuquillanqui and I hate that she was always late" but do not state "I hate Ms. Chuquillanqui and I hate that she was always late *and therefore I no longer support the Union.*"  This proverbial fishing expedition runs counter to the Court's admonition to Starbucks during the April 17 conference to "tread very carefully on this issue" and to tie any requests for information directly to the effect, if any, on chill.  (Dkt. No. 86 at 21-22.)

Request No. 2 is additionally overbroad to the extent it seeks "[a]ll Documents" despite the fact that there is already a voluminous record from a multi-day hearing held before an Administrative Law Judge in October and November 2022 (Case Numbers 29-CA-292741, *et al.*) duplicative of these requests.  The Request is also overbroad to the extent it seeks "[a]ll

Documents . . . relating" to[7] the other subparts of the request, thereby unreasonably expanding

the scope of the Request – despite the existence of an extensive hearing record.

C.      **Request No. 2 is a Transparent Attempt to Utilize the Court to Intimidate Workers and Chill Union Organization in Great Neck and Beyond.**

Request No. 2 seeks irrelevant information aimed at assassinating the character of the

lead employee organizer of the Union campaign at Great Neck.  If this Court compels the

Subpoenaed Non-Parties to comply with this request, the message to Starbucks workers at Great

Neck and nationwide will be clear: if you organize, you will – even long after you have left your

employment at Starbucks – be subject to a full-throated attack on your credibility and character.

Under these circumstances, it is difficult to avoid the conclusion that Respondent's goal here is

to produce this chilling effect – not to seek relevant information related to the "just and proper"

analysis.  The Court should not allow Starbucks to avail itself of the powers of the Court to

deploy this outrageous antiunion strategy.

D.      **Request No. 2 is Unduly Burdensome on Employees' Privacy and Confidentiality Rights and Seeks Privileged and Confidential Information.**

Like the requests in the 2022 Subpoenas, Request No. 2 seeks highly sensitive documents

related to union activity and union representation, such as confidential communications detailing

employee support or lack of support for the Union, internal Union strategy discussions, and

Union advice and assistance to members.  Compliance with this Request would disclose

protected communications in violation of Section 7 of the Act, violate First Amendment

associational rights, and would disclose protected Union trade secrets.  This Request further

seeks information that may be protected by the attorney-client and work product privileges.

All of these arguments have been thoroughly addressed in the Subpoenaed Non-Parties'

---

[7] Respondent's use of "relating to" is also so vague and ambiguous that it is unreasonable or even impossible to comply.

and Petitioner's Motions to Quash, and in the interests of efficiency, we respectfully refer the

Court to those filings.  (Dkt. Nos. 58-62, 68-69.)

## II.      STARBUCKS'S MOTION TO COMPEL SHOULD BE DENIED AS TO REQUEST NO. 1.

Starbuck's's motion should also be denied as to Request No. 1.  Like Request No. 2, it

seeks information that is not relevant, is overbroad, is unduly burdensome on the Union Non-

Parties' as well as on employees' privacy and confidentiality rights, or is privileged and/or

confidential.

With respect to relevance, Request No. 1 almost exclusively seeks documents pertaining

to employees' support for the Union *postdating* the May 3, 2022 election.  As argued in Docket

Number 67, such requests are wholly irrelevant to the restoration of the *status quo* prior to

Starbucks's alleged commission of unfair labor practices, including the termination of Ms.

Chuquillanqui.  *See, e.g.*, *Ley v. Wingate*, 182 F. Supp. 3d 93, 103 (S.D.N.Y. 2016) ("loss of

support for a union *after* an employer's unfair labor practices is no defense to an interim

bargaining order").

This Request is additionally overbroad.  Again, the Court permitted Starbucks to seek

further discovery relating solely to the issue of chill on Great Neck employees' Section 7 activity

as a result of the termination of Ms. Chuquillanqui's employment solely during the period June

27 to September 30, 2022.  Yet in Request No. 1, Starbucks seeks documents for an eight-month

period, from February 9, 2022, to September 30, 2022.

Further, Request No. 1 is overly burdensome on the Union Non-Parties to the extent it

seeks "[a]ll Documents and/or Recordings" from "*any Partner* employed at any Starbucks

store," whereas the 2022 Subpoenas had sought only documents from Mr. Saff and the Union

from Great Neck partners.  As Respondent is well aware, the Union has had contact with

thousands of workers at many hundreds of Starbucks's stores, and this clause expands the net cast by the request.  Moreover, like Request No. 2, Request No. 1 seeks "[a]ll Documents" despite the fact that there is already a voluminous record from a multi-day hearing held in Case Numbers 29-CA-292741, *et al*., duplicative of these requests.  And, like Request No. 2, Request No. 1 seeks "[a]ll Documents . . . relating" to[8] the other subparts of each respective request, thereby expanding unreasonably expanding the scope of the Request – again despite the existence of the hearing record.

Request 1(b)(i) is also duplicative of Request 1(b), as modified by the Court,[9] of the 2022 Subpoena previously issued to Workers United.[10]

Finally, like Request No. 2, Request No. 1 is unduly burdensome on employees' privacy and confidentiality rights, and encroaches upon privileged and protected areas, for the reasons articulated above and in the Subpoenaed Non-Parties' prior briefs.  (Dkt. Nos. 58-62, 68-69.)

---

[8] Again, Respondent's use of "relating to" is also so vague and ambiguous that it is unreasonable or even impossible to comply.

[9] (Dkt. Entry, Mar. 27, 2023.)

[10] That request sought "All documents and recordings relating to any communications among and between employees . . . the Union, and by the Union, or to the Union from (i) any Partner, (ii) the NLRB, or (iii) any digital, print, radio, TV, internet-based or other media outlet concerning any of the following matters: . . . For each Partner at the Great Neck store who was or has been considered at any time to have changed from being in favor of union representation to not being in favor of it, all reason(s) why the employee may have changed his/her/their sentiments regarding the Union."

## **CONCLUSION**

Because Starbucks has failed entirely to meet its burden of establishing that an order compelling compliance with the 2023 Subpoenas is appropriate, the Court should deny the motion in its entirety.

Dated: August 25, 2023                    Respectfully Submitted,

/s/ Cristina E. Gallo
Cristina Gallo
Cohen, Weiss and Simon LLP
900 Third Avenue, Suite 2100
New York, NY 10022
(212) 563-4100
cgallo@cwsny.com

*Attorneys for Workers United
and David Saff*

/s/ Jessica E. Harris
Jessica E. Harris
Gladstein, Reif & Meginniss, LLP
39 Broadway, Ste. 2430
New York, NY 10006
(212) 228-7727
jharris@grmny.com

*Attorneys for Joselyn Chuquillanqui and
Justin Wooster*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 25, 2023, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Dated:  August 25, 2023                                Respectfully Submitted,


/s/ Cristina E. Gallo
Cristina Gallo (CG-3503)
Cohen, Weiss and Simon LLP
900 Third Avenue, Suite 2100
New York, NY 10022
(212) 563-4100
cgallo@cwsny.com

*Attorneys for Workers United and David Saff*

13