UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

TERESA POOR, Regional Director of :
Region 29 of the National Labor Relations :
Board, for and on behalf of the NATIONAL :
LABOR RELATIONS BOARD,                    :        MEMORANDUM AND
                                          :        ORDER
              Petitioner,                 :
                                          :        No. 22-CV-7255-ARR-JRC
      -against-                           :
                                          :
STARBUCKS CORPORATION,                    :
                                          :
              Respondent.                 :

------------------------------------------------------------------ x

JAMES R. CHO, United States Magistrate Judge:

## Introduction

On November 30, 2022, the Regional Director for Region 29 of the National Labor

Relations Board ("Board"), Teresa Poor ("Petitioner"), filed a petition seeking an injunction

pursuant to Section 10(j) of the National Labor Relations Act, as amended (the "Act"), 29 U.S.C.

§ 160(j).  *See* Petition, Dkt. 1.  The petition seeks injunctive relief against Starbucks Corporation

("Starbucks" or "Respondent") pending resolution of unfair labor practice charges before the

Board.  *See id.*  Before the undersigned are two motions resulting from a prolonged discovery

battle between the parties and various interested non-parties:  Starbucks' motion to compel, Dkt.

94, and a motion to stay, or, alternatively, for reconsideration, filed by the non-parties, Dkt. 101.

For the following reasons, the Court denies the motion to stay, and grants, with modifications,

the motion to compel.

## Background

### I.      The 10(j) Petition

This case arises out of union organizing efforts at a Starbucks store in Great Neck, New

York.  In February 2022, Workers United ("Workers United" or the "Union"), affiliated with the

Service Employees International Union, filed a representation petition with the Board in

connection with a Starbucks store in Great Neck, New York.  Pet., Dkt. 1, at 2.  Thereafter the

Union filed a series of unfair labor practice charges with the Board alleging that Starbucks

engaged in violation of Sections 8(a)(1) and 8(a)(3) of the Act, 29 U.S.C. § 158(a).  Pet., Dkt. 1,

at 2–4.  The various complaints were consolidated, and a trial was held before an administrative

law judge in October 2022.  *Id.* at 5.

On November 30, 2022, Petitioner filed the present 10(j) petition on behalf of the Board.

*Id.* at 2.  The petition alleges there is reasonable cause to believe Starbucks committed the

violations alleged in the consolidated complaint before the Board.  *Id.* at 5.  As part of its unfair

labor practice allegations, the Union claims that employee Joselyn Chuquillanqui

("Chuquillanqui") was disciplined and ultimately discharged in retaliation for her union

activities.  *Id.* at 3–4.  The Board requests injunctive relief requiring Starbucks to cease and

desist from various practices and ordering affirmative remedies, such as reinstating Ms.

Chuquillanqui and bargaining in good faith with the Union.  *Id.* at 16–19.[1]

Concurrent with the petition, Petitioner filed a motion to adjudicate the 10(j) petition on

the basis of the administrative record developed before the Board.  Dkt. 2.  Starbucks opposed

the motion and requested expedited discovery.  Dkt. 12.  Following a conference on the motions,

the Honorable Allyne R. Ross granted Petitioner's motion to adjudicate the petition on the basis

---

[1] Section 10(j) injunctive relief is "just and proper" when "it is necessary to prevent irreparable harm or to preserve the status quo."  *Kreisberg v. HealthBridge Mgmt., LLC*, 732 F.3d 131, 141 (2d Cir. 2013).  To establish irreparable harm, courts have relied upon the inherent chilling effect that the termination of an active and open union supporter has on other employees' interest in unionization.  *See Kaynard v. Palby Lingerie*, 625 F.2d 1047, 1053 (2d Cir. 1980); *Kreisberg*, 732 F.3d at 142–43; *Paulsen ex rel. NLRB v. PrimeFlight Aviation Servs.*, 718 F. App'x 42, 45 (2d Cir. 2017) (relying on actual showing of a chilling effect on union activity or support).

of the administrative record only as to the question of whether "reasonable cause" exists to believe Starbucks violated the Act.  The Court granted Starbucks' request for discovery on the question of whether injunctive relief sought by Petitioner is "just and proper."  Minute Entry and Order dated 12/15/2022.[2]  On December 19, 2022, the undersigned entered an expedited discovery schedule.  *See* Minute Entry dated 12/19/2022.

## II.    Third-Party Discovery

### A.    The December 2022 Subpoenas

On December 23, 2022, Starbucks informed Petitioner of its intent to serve subpoenas *duces tecum* ("December 2022 Subpoenas") on non-parties to the case, including five of its former employees ("Employees") and two officials at Workers United (together with Employees, the "Subpoenaed Non-Parties").  *See* Decl. of Matthew A. Jackson in Supp. of Mot. to Quash, Dkt. 46 ("Jackson Decl.").[3]  On January 13, 2023, Petitioner filed a motion to quash the subpoenas.  *See* Notice of Mot. to Quash, Dkt. 46-1; Mem. in Supp. of Mot. to Quash, Dkt. 46-2.

Counsel for the Union and the Employees appeared on January 18, 2023, *see* Dkts. 47–50, and, following a hearing on the motion, the Court granted the Subpoenaed Non-Parties leave to file their own motions to quash, *see* Minute Entry dated 1/27/2023.  The Court also granted

---

[2] Judge Ross also held that any injunctive relief would be limited to only the Great Neck store, denying Petitioner's request for a nationwide remedy.  *See* Minute Entry and Order dated 12/15/2022.

