UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TERESA POOR, Regional Director of Region 29 of the
National Labor Relations Board, for and on behalf of the
NATIONAL LABOR RELATIONS BOARD,

22-CV-7255 (ARR) (JRC)

*Petitioner*,

-against-

**OPINION & ORDER**

STARBUCKS CORPORATION,

*Respondent*.

ROSS, United States District Judge:

Non-parties Workers United (the "Union"), affiliated with the Service Employees
International Union, and David Saff, an employee of the Union's New York-New Jersey Regional
Joint Board, jointly with Joselyn Chuquillanqui and Justin Wooster, former employees[1] of
Starbucks and supporters of the Union, (collectively, with the Union and Mr. Saff, "the
Subpoenaed Non-Parties"), appeal Magistrate Judge Cho's order granting Starbucks' motion to
compel compliance with its subpoenas and denying the Subpoenaed Non-Parties' motion to stay
proceedings, or in the alternative, for reconsideration of his March 27, 2023 discovery order. *See*
Subpoenaed Non-Parties' Objs. to Magistrate Judge's Order (the "Appeal") 1–2, ECF No. 113;
*see also* Starbucks' Opp'n to Subpoenaed Non-Parties' Objs. ("Opp'n") 1, ECF No. 115. For the
following reasons, I affirm Judge Cho's order.

## BACKGROUND[2]

This case arises out of employees' efforts to organize a union at a Starbucks store in Great

---

[1] Starbucks employees are also referred to as "partners."

[2] For a full summary of the facts and procedural history of this case, see Judge Cho's March 29,
2024 Order. *See Poor v. Starbucks Corp.*, No. 22-CV-7255 (ARR) (JRC), 2024 WL 1347394 at

Neck, New York. *See Poor v. Starbucks Corp.*, No. 22-CV-7255 (ARR) (JRC), 2024 WL 1347394 at *1 (E.D.N.Y. Mar. 29, 2024). Workers United initially filed a representation petition with the National Labor Relations Board (the "Board" or the "NLRB")[3] in February 2022, seeking to represent employees at the Starbucks Great Neck location. *Id.* Soon thereafter, Starbucks allegedly engaged in various unfair labor practices aimed at dissuading Starbucks' employees from unionizing. Appeal 1–2; *Poor*, 2024 WL 1347394, at *1. Ultimately, Starbucks' employees voted not to unionize. Appeal 2. Shortly after the election, Starbucks also discharged Ms. Chuquillanqui, who was a prominent Union supporter. *Id.*

In response to these alleged actions, the Union filed numerous unfair labor practice charges with the Board. *Poor*, 2024 WL 1347394, at *1. After investigating the Union's charges, Teresa Poor, the Regional Director of Region 29 of the Board (the "petitioner") issued a complaint, Appeal 2, and in October 2022, a trial was held before an administrative law judge ("ALJ"), *Poor*, 2024 WL 1347394, at *1.[4] To date, the ALJ has yet to reach a decision on the merits of the

---

*1–5 (E.D.N.Y. Mar. 29, 2024).

[3] The NLRB is an agency that Congress created "to investigate, adjudicate, and stop unfair labor practices" that are prohibited by the National Labor Relations Act. *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1582 (2024) (Jackson, J., concurring in part).

[4] The NLRB's different functions are divided between different offices within the agency. It is "headed by a five-member board that is charged with resolving unfair labor practice cases." *McKinney*, 144 S. Ct. at 1582 (Jackson., J., concurring in part). "The enforcement role is occupied by a General Counsel. The General Counsel is charged with investigating and prosecuting unfair labor practice cases, as well as overseeing Regional Offices that carry out much of the day-to-day work of enforcing labor law and policy." *Id.* (citation omitted). The Board follows a four-step process to evaluate and remedy unfair labor practices. *Id.* First, a charge is filed before the Board, and the Regional Director investigates the charge. *Id.* "Second, if the investigation yields sufficient information to show an unfair labor practice, the Regional Director can issue a complaint. Third, an administrative law judge holds a hearing and issues a decision on the merits of the complaint, which a party can then appeal to the Board." *Id.* (citation omitted). The instant case is at this step in the four-step process; an administrative law judge has held a hearing on the merits of the Union's unfair labor practices claim but has yet to issue a decision. Appeal 2. "Finally, if the unfair labor

complaint.

In November 2022, petitioner filed a § 10(j) petition on behalf of the Board requesting that I issue preliminary injunctive relief while the Board decision is pending. *Id.* "Section 10(j) of the National Labor Relations Act ["NLRA"] authorizes the Board to seek a preliminary injunction from a federal district court while . . . administrative enforcement proceedings take place." *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1574 (2024). Petitioner seeks interim reinstatement of Ms. Chuquillanqui to her former position of employment and an interim bargaining order, among other forms of injunctive relief. Pet. for Temporary Inj. under Section 10(j) of the NLRA ("10(j) Pet."), XI, subsections 2(a), 2(c), ECF No. 1. Petitioner also requested that I "adjudicate the 10(j) petition on the basis of the administrative record" developed before the ALJ, instead of granting Starbucks' request for discovery. *Poor*, 2024 WL 1347394, at *1.

At the time that petitioner filed the petition, the Second Circuit applied a two-prong standard for § 10(j) injunctive relief; if "reasonable cause" supported the conclusion that an employer committed unfair labor practices and if the requested relief was "just and proper," then § 10(j) relief was warranted.[5] *See Leslie v. Starbucks Corp.*, 2024 WL 2186232, at *5 (2d Cir. May

_____

practices alleged in the complaint are sustained, the Board can seek enforcement of the order, and any aggrieved party can seek review, in a federal court of appeals." 144 S. Ct. at 1582–83 (Jackson, J., concurring in part).