[3] Those employees are Ms. Chuquillanqui, Taydoe Jones, Max Cook, Darren Wisher, and Justin Wooster ("Wooster").  *See* December 23, 2022 Subpoenas, Exs. A-G to Jackson Decl., Dkt. 46. David Saff ("Saff"), a representative of Workers United, was also served with a subpoena.  *See id.*; *see also* Petitioner's Renewed Motion to Quash Respondent's Subpoenas *Duces Tecum* dated February 1, 2023, Dkt. 62-1 (attaching subpoenas).  The December 2022 subpoena directed to Ms. Chuquillanqui included 24 requests for documents (Dkt. 62-1 at ECF pages 8–11); the remaining subpoenas included 20 requests for documents (Dkt. 62-1 at ECF pages 19–21, 29–31, 39–41, 49–51, 59–60).

3

Petitioner leave to file an amended motion.  *See id.*  Those motions were filed on February 1,

2023.  *See* Union Mot. to Quash, Dkt. 58; Employees' Mot. to Quash, Dkt. 59; Petitioner's Am.

Mot. to Quash, Dkt. 62 (together, the "Motions to Quash").  The Court held a hearing on the

Motions to Quash on March 2, 2023, during which the Court took the motions under advisement

and ordered the parties and interested non-parties to meet and confer to try to resolve the

discovery dispute.  *See* Minute Entry dated 3/2/2023.  On March 13, 2023, the parties reported

that they were unable to reach a full resolution of the discovery dispute, but that Starbucks had

withdrawn a number of document requests.  *See* Dkts. 74–76, and 77 (amending Dkt. 74).

The Board does not dispute that discovery is permissible in Section 10(j) proceedings, but

has taken the position that discovery in this case should be limited, as follows:

> [T]he Court should rule that the only discovery to which Respondent is entitled
> relates to the level of support for the Union among Great Neck employees during
> the period leading up to the [National Labor Relations Board ("NLRB")] election
> at the Great Neck store and the reasons for employees' loss of support for the
> Union.  Discovery of these matters would enable Respondent to determine
> whether something other than its unfair labor practices caused employees to
> abandon their support for the Union, which is the only discoverable matter
> relevant to the "just and proper" inquiry before this Court.

Petitioner's Letter dated March 13, 2023, Dkt. 75, at ECF page 2.

On March 27, 2023, the Court held a motion hearing, during which it granted in part and

denied in part the Motions to Quash.  *See* Minute Entry dated 3/27/2023.  In so ruling, the Court

limited discovery to the period between February 9, 2022 (the date the Union filed the petition

for a representation election) and May 3, 2022 (the date of the election) -- referred to as the

"campaign period."  *See id.*  At the March 27, 2023 hearing, the Court initially allowed post-

election discovery only to the extent it relates to events that occurred during the campaign

period, but granted Starbucks leave to file a motion for reconsideration in support of its request

for additional post-election discovery.  *See id.*

4

Starbucks renewed its request, *see* Dkt. 81, and at a hearing on April 17, 2023, the Court

permitted additional discovery for the limited period between July 27, 2022[4] and September 30,

2022 (referred to as the "post-termination period") relating to any chill on Great Neck

employees' Section 7[5] activities resulting from Ms. Chuquillanqui's termination.  *See* Minute

Entry dated 4/17/2023.

### B.     Protective Order

At the outset of the case, the Court entered an order to protect the exchange of

confidential information during the course of discovery.  *See* Protective Order, Dkt. 44.

Thereafter, Petitioner and the Subpoenaed Non-Parties raised additional concerns that the

discovery sought by Starbucks would infringe on the Section 7 rights of employees, and

requested a more robust protective order.  *See* Dkt. 80 (Petitioner proposed limiting disclosure

for attorney's eyes only; redacting employee names and identifying information; anonymizing

employees); Tr. of 4/17/2023 Hearing, Dkt. 86, at 31–49.

The Court sought to balance the employees' confidentiality interests against Starbucks'

interest in the requested information to mount a defense in the 10(j) proceeding.  The Court

adopted in large part Petitioner's recommendations and entered a revised protective order

requiring redaction of employees' names (excepting Ms. Chuquillanqui and Mr. Wooster),

restricting confidential information for attorneys' eyes only, anonymizing employees, and

implementing a key system for identifying information.  *See* Minute Entry dated 4/17/2023;

Revised Protective Order, Dkt. 91.

---

[4] Starbucks terminated Ms. Chuquillanqui's employment on July 26, 2022.  Dkt. 81 at 1.

[5] Section 7 of the Act protects the rights of employees to engage in concerted activity, including the right to communicate confidentially about union activity.  *See* 29 U.S.C. § 157; *Veritas Health Servs., Inc. v. NLRB*, 671 F.3d 1267, 1274 (D.C. Cir. 2012).