[5] In *McKinney*, the Supreme Court determined that courts must apply the "traditional four-factor test for a preliminary injunction articulated in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)" when evaluating § 10(j) petitions, not the two-prong reasonable cause and just and proper standard. 144 S. Ct. at 1574. Under the *Winter* test, a court may only grant a petitioner a preliminary injunction if the petitioner demonstrates that it is "likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Id.* at 1575 (quoting *Winter*, 555 U.S. at 20). Although courts must now apply the four-factor test when evaluating § 10(j) relief, the just and proper prong of the test that the Second Circuit previously applied "incorporates elements of the four-part standard for preliminary injunctions" articulated in *Winter*, including whether preliminary relief is necessary to "prevent irreparable harm." *Leslie*, 2024 WL

15, 2024). With this standard in mind, I granted petitioner's request that I determine its petition for temporary injunctive relief on the basis of the administrative record as to the issue of reasonable cause, but I denied its request as to "the issue of the 'just and proper' remedy." *See* Docket Order dated Dec. 15, 2022. On the just and proper prong of the standard, I granted Starbucks' request for expedited discovery. *Id*. I referred management of discovery to Judge Cho. *Id.*

Over the course of nearly two years, the parties have argued about the permissible scope of discovery. The parties' disputes have concerned document and deposition subpoenas that Starbucks issued in December 2022 to various non-parties, including five of Starbucks' employees and officials at the Union. *Poor*, 2024 WL 1347394, at \*2. Since Starbucks first filed the subpoenas, Judge Cho has significantly narrowed their scope. In March 2023, Judge Cho "limited discovery to the period between February 9, 2022 (the date the Union filed the petition for a representation election) and May 3, 2022 (the date of the election)—referred to as the 'campaign period.'" *Id.* at \*2. Later in April 2023, on Starbucks' motion for reconsideration, Judge Cho permitted additional discovery, but only for the "limited period between July 27, 2022 and September 30, 2022 (referred to as the 'post-termination period') relating to any chill on Great Neck employees' Section 7 activities[6] resulting from Ms. Chuquillanqui's termination." *Id.* at \*3.[7]

---

2186232, at \*5–6. The Court's decision in *McKinney* does not alter my analysis of the instant matter. I am deciding a discovery dispute, which requires application of the relevant Federal Rules of Civil Procedure; I am not deciding the merits of petitioner's motion for § 10(j) relief.

[6] Pursuant to Section 7, 29 U.S.C. § 157, "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section (8)(a)(3) of this title."

[7] Starbucks terminated Ms. Chuquillanqui's employment on July 27, 2022. 10(j) Pet., Ex. N, ¶

4

He also clarified that his March and April 2023 rulings apply to both "written discovery and depositions." Docket Order dated Apr. 17, 2023. Finally, Judge Cho issued a robust protective order, which also applies to both requests for documents and deposition testimony. This protective order requires the redaction of employee names and identifying information (excepting Ms. Chuquillanqui and Mr. Wooster), restricts confidential information for attorneys' eyes only, and implements a key system for identifying information. *Poor*, 2024 WL 1347394, at *3.

In response to Judge Cho's March and April 2023 orders, Starbucks served amended subpoenas (the "2023 Amended Subpoenas" or "Amended Subpoenas") upon the Subpoenaed Non-Parties and three additional Starbucks employees. *Id.* The Amended Subpoenas include two requests with subparts. *Id.* The first request ("Request 1") seeks materials concerning "the level of support for the Union from Great Neck Starbucks employees during the post-termination period . . . [and] the reasons why employees changed from favoring Union representation" to opposing it. *Id.*[8] The second request ("Request 2") seeks materials related to "whether Great Neck Starbucks

---

18(c), ECF No. 1.

[8] Request 1, as modified by Judge Cho's March 2024 Order, seeks:

All Documents and/or Recordings relating to any Communications by you to, or to you from (i) any Partner employed at any Starbucks store, (ii) the Union, (iii) the NLRB, (iv) any digital, print, radio, TV, internet-based or other media outlet concerning any of the following matters:

(a) The number of Partners (not names) at the Great Neck store who were considered to be in favor of union representation ("yes" votes) and the number of Partners who were considered not to be in favor of union representation ("no" votes) as of July 27, 2022, and each week thereafter (or whatever other interval was used) until September 30, 2022

(b) For each Partner at the Great Neck store who at any time (i) from February 9, 2022 (the date on or about which the Union filed its representation petition) to May 3, 2022 (the date the votes cast by Partners in the election were counted) and (ii) from July 27, 2022, to September 30, 2022, changed or was considered to have changed from being in favor of union representation to not being in favor of union representation, all reason(s) why the Partner may have changed his/her/their sentiments regarding the Union.

employees were discouraged . . . from engaging in protected concerted activities because of Starbucks' termination of Joselyn Chuquillanqui during the post-termination period." *Id*.[9]

After Starbucks issued the 2023 Amended Subpoenas, the Subpoenaed Non-Parties refused to comply, and Starbucks filed a motion to compel. Mot. to Compel, ECF No. 94. Soon thereafter, the Subpoenaed Non-Parties filed a motion to stay proceedings or in the alternative for reconsideration of Judge Cho's March 2023 discovery order. Mot. to Stay Proceedings or in the Alternative for Recons., ECF No. 101. The Subpoenaed Non-Parties sought to stay the proceedings because petitioner had filed an administrative complaint before the Board against Starbucks, alleging that Starbucks' service of the December 2022 subpoenas was, itself, an unfair labor practice. *Poor*, 2024 WL 1347394, at *4. On March 29, 2024 Judge Cho granted Starbucks' motion to compel, with minor modifications, and denied the Subpoenaed Non-Parties' motions. *See Poor*, 2024 WL 1347394, at *11.

---

Appeal 24, n.18; *see also Poor*, 2024 WL 1347394, at *10 (granting Starbucks' motion to compel as to Request No. 1(b) "with the modification as proposed by [p]etitioner in its objections email . . . clarifying that the request is limited to the campaign and post-termination periods").