C.      **The Amended Subpoenas**

In response to the Court's March 27 and April 17, 2023 Orders, and after meeting and

conferring with Petitioner, on April 18, 2023, Starbucks served amended subpoenas *duces tecum*

(referred to as "April 2023 Amended Subpoenas" or "Amended Subpoenas") upon the

Subpoenaed Non-Parties, Max Cook, Taydoe Jones and Darren Wisher.  *See* Dkt. 90 at ECF

page[6] 1 and Ex. A.  In the Amended Subpoenas, Starbucks had reduced the number of requests

from approximately 20 to 24 in its initial December 2022 subpoenas, to two requests with

subparts.  Starbucks further limited its inquiry to the level of support for the Union from Great

Neck Starbucks employees during the post-termination period (Request No. 1(a)), the reasons

why employees changed from favoring Union representation to being opposed to Union

representation (Request No. 1(b)), and whether Great Neck Starbucks employees were

discouraged or dissuaded from engaging in protected concerted activities because of Starbucks'

termination of Joselyn Chuquillanqui during the post-termination period (Request No. 2).  *See,

e.g.*, Dkt. 90 at ECF pages 10–11 (Saff subpoena); *see also* Revised Protective Order, Dkt. 91 at

¶ 5(b).[7]

On April 28, 2023, the Subpoenaed Non-Parties served their Responses and Objections to

the discovery requests.  *See* Dkt. 90 at ECF page 1 and pages 67–114 (Ex. B).  On April 28,

2023, Petitioner also objected to the instructions concerning redactions (Instruction 23) and to

Request No. 1(b).  *See* Dkt. 90 at ECF page 1 and pages 115–16 (Ex. C).

---

[6] References to the page numbers generated by the Court's electronic case filing system appear
as "ECF page."

[7] The requests in the Amended Subpoena directed to Saff mirror the requests in the other
Amended Subpoenas.  *See, e.g.*, Dkt. 90 at ECF pages 2-64.

### III.      Starbucks' Motion to Compel

After the Subpoenaed Non-Parties made clear that they did not intend to respond to the

April 2023 Amended Subpoenas, Starbucks filed a motion to compel.  *See* Dkt. 94.  Following a

hearing on the motion to compel, the Court ordered supplemental briefing, and on August 16,

2023, Starbucks filed a supplemental memorandum in support of its motion to compel.  *See*

Suppl. Mot. to Compel, Dkt. 99.  The Subpoenaed Non-Parties filed their opposition on August

23, 2023.  *See* Opp. to Mot. to Compel, Dkt. 100.

### IV.     Motion to Stay or for Reconsideration

Following service of the December 2022 Subpoenas, the Union filed with the Board an

unfair labor practice charge against Starbucks, alleging that the December 2022 Subpoenas

"infringe upon employee rights under Section 7 of the [Act], in violation of Section 8(a)(1) and

(4) of the [Act]."  Jackson Decl., Dkt. 46, ¶ 5.  On August 4, 2023, after investigating the

Union's charges, Petitioner, in her capacity as Regional Director of Region 29 of the Board, filed

an administrative complaint against Starbucks (the "Subpoena ULP Complaint").  *See* Ex. A to

Declaration of Cristina Gallo, Dkt. 101-2 ("Gallo Decl.").

On August 25, 2023, the Subpoenaed Non-Parties filed a motion to stay proceedings or,

in the alternative, for reconsideration of this Court's March 27, 2023 discovery order, in light of

the Subpoena ULP Complaint.  *See* Mot. to Stay, Dkt. 101.  The Subpoenaed Non-Parties argue

that a stay is necessary to preserve the Board's primary jurisdiction to decide whether Starbucks'

third-party subpoenas violate the Act.  *See generally id.*

On September 7, 2023, the Court held its previously scheduled hearing on the motion to

compel, during which it addressed the newly filed motion to stay.  *See* Minute Entry dated

9/7/2023.  On September 12, 2023, Starbucks filed its opposition to the motion to stay, *see* Opp.

to Mot. to Stay, Dkt. 104, and on September 22, 2023, the Subpoenaed Non-Parties filed their

reply, *see* Reply in Supp. of Mot. to Stay, Dkt. 106.  Both Starbucks and the Subpoenaed Non-

Parties were granted leave to file sur-replies.[8]  *See* Dkts. 107–110.

## V.      The *Leslie* Case

In a parallel case brought in the Western District of New York, *Leslie v. Starbucks Corp.*,

No. 22-CV-478 (W.D.N.Y.) ("*Leslie*"), a similar set of circumstances has resulted in dismissal of

the Board representative's 10(j) petition and an appeal to the Second Circuit.  There, a complaint

was filed with the Board on December 15, 2022, challenging substantially similar subpoenas that

had been served as part of the District Court proceedings in the Western District of New York.

*Leslie*, Dkt. 71-1.  On February 9, 2023, a hearing was held before Administrative Law Judge

Charles Muhl ("ALJ Muhl") in Buffalo, and on May 12, 2023, ALJ Muhl issued a decision.  *See*

*Leslie*, Dkt. 103-1.  In his decision, ALJ Muhl found that nearly all of Starbucks' subpoena

requests violated Section 8(a)(1) of the Act under the Board's framework in *Guess?, Inc.*, 339

N.L.R.B. 432 (2003).[9]  *Leslie*, Dkt. 103-1.

However, ALJ Muhl found that Starbucks' "requests which sought the *number*, not the

names, of individuals who supported the union over a certain period of time are lawful.  Those

requests *are relevant* to the Respondent's 10(j) defense and did not seek the identities of

employees who supported or did not support the Union."  *Leslie*, Dkt. 103-1 at 2 (emphasis

added); *see also id*. at 12.