[9] Request 2 seeks:

> All Documents from the period July 27, 2022, to September 30, 2022, relating in any way to whether the termination of Joselyn Chuquillanqui's employment had, or did not have, a "chilling" or adverse effect on Great Neck Partners' Section 7 or union activities, including, but not limited to, any Documents relating in any way to:
>
> > (a) Whether Ms. Chuquillanqui's termination, or anything Ms. Chuquillanqui said or did, had any effect, or may be inferred to have had any effect, on any Partner's interests in unionization or sentiments toward the Union;
> >
> > (b) Whether Ms. Chuquillanqui's job performance, including matters relating to her compliance, or lack thereof, with Starbucks' policies and procedures, effected [*sic*], or may be inferred to have effected [*sic*], any Partner's interests in unionization or sentiments toward the Union; and
> >
> > (c) Whether Ms. Chuquillanqui was an effective union organizer including whether her performance as a union organizer effected, or may be inferred to have effected [*sic*], one way or another, any Partner's interest in unionization or sentiments toward the Union.

Appeal 16, n.12.

The Subpoenaed Non-Parties now appeal Judge Cho's March 2024 discovery order, and they object to "that portion of [Judge Cho's] March 27, 2023 Order . . . that denied their motion to quash Starbucks' [deposition requests]." Appeal 1. They request only that I overturn Judge Cho's decisions not to quash Starbucks' 2023 Amended Subpoenas for documents and its requests for deposition testimony. *See* Appeal 1, n.1 (clarifying that they "do not object to the portions of [Judge Cho's] Order denying the motions to stay or for reconsideration").[10]

## LEGAL STANDARD

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and the Federal Magistrates Act, a district judge must consider objections to a magistrate judge's ruling on a non-dispositive motion and must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Pretrial discovery matters are generally considered non-dispositive, and as a result, they are reviewed under this clear error standard. *See Thomas E. Hoard, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). A magistrate judge's order is clearly erroneous if the district court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 235 (2001). Further, "[a]n order is contrary to law when it fails to apply or misapplies relevant statutes, caselaw, or rules of

---

[10] Initially, the Subpoenaed Non-Parties argued that "[b]ecause Judge Cho held that the 2023 Subpoenas supplanted the 2022 Subpoenas, the [March] 2023 Order declining to quash Requests 1(a), 1(b) (as modified), 11, and 14 of the 2022 Subpoenas is moot." Appeal 9. Alternatively, the Subpoenaed Non-Parties argued that if the 2023 Subpoenas did not, in fact, supplant the 2022 subpoenas, the "Court should also hold that Judge Cho's 2023 Order is clearly erroneous and contrary to law to the extent it requires production by the Subpoenaed Non-Parties." *Id.* In their reply brief, however, the Subpoenaed Non-Parties "withdr[ew] their objections to the 2023 Order with respect to their motion to quash Requests 1(a), 1(b) (as modified), 11, and 14 of the 2022 Subpoenas *duces tecum*." Appellant's Reply Brief 2 ("Reply"), ECF No. 116. As a result, I review only Judge Cho's decisions to not quash the 2023 Amended Subpoenas and the requests for depositions.

procedure." *Wood v. Mut. Redevelopment Houses, Inc.*, No. 22-CV-9493, 2023 WL 8603334, at *1 (S.D.N.Y. Dec. 12, 2023). Ultimately, the clear error standard is highly deferential and imposes a heavy burden on the party seeking to overturn a magistrate judge's discovery order. *See Wilson v. City of New York*, No. 06-CV-229 (ARR), 2008 WL 1994860, at *3 (E.D.N.Y. May 8, 2008).

**DISCUSSION**[11]

The Subpoenaed Non-Parties argue that I should reverse Judge Cho's decision granting Starbucks' motion to compel. I will address the Subpoenaed Non-Parties' arguments regarding each discovery request in turn.

**I.   Request 2**

The Subpoenaed Non-Parties first argue that Judge Cho's decision to compel their response to Request 2 was clear error because it "directly contravenes" my December 15, 2022 order permitting discovery on whether the petitioner's requested relief was just and proper. In a hearing on the petitioner's motion to try this case on the administrative record, I stated that I would not allow discovery of "other employees' observations of Ms. Chuquillanqui . . . as to her work practices and ability to perform the duties required by her position, including whether they observed her violating Starbucks' policies." Tr. of Proceedings held on Dec. 15, 2022 at 5:17–25 ("Dec. Tr."). The Subpoenaed Non-Parties contend that Request 2 contradicts this prohibition because it requests documents relating to Ms. Chuquillanqui's actions, including her job performance and effectiveness as a union organizer. Appeal 16–17. Request 2, however, is not that

---

[11] Starbucks argues that I should dismiss the Subpoenaed Non-Parties' appeal as untimely. Starbucks' Opp'n 17. This argument is unavailing. The Subpoenaed Non-Parties submitted their appeal within fourteen days of Judge Cho's decision on Starbucks' motion to compel. *See* Appeal. Further, in April 2023, I ordered that objections to any order issued by Judge Cho concerning subpoenas were due within fourteen days of "a full adjudication of disputes arising from those subpoenas"—here, Judge Cho's decision on the motion to compel. *See* Docket Order dated April 24, 2023.

8

open-ended. Instead, it seeks documents related to Ms. Chuquillanqui's actions, job performance, and effectiveness as a union organizer *only if* those documents also reflect that Ms. Chuquillanqui's actions and behaviors affected any employee's interests in unionization. *See supra* note 9. Request 2 does not require Subpoenaed Non-Parties to produce documents that relate only to Ms. Chuquillanqui's actions and behaviors; such a request would violate the limitations I initially set on discovery.