---

[8] Although the Court at the September 7, 2023 hearing indicated its intent to hold a further motion hearing on Starbucks' motion to compel, the Court concluded that the rulings held in prior discovery conferences, and the extensive briefing following the motion to stay, obviated the need for a further hearing.

[9] The Board in *Guess?* established a three-part test for determining whether a respondent's discovery requests "in a separate proceeding" were lawful.  *See* 339 N.L.R.B. at 434.

In response, the petitioner in *Leslie* moved to stay the District Court case pending final Board resolution of the complaint, or, alternatively, for reconsideration of the District Court's prior discovery orders. *See Leslie*, Dkt. 106. The union joined in these requests. *See Leslie*, Dkt. 108. On August 23, 2023, the Honorable John L. Sinatra, *inter alia*, denied the motions to stay and for reconsideration and granted Starbucks' pending motion to dismiss the Board's 10(j) petition. *See Leslie* Decision and Order dated 8/23/2023, Dkt. 132. Judge Sinatra's decision was appealed to the Second Circuit the following day, where the case presently advances on an expedited basis. *See Leslie v. Starbucks Corp.*, No. 23-1194 (2d Cir.).

## Discussion

### I.    Motion to Stay

The Subpoenaed Non-Parties ask this Court to stay this 10(j) case[10] pending the Board's adjudication of the Subpoena ULP Complaint, invoking the "primary jurisdiction" of the Board to determine whether Starbucks' issuance and enforcement of the subpoenas violate the Act. Mot. to Stay, Dkt. 101, at 3–4. In response, Starbucks posits that the primary jurisdiction doctrine is inapplicable, or at least inappropriate, in this context. *See* Opp. to Mot. to Stay, Dkt. 104, at 14, 18. No party disputes that the district court has jurisdiction over this proceeding pursuant to Section 10(j); the Subpoenaed Non-Parties do not contend the Board has exclusive jurisdiction over any of the issues in this case. Rather, the Subpoenaed Non-Parties ask that this Court, in its discretion, defer to the Board on the discrete issue of whether Starbucks' subpoenas

---

[10] The Subpoenaed Non-Parties insist they seek only a stay of enforcement of Starbucks' subpoenas -- not a stay of the entire 10(j) proceeding. *See* Reply in Supp. of Mot. to Stay, Dkt. 106, at 6. Were the case to proceed without discovery, notwithstanding the District Judge's order for discovery into whether an injunction is "just and proper," the Court would be left to either (1) decide the 10(j) petition without any discovery requested by Starbucks, which the Court has already indicated its unwillingness to do, or (2) stay the case entirely. Thus, the Subpoenaed Non-Parties in effect seek a stay of the entire 10(j) proceeding.

violate the Act, and request a stay while awaiting such instruction.  For the reasons set forth below, the Court denies the motion to stay.

"Primary jurisdiction is a judge-made doctrine [that] serves two principal interests: 'consistency and uniformity in the regulation of an area which Congress has entrusted to a federal agency; and the resolution of technical questions or facts through the agency's specialized expertise, prior to judicial consideration of the legal claims.'" *TCG New York, Inc. v. City of White Plains*, 305 F.3d 67, 74 (2d Cir. 2002) (quoting *Golden Hill Paugussett Tribe v. Weicker*, 39 F.3d 51, 59 (2d Cir. 1994)), *cert. denied*, 538 U.S. 923 (2003).  "[C]ourts apply primary jurisdiction to cases involving technical and intricate questions of fact and policy that Congress has assigned to a specific agency." *Mason Tenders Dist. Council Welfare Fund v. ITRI Brick & Concrete Corp.*, No. 96-CV-6754, 1997 WL 678164, at *7 (S.D.N.Y. Oct. 31, 1997) (citing *Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*, 46 F.3d 220, 222–23 (2d Cir. 1995)).

The Second Circuit has emphasized that primary jurisdiction "cannot be applied mechanically" but rather "is a discretionary doctrine whose applicability in any given case depends on 'whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation.'" *Tassy v. Brunswick Hosp. Ctr., Inc.*, 296 F.3d 65, 72 (2d Cir. 2002) (quoting *United States v. W. Pac. R. Co.*, 352 U.S. 59, 64 (1956)).  Courts in this Circuit center the analysis around four factors:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

*Ellis v. Trib. Television Co.*, 443 F.3d 71, 82–83 (2d Cir. 2006).  The Court "must also balance the advantages of applying the doctrine against the potential costs resulting from complications

and delay in the administrative proceedings." *Id.* at 83.

As an initial matter, several courts have questioned the wisdom of deferring to the agency's expertise when the agency is already before the Court. *See, e.g.*, *Interstate Com. Comm'n v. Maine Cent. R. Co.*, 505 F.2d 590, 594 (2d Cir. 1974) ("[Primary jurisdiction] doctrine can have no application where, as here, the very institution of suit in the courts by the relevant administrative body represents an exercise of its 'special competence.'"); *CAB v. Aeromatic Travel Corp.*, 489 F.2d 251, 254 (2d Cir. 1973) ("[W]hen the agency chooses to go to the district court for enforcement, it makes little sense to refer the very question at issue to the agency."); *United States v. Alcon Laboratories*, 636 F.2d 876, 888 (1st Cir. 1981) ("[D]eference to an agency's primary jurisdiction makes little sense in the context of an enforcement proceeding initiated by the agency."); *see also United States v. Any & All Radio Station Transmission Equip.*, 204 F.3d 658, 664 (6th Cir. 2000) (collecting cases).