The Subpoenaed Non-Parties next argue that Judge Cho's determination that Request 2 seeks relevant material was clearly erroneous. Appeal 17. Rule 26(b)(1) of the Federal Rules of Civil Procedure requires that the scope of discovery be limited to matters that are "*relevant* to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). "The party moving to compel the disclosure of information bears the initial burden of demonstrating that the information sought is relevant and proportional." *Sportvision, Inc. v. MLB Advanced Media, L.P.*, No. 18-CV-3025, 2022 WL 2817141, at *1 (S.D.N.Y. July 19, 2022). Information is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The relevance standard is "liberally construed," and it is even more liberally construed when applied in discovery rather than at trial. *New Falls Corp. v. Soni*, No. 16-CV-6805 (ADS), 2020 WL 2836787, at *2 (E.D.N.Y. May 29, 2020) (quoting *MacCartney v. O'Dell*, No. 14-CV-3925, 2018 WL 5023947, at *2 (S.D.N.Y. Oct. 17, 2018)).

Judge Cho determined that Request 2 is a relevant inquiry because both the petitioner and counsel for Mr. Wooster and Ms. Chuquillanqui recognized that it was, at least potentially, a relevant inquiry. *Poor*, 2024 WL 1347394, at *11. This is supported by the record. *See* Tr. of Proceedings held on Apr. 17, 2023 at 4:1–8 ("Apr. Tr.") (petitioner acknowledging that

"[r]espondent . . . wants to discover the impact of the chill on employee Section 7 activities by Ms. Chuquillanqui's termination. . . . That's a relevant inquiry."); *id.* at 18:8–14 (counsel for Mr. Wooster and Ms. Chuquillanqui explaining that: "I could understand an argument that workers were not chilled by the termination because they stopped supporting the union because they didn't like Ms. Chuquillanqui if there were any evidence to support that which frankly there isn't. But that would be potentially a relevant inquiry.").[12] Request 2's inquiry into whether Ms. Chuquillanqui's discharge had a chilling impact on union activities—or whether something else caused employees' support for the Union to erode—is especially relevant because the petitioner asserts that Ms. Chuquillanqui's termination is "part of our argument for why a bargaining order is necessary." Tr. of Proceedings held on Mar. 27, 2023 at 15: 9–21 ("Mar. Tr."). By asserting Ms. Chuquillanqui's termination as a reason for the requested relief, petitioner makes evidence related to the impact of her termination relevant. The Subpoenaed Non-Parties further contend that even if there is evidence supporting that workers "celebrated Ms. Chuquillanqui's termination because they did not like her . . . it does not follow that those workers were not *also* afraid to support the Union [because Starbucks fired her]." Appeal 21. This may be the case, but whether the evidence supports this argument is a determination I must make after reviewing all relevant evidence; it is not a reason to prohibit a search for such evidence.

The Subpoenaed Non-Parties also argue that Starbucks failed to meet its burden of demonstrating that Request 2 is more than a fishing expedition. Appeal 17–18; *see also United*

---

[12] The Subpoenaed Non-Parties assert that Judge Cho took Ms. Chuquillanqui and Mr. Wooster's counsel's statement out of context. Appeal 19 n.15. They explain that counsel intended to argue that "evidence that workers did not like Ms. Chuquillanqui would *not* be relevant, and that only evidence that showed a causal relationship between workers' dislike of Ms. Chuquillanqui *and* their disaffection from the Union could potentially be relevant because . . . it would bear on the question of chill." *Id.* As I previously explained, this is exactly the type of evidence Request 2 seeks.

*States v. UBS Sec. LLC*, No. 18-CV-6369 (RPK), 2020 WL 7062789, at *3 (E.D.N.Y. Nov. 30, 2020) (explaining that the party seeking discovery must "make a *prima facie* showing that the discovery sought is more than merely a fishing expedition"). A discovery request is a fishing expedition if it is "based on pure speculation" and probes "into the [recipient's] actions or past wrongdoing [and is] not related to the alleged claims or defenses." *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004). The Subpoenaed Non-Parties contend that Request 2 is a fishing expedition because there is no evidence in the administrative record demonstrating that support for the Union eroded *because* employees disliked Ms. Chuquillanqui. Appeal 20. There is, however, evidence in the administrative record to support that tension in the workplace existed because other employees disagreed with Ms. Chuquillanqui about the Union. *See, e.g.*, Mot. to Try Pet. on Basis of Admin. R., Off. Rep. of Proc. ("Admin. R.") 913:8–914:19, 916:23–918:1, ECF No. 2-6 (employee testifying that she disagreed with Ms. Chuquillanqui about the Union and that when she expressed this disagreement, it caused an altercation between them); *id.* at 977:8–978:2, 979:18–980:2 (employee testifying that Ms. Chuquillanqui's attitude toward fellow employees shifted after the Union election). Starbucks' request for documents connecting employees' feelings toward Ms. Chuqillanqui to their feelings about the Union is, therefore, not based on pure speculation; instead, it is based on a plausible inference derived from evidence that already exists in the record.

Request 2 is also not a fishing expedition because it seeks materials directly related to Starbucks' defense: that other employees' dislike of Ms. Chuquillanqui—not her discharge—caused their support for the Union to erode. As I previously discussed, and as I acknowledged during the initial discovery hearing, "information about why an employee likes or distrusts the union," which is the information that Request 2 seeks, "is relevant to the question of just and proper

relief because it could potentially influence whether I issue a bargaining order." Dec. Tr. 17:14–19. For all these reasons, Judge Cho's decision not to quash Request 2 for lack of relevance was not clear error.