Here, the regional director, on behalf of the Board, is presently litigating this case and thus already contributing the agency's expertise to the 10(j) proceeding.  In fact, Petitioner has been intimately involved in assisting the Court in defining the scope of discovery, that Petitioner concedes is "relevant."  For example, Petitioner proposed modifications to requests in the December 2022 Subpoenas to address objections it had raised, *see* Dkt. 75, and the Court adopted Petitioner's modifications, *see* Minute Entry dated 3/27/2023 ¶ (3).  Further, Petitioner has proposed a mechanism for anonymizing employees to protect their confidentiality and Section 7 rights that the Court approved and memorialized in the revised protective order, Dkt. 91.

In evaluating the complaint in the parallel Buffalo *Guess?* proceeding, ALJ Muhl likewise expressed "serious concern" with the analogous procedural posture of the *Leslie* case.

*See Leslie*, Dkt. 103-1, at 7.  ALJ Muhl questioned "whether *Guess?* should apply when the federal lawsuit is a 10(j) proceeding and the party making discovery requests is a respondent seeking to defend against an action brought by the" general counsel of the Board.  *Id.*  The ALJ observed that "[u]ltimately, the Board may determine that *Guess?* does not apply to this specific factual situation." *Id.*  ALJ Muhl himself questions the propriety of the administrative complaint underpinning the stay request, persuading against application of the primary jurisdiction doctrine.

Turning to the first two *Ellis* factors, "primary jurisdiction does not extend to a legal question that is within the conventional competence of the courts, and the judgment of a technically expert body is not likely to be helpful in the application of these standards to the facts of the particular case." *Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*, 46 F.3d 220, 223 (2d Cir. 1995).  There can be no question that defining the contours of permissible discovery presents a question "within the conventional experience of judges." *Ellis*, 443 F.3d at 82.  While the Board's ultimate resolution of the Subpoena ULP Complaint would likely be informative, the Court has acted well within its competency in crafting its discovery orders.  *See Mason Tenders*, 1997 WL 678164, at *9 (declining to defer to the NLRB where issue arguably within the NLRB's primary jurisdiction was "but a small portion of th[e] case" and "the remainder, consisting of contract and alter ego analysis, [was] within the common experience of the courts").

Further, in ruling on the discovery motions and limiting discovery accordingly, this Court has repeatedly considered the privacy interests of employees that guarantee their rights under the Act.  The issue was thoroughly briefed by the parties in their Motions to Quash, Dkts. 58, 59, 62, and the Court considered such interests in ruling on the motions and entering a revised protective

order, *see* Minute Entry dated 3/27/2023 (granting in part and denying in part motions to quash);

Revised Protective Order, Dkt. 91.  Notably, the criteria considered in a *Guess?* proceeding

before the Board are substantially similar to the analysis the Court conducts under Rules 26 and

45 of the Federal Rules of Civil Procedure.  *See Guess?*, 339 N.L.R.B. at 434 ("To be lawful, the

employer's discovery requests:  (1) must be relevant; (2) must not have an illegal objective; and

(3) if the questioning is relevant and does not have an illegal objective, then the employer's

interest in obtaining the information must outweigh employees' confidentiality interests under

Section 7 of the Act.").  Accordingly, because the propriety of Starbucks' subpoenas does not

call on technical expertise outside the competency of this Court, the first two *Ellis* factors weigh

against a stay.

Next, the Subpoenaed Non-Parties express concern that the parties "will be subject to

conflicting rulings from the Board (and possibly a court of appeals reviewing any Board order)."

Mot. to Stay at 7.  The Court sees little risk of this outcome.  "Agency decision[-]making often

takes a long time and the delay imposes enormous costs on individuals, society, and the legal

system."  *Nat'l Commc'ns Ass'n*, 46 F.3d at 225 (internal citations and quotations omitted).  As

the Subpoenaed Non-Parties point out, "[t]he Subpoena ULP Complaint is the first step in the

Board's adjudicative process, after which an administrative law judge [] will issue a ruling,

which is subject to the Board's review."  Mot. to Stay at 2.  In the *Leslie* proceeding, where

Starbucks' discovery requests advanced through a similar procedural history, the union in that

case filed its administrative complaint challenging the subpoenas on December 15, 2022.  *See*

*Leslie*, Dkt. 71-1.  ALJ Muhl published his findings and decision on May 12, 2023, *see Leslie*,

Dkt. 103-1, and the Board has yet to render a decision.

Assuming a similar timeline will delay the Subpoena ULP Complaint in this case, the

Subpoenaed Non-Parties' concerns about conflicting judgments appear remote.  Apparently recognizing the delayed nature of agency proceedings, the Subpoenaed Non-Parties express equal concern that "any ultimate Board remedy may be null and void by the time it is ordered." Mot. to Stay at 6.  Thus, the third factor does not favor a stay.  *See New York State Thruway Auth. v. Level 3 Commc'ns, LLC*, 734 F. Supp. 2d 257, 268 (N.D.N.Y. 2010) (declining to issue a stay in part due to "minimal risk that each tribunal will issue a decision that will converge simultaneously" and observing that a stay would "derail the benefit of discovery in this litigation and the expedited disposition of the case").