The Subpoenaed Non-Parties next argue that Request 2 is unduly vague because it seeks "documents from which it 'may be inferred' that employees lost interest in unionization for reasons related to Ms. Chuquillanqui's conduct." Appeal 22. They contend that the phrase "may be inferred" renders Request 2 impermissibly vague because "different people can reach vastly different conclusions about what may be inferred from a given document." *Id.* Their primary concern is that the "may be inferred" language is an attempt by Starbucks to capture documents that are only about Ms. Chuquillanqui's conduct but do not also reflect how her conduct affected employees' feelings toward unionization. *Id.* As Judge Cho reasoned, however, Request 2 "limits any discovery to that which relates to 'whether the termination of Joselyn Chuquillanqui's employment had, or did not have, a "chilling" or adverse effect on Great Neck Partners' Section 7 or union activities.'" *Poor*, 2024 WL 1347394, at *11. This language limits the breadth of permissible inferences. Request 2 re-enforces this limitation in each of the sub-parts by only requiring production of documents about Ms. Chuquillanqui's conduct that *also* reflect how her conduct affected employees' interest in unionization. *See supra* note 9. The meaning of the word "infer" is further clarified by my directive in the initial discovery hearing, in which I prohibited discovery into Ms. Chuquillanqui's work practices and abilities to perform her duties alone. Dec. Tr. 5:17–25. Request 2 does not—and cannot—seek documents that reflect only information about Ms. Chuquillanqui's conduct. The Subpoenaed Non-Parties also argue that Request 2 is vague because it seeks all documents "relating to" the possible chilling effect of Ms. Chuquillanqui's termination. Appeal 23, n.17. They contend that the phrase "relating to" is "so vague and

ambiguous that it [makes compliance with Request 2] . . . unreasonable or even impossible." *Id.* To the contrary, "relating to" is not a vague phrase here given its standard dictionary definition— "to show or establish logical or causal connection between," Merriam-Webster Online, https://www.merriam-webster.com/dictionary/relate (last visited June 27, 2024)—and that Request 2 is clear in stating to which subject matters the documents must relate, *see supra* note 9. For these reasons, Judge Cho's determination that Request 2 is not impermissibly vague was not clear error.

Finally, the Subpoenaed Non-Parties argue that Request 2 is unduly burdensome on employees' privacy and confidentiality rights, especially considering that "Starbucks' need for the requested documents is negligible." Appeal 13, 23.[13] The Federal Rules of Civil Procedure require district court judges to prohibit discovery when the "burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *id.* (b)(2)(C)(iii). The word "burden" captures the adverse consequences that would result from the "disclosure of sensitive, albeit unprivileged, material," *Johnson v. Nyack Hosp.*, 169 F.R.D. 550, 562 (S.D.N.Y. 1996), and therefore, "[a] subpoena may impose a burden by invading privacy or confidentiality interests," *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019); *see also Leslie*, 2024 WL 2186232, at *7 ("Under the Rule governing subpoenas, moreover, a district court '*must*' quash or modify a subpoena that either 'requires disclosure of privileged or other protected matter, if no exception or waiver applies,' or 'subjects a person to undue burden.'") (quoting Fed. R. Civ. P.

---

[13] The Subpoenaed Non-Parties indicate that "[f]or the same reasons the 2022 Subpoenas are unduly burdensome . . . Request 2 is unduly burdensome on privacy." Appeal 23. They do not articulate any arguments specific to the 2023 Amended Subpoenas. As a result, my citations to their Appeal refer to the burdens-benefits analysis the Subpoenaed Non-Parties crafted with respect to the 2022 subpoenas, which—excluding the 2022 subpoenas *ad testificandum*—they are not challenging. *See* Reply 2.

45(d)(3)(A)).

The Subpoenaed Non-Parties first argue that Judge Cho failed to give adequate weight to the burdens that the 2023 Amended Subpoenas impose. Appeal 11. They contend that the Union and employees have weighty privacy interests in their "personal sentiments regarding union representation." *Id.* (quoting *Pac. Molasses Co. v. NLRB Reg'l Office # 15*, 577 F.2d 1172, 1182 (5th Cir. 1978)). The Union and the employees do have privacy interests in their feelings regarding unionization; as the Second Circuit has recognized, "it is 'well settled' that the NLRA 'gives employees the right to keep confidential their union activities.'" *Leslie*, 2024 WL 2186232, at *7 (quoting *Veritas Health Servs., Inc. v. NLRB*, 671 F.3d 1267, 1274 (D.C. Cir. 2012).[14] Despite the

---

[14] The right that the NLRA provides to employees to keep confidential their union activities does not necessarily create a blanket privilege prohibiting any disclosure of employee-union communications in federal court. *See Leslie*, 2024 WL 2186232, at *8 ("To be sure, the district court acted well within the scope of its discretion in refusing to recognize a blanket 'privilege' such as to render *all* the sought-after [union-activity related] documents undiscoverable, properly observing that our caselaw recognizes no such discovery privilege."); *Hernandez v. Off. of the Comm'r of Baseball*, 331 F.R.D. 474, 477–78 (S.D.N.Y. 2019) (declining to recognize a union relations privilege partially because it was aware of no Second Circuit case law that recognizes such a privilege). In fact, the Subpoenaed Non-Parties do not assert that such a *blanket* privilege applies in this case; instead, they argue that the existence of a union privilege in some circumstances, "further tips the weighing analysis in [their] favor." Reply 16 n.14. This argument is not persuasive, however, because the out-of-circuit cases that Subpoenaed Non-Parties cite as recognizing a union privilege do not recognize a privilege that is expansive enough to apply to Starbucks' requests. *See Hooks v. Hood River Distillers, Inc.*, No. 21-CV-268, 2021 WL 3732751, at *1–2 (D. Or. Mar. 30, 2021) (explaining that the court recognizes the union privilege only in the context of considering whether the movant has a likelihood of success on the merits because the NLRB, which is tasked with considering the likelihood of success, would be limited by that privilege, but that, in considering the other equitable factors the court is not so limited because NLRB will not consider these factors); *Bell v. Vill. of Streamwood*, 806 F. Supp. 2d 1052, 1055–57 (N.D. Ill. 2011) (recognizing that an "employee-union representative privilege" exists in the context of disciplinary proceedings); *U.S. Dept. of Justice v. Fed. Lab. Rels. Auth.*, 39 F.3d 361, 369 (D.C. Cir. 1994) (declining to question the reasoning of an ALJ who applied an employee-union representative privilege in the context of communications made "in the course of . . . a disciplinary proceeding"); *Int'l Union v. Garner*, 102 F.R.D. 108, 114, 116 (M.D. Tenn. 1984) (determining that "union authorization cards" that employees signed "should be protected from discovery as privileged communications" because the employees who signed the cards "did so under a promise of confidentiality," and that these documents were, in any event, not relevant