Lastly, a prior application to the agency was made when the Union filed a charge with the Board on January 4, 2023.  *See* Ex. A to Gallo Decl., Dkt. 101-2 (Subpoena ULP Complaint). However, the discovery requests detailed in the Subpoena ULP Complaint do not capture the limitations on discovery that this Court ordered in partially granting the motions to quash, including quashing a number of discovery requests and narrowing the applicable temporal period for the requests.  *Compare id. with* Starbucks' Mot. to Compel, Dkt. 99; *see also* Minute Entry dated 3/27/2023; Minute Entry dated 4/17/2023 (approving protective order to redact employees' names, excepting Ms. Chuquillanqui and Mr. Wooster; marking confidential information attorneys' eyes only; and implementing key system for identifying information).  Thus, although a prior application is under agency review, it is not clear that the same concerns at issue in this Court are squarely before the Board.

In sum, the Court finds that the relevant factors weigh against a stay.

## II.      Motion for Reconsideration

The Subpoenaed Non-Parties request, in the alternative, that the Court reconsider its March 27, 2023 discovery order, citing the Subpoena ULP Complaint as new evidence.  *See* Mot. to Stay at 7–8.

To prevail on a motion for reconsideration, the moving party must show "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Doe v. N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983).  "A motion for reconsideration is 'not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.'"  *Henry v. Cty. of Nassau*, No. 17-CV-6545, 2022 WL 16965006, at *4 (E.D.N.Y. Nov. 16, 2022) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)).  Courts will generally deny a motion for reconsideration "unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Id.* (quoting *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001)).

The contentions raised in the Subpoena ULP Complaint have been previously presented to the Court by Petitioner as well as by the Subpoenaed Non-Parties.  *See, e.g.*, Petitioner's Am. Mot. to Quash, Dkt. 62, at 8–9; Dkts. 58, 59.  As such, the allegations do not constitute new evidence simply because they are packaged in a new proceeding.  Accordingly, the Subpoenaed Non-Parties' Motion for Reconsideration of this Court's March 27, 2023 discovery order is denied.

III.     **Motion to Compel**

Starbucks moves for an order compelling the Subpoenaed Non-Parties to respond to its April 2023 Amended Subpoenas.  For the reasons set forth below, the Court grants with modifications Starbucks' motion.

A.      **Request No. 1(a)**

In Request No. 1(a) of its initial December 2022 Subpoena, Starbucks sought discovery into changing sentiments towards the union during the time the petition was filed (*i.e.*, February 9, 2022) until May 3, 2022 (date of the election) -- referred to as the campaign period.  *See, e.g.*, Dkt. 62-1 at ECF page 49 (Saff subpoena).[11]  Although Petitioner initially objected to Request No. 1(a), Petitioner later withdrew its objection before the March 27, 2023 hearing.  *See* Dkt. 75 at ECF page 3 (withdrawing objection during the campaign period from February 9, 2022 until May 3, 2022).

In Request No. 1(a) of the April 2023 Amended Subpoenas, Starbucks now seeks discovery into changing sentiments towards the union from *July 27, 2022 to September 30, 2022* -- the period following Ms. Chuquillanqui's termination ("post-termination period").  *See* Suppl. Mot. to Compel, Dkt. 99, at ECF page 2 (emphasis added); Dkt. 90 at ECF page 10 (Saff subpoena).  Specifically, Request No. 1(a) of the April 2023 Amended Subpoenas seeks documents and recordings relating to "[t]he number of Partners (not names) at the Great Neck store who were considered to be in favor of union representation ('yes' votes) and the number of Partners who were considered not to be in favor of union representation ('no' votes) as of July 27, 2022, and each week thereafter (or whatever other interval was used) until September 30,

---

[11] The Court references the December 2022 subpoena addressed to Saff here for illustrative purposes.  The other December 2022 subpoenas, except for the subpoena served on Ms. Chuquillanqui, are largely the same as the one served on Saff.

2022." *See, e.g.*, Dkt. 90 at ECF page 10 (Saff subpoena).

After receiving Starbucks' Amended Subpoenas, Petitioner did not renew any objections to Request No. 1(a) as set forth in the Amended Subpoenas even though Starbucks had modified this request to cover the post-termination period, rather than the campaign period. *See* Dkt. 90 at ECF page 116 (Petitioner's email to Starbucks).

With respect to post-termination discovery, on March 27, 2023, the Court initially allowed discovery during this time period only insofar as it "relates to information or sentiments during the campaign period." Tr. of 3/27/2023 Hearing, Dkt. 78, at 25. Further, at the April 17, 2023 hearing, the Court modified its prior ruling and expressly permitted discovery into any potential chill caused by Ms. Chuquillanqui's termination during the post-termination period. *See* Minute Entry dated 4/17/2023.