Subpoenaed Non-Parties arguments to the contrary, Judge Cho has been mindful and protective of employees' privacy concerns. *See, e.g.*, Apr. Tr. 35:12–14 (acknowledging that "the Court is mindful of the confidentiality concerns for the employees"). In fact, to protect employees' privacy interests Judge Cho issued a robust Protective Order that requires documents discussing activity protected by Section 7 of the NLRA be maintained on an attorneys' eyes-only basis, that those documents be used only in connection with the litigation, and that the names and identifying information of Starbucks employees, precluding Ms. Chuquillanqui and Mr. Wooster—who have self-identified—be redacted. *See* Revised Protective Order ¶¶ 4(a)–(c), ECF No. 91; Apr. Tr. 42:23–25.

The cases that Subpoenaed Non-Parties cite to argue that Judge Cho should have quashed these subpoenas are also unpersuasive, partially because the subpoenas in this case are narrow in scope and protect employees' identifying information. *See, e.g.*, *Jordan*, 921 F.3d at 191–92 (determining that subpoenas were unlawfully burdensome partially because they sought documents created over a years-long period and because said documents would reveal the identity of the responding party); *Pac. Molasses Co.*, 577 F.2d at 1177, 1182 (determining that the Freedom of Information Act does not compel a union to disclose union authorization cards—that include employees' *names*—to the requesting employer because divulging the identity of union supporters would invade the employees' "strong privacy interest in their personal sentiments regarding union representation") (emphasis added). The Subpoenaed Non-Parties principally rely on *United Nurses Association of California v. NLRB*, 871 F.3d 767 (9th Cir. 2017)—a case in which the Ninth Circuit determined that the employer's subpoenas were violative of the employees' rights under the NLRA—to argue that Request 2 is overly burdensome. *Id.* at 785; Appeal 12–13. That case,

---

because defendants could get the information it sought through other means).

however, is not on point. First, the employer in *United Nurses* sought production of "*all* communications with union representatives, all documents relating to union membership card solicitation, and all membership cards signed by [employee nurses.]"  871 F.3d at776 (emphasis added). Request 2 is much narrower; it does not seek all communications with the Union, but instead seeks only documents related to whether Ms. Chuquillanqui's termination had a chilling effect on other employees' Section 7 activities. *See supra* note 9. Second, the court in *United Nurses* applied a standard that is not applicable to this discovery dispute. In that case, the Ninth Circuit reviewed a decision by the NLRB to ensure that "[s]ubstantial evidence" supported the Board's finding that the employer violated the NLRA by serving the subpoenas on employees and the Union. 871 F.3d at 777. As the Ninth Circuit explained, "[to] determine an employer's liability for an unfair labor practice," the Board is not required to balance the employees' Section 7 rights against the employer's interest in obtaining information. *Id.* at 785. The Federal Rules of Civil Procedure, on the other hand, explicitly require that judges reviewing the lawfulness of discovery requests engage in exactly this type of balancing inquiry to reach a decision. Fed. R. Civ. P. 26(b)(1); *id.* (b)(2)(C)(iii). Finally, even if the Board was required to consider the employer's interest in obtaining information, the Ninth Circuit reasoned that the employer in that case "had no interest to balance." 871 F.3d at 786.  As explained below, however, Starbucks has an interest in the documents it seeks with Request 2.

The last argument that Subpoenaed Non-Parties raise on the burden side of the balancing test is that the harm occasioned by the subpoenas "is not obviated by the protective order . . . . [because] even redacted disclosures . . . are nonetheless chilling." Appeal 12. They contend that "[p]ermitting an employer to obtain communications among *any* employees concerning their union activities . . . will invariably have a chilling effect on *all* employees." *Id.* If I were to decide that

any request by an employer for information about employees' union activity creates an unlawful burden under the federal rules, I would be, in effect, applying the union relations privilege by another name, and I have already declined to recognize this privilege. *See supra* note 14. Given the narrow scope of Request 2 and the broad protective order, I decline to determine that Judge Cho committed clear error when he decided not to quash Request 2 due to the Subpoenaed Non-Parties' privacy concerns.

On the other side of the balancing test, the Subpoenaed Non-Parties argue that "Starbucks has not demonstrated any real need for the documents it now seeks," especially considering that it already had the opportunity during the administrative hearing to ask employees whether they became disaffected from the Union because of Ms. Chuquillanqui's conduct. Appeal 13–14. The petitioner, however, made these same arguments nearly two years ago when it first requested that I grant § 10(j) relief based on the administrative record alone. *See* Mot. to Try Pet. on Basis of Admin. R. 6, ECF No. 2. I rejected those arguments then, and they remain unpersuasive today. *See Leslie*, 2024 WL 2186232, at *6 (determining that the district court did not abuse its discretion in granting expedited discovery on the just and proper inquiry of a § 10(j) petition because such an inquiry "may well involve evidence that an administrative law judge does not even consider when evaluating unfair labor practice charges").[15] As I explained then, Starbucks' counsel faced