Petitioner has conceded that post-termination discovery is relevant to these proceedings, as follows:

> THE COURT:  Okay.  And just so I'm understanding correctly, the reason why you're not objecting necessarily to at least the depositions and inquiry into whether the termination of Ms. Chuquillanqui had a chilling effect on other employees is because one of the remedies you're seeking in this case is her reinstatement.  Is that fair to say?
>
> MR. JACKSON:  Yes, correct.  And it's appropriate for the Court to fully evaluate the impact that what we believe is an unfair labor practice had on employee Section 7 activities.

Tr. of 4/17/2023 Hearing, Dkt. 86, at 8; *see also id.* at 21 (allowing post-termination discovery in light of Petitioner's position as it relates to the potential chill on employees' Section 7 rights stemming from Ms. Chuquillanqui's termination); *see also* Tr. of 3/27/2023 Hearing, Dkt. 78, at 20–21 (Petitioner acknowledged that "communication that occurred after . . . Chuquillanqui's discharge that reveals something about . . . the sentiment that existed before the election" would

17

be discoverable).

Given that the request does not seek to identify any individuals by name, a concern raised by the Subpoenaed Non-Parties, this request does not raise any confidentiality issues.[12]  Further, in light of Petitioner's acknowledgment that post-termination discovery is relevant, the Court grants Starbucks' motion to compel as it relates to Request No. 1(a).

### B.    Request No. 1(b)

With respect to Request No. 1(b), in its initial December 2022 Subpoena, Starbucks requested the following:  "For each Partner at the Great Neck store who was or has been considered at any time to have changed from being in favor of union representation to not being in favor of it, any statements the Partner made or things that the Partner did that factored into that determination."  *E.g.*, Dkt. 62-1 at ECF page 49; Dkt. 75 at ECF page 3.  Petitioner initially objected, but after meeting and conferring with Petitioner, Petitioner agreed to withdraw its objection if the request were modified as follows:  "For each Partner at the Great Neck store who was or has been considered at any time to have changed from being in favor of union representation to not being in favor of it, all reason(s) why the employee may have changed his/her/their sentiments regarding the Union."  Dkt. 75 at ECF page 3.  Petitioner further recommended limiting this request to the time period between February 9, 2022 and May 3, 2022 -- the campaign period.  *Id.*

At the March 27, 2023 hearing, the Court adopted the Petitioner's proposed modifications to Request No. 1(b).  *See, e.g.*, Dkt. 75 at ECF page 3 (proposing modified language for Request No. 1(b)); Tr. of 3/27/2023 Hearing, Dkt. 78, at 32.  However, the Court, with Petitioner's

---

[12] Even ALJ Muhl found lawful Starbucks' "requests which sought the number, not the names, of individuals who supported the union over a certain period of time" and also found this information relevant to Starbucks' 10(j) defense.  *See Leslie*, Dkt. 103-1 at 2, 12.

consent at the hearing, expanded the temporal limitations also to include the post-termination period.  Minute Entry dated 3/27/2023 ¶ (4).

In Request No. 1(b) of the April 2023 Amended Subpoenas, Starbucks now seeks discovery into the reasons for changing union sentiment during (i) the campaign period and (ii) the post-termination period, respectively.  *See* Suppl. Mot. to Compel, Dkt. 99, at ECF page 2; *see, e.g.*, Dkt. 90 at ECF page 10 (Saff subpoena). Specifically, Request No. 1(b) of the April 2023 Amended Subpoenas seeks documents and recordings relating to the following:

> For each Partner at the Great Neck store who at any time (i) from February 9, 2022 (the date on or about which the Union filed its representation petition) to May 3, 2022 (the date the votes cast by the Partners in the election were counted) and (ii) from July 27, 2022, to September 30, 2022, changed or was considered to have changed from being in favor of union representation to not being in favor of union representation, all reason(s) why the Partner may have changed his/her/their sentiments regarding the Union during the period from February 9, 2022, to September 30, 2022.

*See, e.g.*, Dkt. 90 at ECF page 10.

Petitioner objected to the amended Request No. 1(b) in so far as the temporal scope was overly broad and inconsistent with this Court's prior ruling.  *See* Dkt. 90 at ECF page 116.  To cure the defect, Petitioner recommended removing the words "during the period from February 9, 2022, to September 30, 2022."  *Id.*  Petitioner correctly noted that the Court had limited the relevant inquiry to the campaign period (2/9/2022 - 5/3/2022) and the post-termination period (7/27/2022 - 9/30/2022).  Given that Request No. 1(b) largely mirrors the language proposed by Petitioner and as approved by the Court at the March 27, 2023 hearing, with the modification as proposed by Petitioner in its objections email (Dkt. 90 at ECF page 116) clarifying that the request is limited to the campaign and post-termination periods, the Court grants Starbucks' motion to compel as to Request No. 1(b).

C.      **Request No. 2**

Request No. 2 of the April 2023 Amended Subpoenas seeks documents and information relating to the question of whether Ms. Chuquillanqui's termination "had, or did not have, a 'chilling' or adverse effect on Great Neck Partners' Section 7 or union activities" during the post-termination period.[13]  Suppl. Mot. to Compel, Dkt. 99, at ECF page 4.  At the April 17, 2023 hearing, Starbucks represented to the Court that it seeks documents and testimony to show whether employees' views on unionization changed as a result of the termination, in order to ascertain whether the requested injunctive relief -- reinstatement of Ms. Chuquillanqui and the entry of a bargaining order -- are just and proper.  *See* Tr. of 4/17/2023 Hearing, Dkt. 86, at 8–21; *see also* Suppl. Mot. to Compel, Dkt. 99, at ECF page 4 ("Request No. 2 seeks documents . . . to show that Ms. Chuquillanqui's separation does not warrant an interim bargaining order.").