---

[15] In *Leslie v. Starbucks*, the Second Circuit, in affirming the district judge's decision to grant expedited discovery on the just and proper prong, explained that "[s]omewhat unusually, the ALJ adjudicating the underlying complaint . . . heard evidence as to the just and proper inquiry." 2024 WL 2186232, at *6 n.11. The Second Circuit elaborated, however, that when the district court granted Starbucks' request for expedited discovery "that proceeding had yet to begin and therefore such evidence was yet to be entered into the administrative record." *Id.* As a result, the Second Circuit clarified that it was not commenting on how or whether the existence of evidence on the just and proper prong in the administrative record should impact a district judge's decision to grant expedited discovery. *Id.* In this case, the full administrative record was available when I initially granted Starbucks' request for discovery on the just and proper prong. Further, in the administrative hearing, ALJ Gardner received at least some evidence on whether a bargaining

limitations during the administrative hearing that he does not face in federal court, including that the ALJ prohibited Starbucks from asking employees certain questions due to a "[union] privilege."[16] Dec. Tr. 10: 12–17. Likewise, Starbucks needs the information Request 2 seeks to form its defense. I have already acknowledged that "information about why an employe likes or distrusts the union"—the very information that Request 2 seeks—"is relevant to the question of just and proper relief because it could . . . influence whether I issue a bargaining order." *Id.* at 17:14–23, 24:20–24. As a result, Starbucks should be given an opportunity to discover such information.

The Second Circuit's recent decision in *Leslie v. Starbucks Corp*, which was issued shortly after Judge Cho's decision, does not alter the balancing test analysis. In that case, the Second Circuit determined that Starbucks' subpoenas, which sought materials related to employees' union-related activities at a location in Buffalo, New York, were "plainly overbroad." 2024 WL

---

order was just and proper. *See, e.g.*, Admin. R. 919:4–20 (explaining that he would allow a line of questioning into an altercation between one employee and Ms. Chuquillanqui because "the Respondent is entitled to make its case for . . . its defense on the subject of the . . . bargaining order"); *id.* at 980:3–12 (overruling an objection to a line of questioning regarding post-election events because such events "would be part of the bargaining order analysis"). Because, however, the record reflects limited inquiry into the just and proper prong of the analysis, including limited inquiry into precisely the sort of information that Request 2 seeks, I maintain that Starbucks needs discovery to develop its argument that the petitioner's requested relief is not just and proper. *See id.* at 749:4, 790:1–25, ECF No. 2-5 (sustaining an objection to a question asking Ms. Chuquillanqui whether she understood that workers' feelings toward her "may have carried over to how people voted"); *id.* at 851:21–852:21 (sustaining an objection to a question regarding Ms. Chuquillanqui's organizing tactics); *id.* at 918:7–919:20, ECF No. 2-6 (instructing Starbucks' counsel to keep questioning short because he was not sure how relevant an altercation between Ms. Chuquillanqui and another employee was to whether a bargaining order was necessary); *id.* at 920:23–921:4 (sustaining an objection to a question asking the employee whether she thought any of her co-workers felt free to make their own choice in deciding whether to unionize); *id.* at 922:18–926:2 (sustaining an objection to a line of questioning seeking information from an employee on when, in "the Judge's word," the employee's opinion of the Union "soured").

[16] *See supra* note 14 (declining to recognize a union privilege in this case).

2186232, at *7. It remanded the case back to the district court for a "closer inspection" of the subpoenas. *Id.* at *8. The subpoenas in that case, however, were substantially broader than the subpoenas in this case. The subpoenas in *Leslie*: (1) sought "all emails" from a particular email account sent by "*any* Starbucks employee that reflects interest in starting a union campaign at *any* Starbucks store"; (2) sought "all documents relating to changes to the timing of filing election petitions at *any* Starbucks store"; and (3) did not require the redaction of employee names if the documents could "inform the 'just and proper' inquiry,' which [was] precisely what Starbucks claimed its requests were designed to do and the purpose for which the district court authorized them." *Id.* (emphasis added). In contrast, Request 2 seeks information related only to events at the Great Neck location—not any Starbucks store across the nation—and the Protective Order requires the redaction of all employee names and identifying information, precluding Ms. Chuquillanqui and Mr. Wooster, who have self-identified. *See supra* note 9; Revised Protective Order ¶¶ 4(a)–(c).

Given the breadth of Judge Cho's protective order, the narrow scope of Request 2, and Starbucks' need for the requested information, I cannot conclude that Judge Cho's decision to grant Starbucks' motion to compel was clear error or contrary to law.

## II.   Request 1

The Subpoenaed Non-Parties mostly recycle the same arguments they made regarding Request 2 to argue that Request 1 is unlawful. *See* Appeal 24–26. They first contend that Request 1 is not relevant because it "largely seeks documents pertaining to employees' support for the Union postdating the May 3, 2022 election." *Id.* at 24. As they put it, "information responsive to such requests is wholly irrelevant to the restoration of the status quo prior to Starbucks' alleged

commission of [unfair labor practices]." *Id.*[17] As I previously explained, however, documents relating to employees' support for the Union postdating the election are relevant because petitioner is seeking Ms. Chuquillanqui's reinstatement and asserting that her termination—which occurred after the election—is a reason why an interim bargaining order is just and proper. As Judge Cho reasoned in his March discovery hearing: "[Petitioner cannot] . . . rely on Ms. Chuquillanqui's termination as a basis for a bargaining order, but then . . . cut[] Starbucks off at the knees . . . [by] not allow[ing it] to have any discovery at all post-election[,] which would encompass [her] termination." Mar. Tr. 15:22–17:22. Accordingly, Judge Cho's decision not to quash Request 1 for its purported lack of relevance was not clear error.