Petitioner also acknowledged that the "impact of the chill on employee Section 7

---

[13] The full text of Request No. 2 of the April 2023 Amended Subpoenas is as follows:

All Documents from the period July 27, 2022, to September 30, 2022, relating in any way to whether the termination of Joselyn Chuquillanqui's employment had, or did not have, a "chilling" or adverse effect on Great Neck Partners' Section 7 or union activities, including, but not limited to, any Documents relating in any way to:

(a) Whether Ms. Chuquillanqui's termination, or anything Ms. Chuquillanqui said or did, had any effect, or may be inferred to have had any effect, on any Partner's interests in unionization or sentiments toward the Union;

(b) Whether Ms. Chuquillanqui's job performance, including matters relating to her compliance, or lack thereof, with Starbucks' policies and procedures, effected [*sic*], or may be inferred to have effected [*sic*], any Partner's interests in unionization or sentiments toward the Union; and

(c) Whether Ms. Chuquillanqui was an effective union organizer, including whether her performance as a union organizer effected [*sic*], or

activities by Ms. Chuquillanqui's termination" is "a *relevant* inquiry."  Tr. of 4/17/2023 Hearing, Dkt. 86, at 4 (emphasis added); *see id.* ("[Starbucks] should be able to question deponents on matters related to what impact Ms. Chuquillanqui's termination had had on employee Section 7 activities.  And that's really the only relevant inquiry here in the just and proper."); *see also id.* at 5–6.

Further, as counsel for Mr. Wooster and Ms. Chuquillanqui recognized, "I could understand an argument that workers were not chilled by the termination because they stopped supporting the union because they didn't like Ms. Chuquillanqui if there were any evidence to support that which frankly there isn't.  But that would be *potentially a relevant inquiry*."  Tr. of 4/17/2023 Hearing, Dkt. 86, at 18 (emphasis added).

Based on the acknowledgment as to the relevance of discovery as to the alleged chill on Section 7 activities, the Court approved Starbucks' request for post-termination discovery.  *See* Minute Entry dated 4/17/2023; Tr. of 4/17/2023 Hearing, Dkt. 86, at 8, 21, 23 (applying post-termination discovery to both written discovery and depositions).  After service of the Amended Subpoenas, Petitioner did not raise any specific objections to Request No. 2.  *See* Dkt. 90 at ECF page 116.

In their opposition to Starbucks' motion to compel, the Subpoenaed Non-Parties largely rehash arguments that this Court considered when originally permitting discovery into the alleged chill on other employees stemming from Ms. Chuquillanqui's termination.  *See, e.g.*, Opp. to Mot. to Compel at 4–7 (arguing that inquiry into Ms. Chuquillanqui's conduct and

---

may be inferred to have effected [*sic*], one way or another, any Partner's interest in unionization or sentiments toward the Union.

*See, e.g.*, Dkt. 90 at ECF page 10.

resulting employee sentiment is irrelevant).  However, at the April 17, 2023 hearing, Petitioner acknowledged that discovery as to the impact of the chill on employees' Section 7 rights is a "relevant inquiry."  Tr. of 4/17/2023 Hearing, Dkt. 86, at 18.

The Subpoenaed Non-Parties further argue that Request No. 2 is overbroad and vague, but the language of Request No. 2 limits any discovery to that which relates to "whether the termination of Joselyn Chuquillanqui's employment had, or did not have, a 'chilling' or adverse effect on Great Neck Partners' Section 7 or union activities."  Suppl. Mot. to Compel, Dkt. 99, at ECF page 4.  The Court concludes that Request No. 2 is permissible and grants Starbucks' motion to compel as to Request No. 2 in its entirety.

### D.      Instruction No. 23

Petitioner raises concerns with respect to Instruction No. 23 contained in the Amended Subpoenas and that individuals responding to the subpoenas may not redact names and identifying information.  *See* Dkt. 90 at ECF page 116.  In light of the concerns raised by Petitioner, Starbucks shall serve the Subpoenaed Non-Parties with a copy of the Revised Protective Order to ensure the recipients of the subpoena are aware that the names of employees and other identifying information should be redacted from any responses, except for Ms. Chuquillanqui and Mr. Wooster, as set forth in paragraph 4(c) of the Revised Protective Order, Dkt. 91.

### Conclusion

For the foregoing reasons, the Court denies the Subpoenaed Non-Parties' motion to stay, Dkt. 101.  The Court grants Starbucks' motion to compel, Dkt. 94, as to Request No. 1(a), Request No. 1(b) as modified, and Request No. 2.

By April 29, 2024, the Subpoenaed Non-Parties shall produce the documents and

information requested in the Amended Subpoenas as set forth in this Order.  Further, by April 3,

2024, Starbucks shall serve a copy of this Order on the Subpoenaed Non-Parties, including any

unrepresented individuals, and file proof of service on ECF.

**SO ORDERED**

Dated: Brooklyn, New York
       March 29, 2024

                              s/ James R. Cho
                              James R. Cho
                              United States Magistrate Judge