The Subpoenaed Non-Parties also argue that Request 1 is overly burdensome and that it violates my initial order limiting discovery to the Great Neck store because it seeks "all documents and/or recordings" from "any partner employed at any Starbucks store." Appeal 25. This argument ignores that the breadth of Request 1 is limited by its subparts. It requests "all documents" from "any partner employed at any Starbucks store" concerning *only* matters at the Great Neck store. *See supra* note 8. Accordingly, the subject of the documents that Request 1 seeks is not national in scope. The Subpoenaed Non-Parties also contend that Request 1 is unlawfully burdensome because it seeks "all documents . . . relating" to the other subparts of the request, "despite the fact that there is already a voluminous record from the Great Neck [ALJ adjudication]." Appeal 26. As I have already explained, I reject this argument for the same reasons that I rejected it in the initial December 2022 hearing. Finally, the Subpoenaed Non-Parties argue that Request 1 infringes on

---

[17] In the context of the just and proper inquiry, courts typically grant relief when "necessary to prevent irreparable harm or to preserve the status quo," and "[t]he appropriate status quo in need of preservation is that which was in existence before the unfair labor practice occurred." *Leslie*, 2024 WL 2186232, at *6.

the employees' confidentiality and privacy rights. Appeal 25. As Judge Cho reasoned, "[g]iven that the request does not seek to identify any individuals by name" and given the strong protective order, the Subpoenaed Non-Parties have failed meet their burden of demonstrating why this request should be quashed. *Poor*, 2024 WL 1347394, at *9. Accordingly, Judge Cho's decision to not quash Request 1 as overly burdensome was not clear error.

### III.    Requests for Deposition Testimony

The Subpoenaed Non-Parties lastly argue that Judge Cho's decision to allow Starbucks' depositions to proceed over their objections was "clearly erroneous and contrary to law because the depositions Starbucks seeks are unduly burdensome on both employees' confidentiality rights and their time and resources, and will necessarily involve testimony about protected and privileged information." Appeal 26. These arguments largely mirror the arguments that Subpoenaed Non-Parties advanced to quash the requests for documents, and as in the documents-context, these arguments are unavailing.

The Subpoenaed Non-Parties, without citing any law, first contend that the "coercive impact of subpoenas is heightened in the case of a deposition, which seeks live testimony," and that "this is especially true for a worker," who will be forced to sit for a "court-sanctioned interrogation . . . by their employer's lawyers about their and their coworkers' Section 7 activity." *Id*. at 27. Even assuming these heightened concerns, I cannot conclude that Judge Cho committed clear error in declining to quash the deposition subpoenas out of concern for the employees' privacy. First, all the privacy protections and subject matter limitations that apply to the requests for documents also apply to the deposition subpoenas. *See* Revised Protective Order ¶ 5(b)–(c). In fact, the Protective Order explicitly prohibits any questions that "are unrelated to" the topics that Requests 1 and 2 cover. *Id.* Further, the Protective Order employs additional deposition-specific

protections that address the Subpoenaed Non-Parties' concerns about coercion and privacy interests. Deponents are required to use a key that anonymizes the identities of employees and ensures that in giving their answers, deponents will not divulge the identities of other employees. *Id.* ¶ 5(d). Second, the Protective Order clarifies that counsel for any party may direct the deponent to "refrain from answering questions that are unrelated to" Requests 1 and 2. *id.* ¶ 5(c). This provision addresses the Subpoenaed Non-Parties' concern—expressed in an earlier motion—that a prior version of the protective order compelled witnesses to "answer questions first and seek the designation of 'confidential' later." Mem. in Supp. of Union Non-Parties' Mot. to Quash Subpoenas 21, ECF No. 58. Finally, the Protective Order restricts who may be present during a deposition: "[o]nly attorneys and reporting service personnel." Revised Protective Order ¶ 5(e).

The Subpoenaed Non-Parties also argue that Starbucks' need for deposition testimony is especially slight because "questioning that follows coercive [unfair labor practices] . . . is unlikely to adduce probative evidence regarding chill." Appeal 27 (citing *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 608 (1969)). In *Gissel Packing*, the Supreme Court addressed whether union authorization cards[18] were generally reliable enough to provide a valid path to establishing a bargaining obligation or if they were too often obtained by coercion and misrepresentation. *Id.* at 596–610. The Court rejected the employers' argument that authorization cards were unreliable but explained that "in hearing testimony concerning a card challenge [based on evidence of

---

[18] Typically, union authorization cards are used to secure a union election; once the Union receives signed cards from 30% of the company's employees, it can petition the Board to conduct an election. *Abbey's Transp. Svs., Inc. v. NLRB*, 837 F.2d 575, 577 (2d Cir. 1988). Further, "the most commonly traveled route for a union to obtain recognition as the exclusive bargaining representative of an unorganized group of employees is through the Board's election and certification procedures." *Gissel Packing*, 395 U.S. at 596. An election is not, however, the only way a union may establish a bargaining obligation; "possession of [authorization] cards signed by a majority of the employees authorizing the union to represent them for collective bargaining purposes" is an alternative route. *Id.*

misrepresentation and coercion], trial examiners should not neglect their obligation to ensure employee free choice." *Id.* at 607–08. The Court explained, however, that because "employees are more likely than not, many months after a card drive and in response to questions by company counsel, to give testimony damaging to the union," especially where the company previously threatened reprisals for union activity, it would "reject any rule that requires a probe of an employee's subjective motivations as involving an endless and unreliable inquiry." *Id.* at 608. That the Supreme Court rejected a rule that would always require a probe of employees' subjective motivations in the context of a dispute over the authenticity of authorization cards does not mean that probing what caused an employee to disfavor a union is always unhelpful. Here, the scope and coercive effect of the depositions will be limited by the strong Protective Order. The Protective Order's subject-matter limitations ensure that there is little risk that the depositions will be endless, and its privacy protections ensure that there is little risk that a coercive environment will make the testimony unreliable. Ultimately, due to the narrow scope of the deposition subpoenas, the strong privacy protections that the Protective Order establishes, and the relevance of the information sought to Starbucks' defense, I decline to find that Judge Cho committed clear error in concluding that there are no "material distinction[s] between discovery at a deposition versus the document production." Apr. Tr. 23:18–20.

## CONCLUSION

For the foregoing reasons, I affirm Judge Cho's March 2024 discovery order granting Starbucks' motion to compel.

SO ORDERED.

_____/s/_____

Allyne R. Ross
United States District Judge

Dated:      July 12, 2024
             Brooklyn, New York